UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:20-cr-77 |
| Plaintiff, | ) ) | |
| | ) | Judge Timothy S. Black |
| v. | ) ) | |
| LARRY HOUSEHOLDER, | ) ) | |
| Defendant. | ) | |

**DEFENDANT LARRY HOUSEHOLDER'S MOTION TO DISMISS THE INDICTMENT**

Defendant Larry Householder moves the Court, under Rules 7(c) and 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, to dismiss the Indictment. The Indictment fails to set forth the essential elements of the crime charged, RICO conspiracy, and it fails to state an offense. As a result, the Court should dismiss the Indictment in its entirety.

A memorandum in support of this motion is attached.

Dated: February 1, 2022

Respectfully submitted,

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
Mark B. Marein (0008118)
MAREIN & BRADLEY
526 Superior Ave., Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com

Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
 & LIFFMAN CO., LPA
1111 Superior Avenue East, Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: nro@mccarthylebit.com

*Counsel for Defendant Larry Householder*

1

{01661014-2}

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed on February 1, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:20-cr-77 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Timothy S. Black |
| v. | ) | |
| | ) | |
| LARRY HOUSEHOLDER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT LARRY HOUSEHOLDER'S MOTION TO DISMISS THE INDICTMENT**

**I.     INTRODUCTION**

The government's allegations are insufficient. In a more than 130-paragraph Indictment, the government tries to allege that Defendant Larry Householder and the other Defendants engaged in a conspiracy to violate the RICO statute. In doing so, it settles for legal conclusions—not facts. And it hangs its hat on salacious allegations of bribery against the former Speaker of the Ohio House based on political contributions that a corporation made to an issue advocacy group, Generation Now. The government's allegations though are insufficient to state an offense.

Nor did the government learn from the Supreme Court's admonitions. The Court has recently and repeatedly warned federal prosecutors that they are not the arbiters of good government for state officials: "Federal prosecutors may not use property fraud statutes to set standards of disclosure and good government for local and state officials." *Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020) (cleaned up). To prevent this prosecutorial overreach, the Supreme Court has further explained that prosecutors may only prosecute bribery cases when they can show an explicit quid pro quo agreement between the payor and the payee. Absent this requirement, it "would open to prosecution not only conduct that has long been thought to be

1

well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation." *McCormick v. United States*, 500 U.S. 257, 272 (1991). Here, the government emphasizes its bribery allegations but without, as the Supreme Court requires, alleging an explicit quid pro agreement between Householder and FirstEnergy Corp.[1] Without those allegations, the bribery allegations and predicate offenses cannot stand. And without those, the rest of the RICO conspiracy charge falls too.

The Court should dismiss the Indictment.

## II. LEGAL STANDARD

The government's motive in this case is clear: prosecute Householder based on headline-grabbing accusations of bribery, packaged in an inscrutable RICO conspiracy Indictment. What the Indictment does *not* make clear is how Householder's conduct amounts to a federal crime.

This deficient charging document cannot pass muster under Federal Rule of Criminal Procedure 7(c), which requires the government to begin every prosecution with "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). Nor does it satisfy Federal Rule of Criminal Procedure 12. Fed. R. Crim. P. 12(b)(3)(B)(v). Even considering all of the allegations scattered throughout the document, it fails to state an offense under any of the criminal statutes the government attempts to invoke. *See, e.g.*, *United States v. Pirro*, 212 F.3d 86, 95 (2d Cir. 2000). And although the pleading standard with respect to criminal indictments may be slight, the government must still allege "facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's

---

[1] Because FirstEnergy entered into a deferred prosecution agreement with the government, *United States v. FirstEnergy Corp.*, No. 1:21-cr-86 (S.D. Ohio), ECF No. 2, Householder uses "FirstEnergy" instead of the pseudonym the government used in the Indictment (Company A Corp.).

commission of that crime." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992); *see Pirro*, 212 F.3d at 93 ("for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime.").

### III. ARGUMENT

#### A. The Indictment does not plead a RICO enterprise.

"To be convicted of RICO conspiracy, a defendant must intend to further an endeavor that, if completed, would satisfy all elements of a RICO offense." *United States v. Nicholson*, 716 F. App'x 400, 405 (6th Cir. 2017) (citing *Salinas v. United States*, 522 U.S. 52, 65 (2009)).[2] Therefore, the government must prove: "(1) the existence of an enterprise which affects interstate or foreign commerce; (2) the defendant's association with the enterprise; (3) the defendant's participation in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008). If the alleged enterprise is an established legal entity, such as a corporation or partnership, the fact that the entity has a legal existence easily satisfies the enterprise element. *See* 18 U.S.C. § 1961(4). An "association-in-fact" enterprise—which is what the government alleges here—is different. *See id.* While it need not exhibit any particular form or organization, an association-in-fact must be "an entity separate and apart from the pattern of activity in which it engages . . . ."

---

[2] Recently, the Sixth Circuit held "to convict a defendant under § 1962(d), the government may prove an agreement to form an enterprise (rather than an existing enterprise) so long as the agreement, if completed, would satisfy all the elements of § 1962(c)." *United States v. Rich*, 14 F.4th 489, 493 (6th Cir. 2021). *Rich*, though, is immaterial. For one, the government here alleges the existence of an enterprise, not an agreement to form one. *See* Indictment ¶ 1 (alleging that the enterprise "*constituted* an *ongoing* organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise, and the enterprise *engaged* in, and its activities *affected*, interstate commerce") (Doc. 22) (emphasis added). In any event, the government must prove either the existence of an enterprise, as that term is defined in the statute, or an agreement to form an enterprise. Either way, the government must prove an enterprise.

3

*United States v. Turkette*, 452 U.S. 576, 583 (1981). And that means "at least three structural features" must be present: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associated to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Importantly, the association's common purpose "must be separate from the pattern of racketeering activity in which it engages." *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 857 (S.D. Ohio 2020) (quoting *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993)).

The government does not plead any facts to support these structural features. *See* Indictment ¶¶ 1, 33 (Doc. 22). It identifies the Defendants as allegedly being members of the association-in-fact enterprise and then states, in a circular fashion, that their purpose was to "achiev[e] the objectives of the enterprise." *Id.* ¶ 1. More though is required. The reason is simple. "RICO . . . is ***not*** a conspiracy statute. Its draconian penalties are not triggered just by proving conspiracy." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997) (Posner, J.) (emphasis added). The term "'[e]nterprise' . . . connotes more." *Id.* And that "more" is nowhere to be found in this Indictment. *See also Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 866 (S.D. Ohio 2020) (dismissing RICO conspiracy count when the allegations showed the alleged enterprise's only common purpose "is their purported common desire to participate in the allegedly fraudulent scheme"). "Were the rule otherwise, competitors who independently engaged in similar types of transactions with the same firm could be considered associates in a common enterprise." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 375 (3d Cir. 2010); *see also In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 174 (D. Mass. 2003) ("Without [these limitations] any group of persons sharing a common occupation,

e.g., urologists and lawyers, and a similar motive, e.g., greed, could be held to constitute a RICO enterprise.").

Instead, the government simply alleges, in the manner and means section of the Indictment, that "Householder's Enterprise"—without specifying any particular Defendant—engaged in various activities. Indictment ¶¶ 34-53 (Doc. 22). Although when pleading the acts in furtherance of the conspiracy, *see id.* ¶¶ 54-132, the government was marginally more specific, it still failed to allege the relationships the Defendants shared or how their activities were coordinated over time to permit them to achieve their purpose. Indeed, "similarity of goals and methods does not suffice to show that an enterprise exists; what is necessary is evidence of systemic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination." *Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995).

Even if Householder could fairly be forced to piece together the government's enterprise theory from the rest of the Indictment, it would still fail. The government's allegations describe no relationship joining all the alleged associates, nor any coordinated activity among them, towards an alleged common purpose. Instead, the allegations at most set forth a "hub-and-spoke" structure—with FirstEnergy occupying the hub and Defendants the spokes—with no common rim linking the individual spokes together. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010) (the "critical issue" in a hub-and-spoke conspiracy "is how the spokes are connected to each other") (quoting *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008)). "Most courts have found that complaints alleging hub-and-spoke enterprises fail to satisfy the RICO enterprise requirement." *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183 (D. Mass. 2003)

(collecting cases). Here, though, the government makes no allegations that the members of the alleged enterprise coordinated their efforts to achieve any commonly shared purpose.

The government's failure to allege these facts is fatal to the Indictment.

  **B.**  **The Indictment does not plead a pattern of racketeering activity.**

The RICO charge fails for a separate reason as well: the Indictment does not properly plead a "pattern of racketeering activity." 18 U.S.C. § 1962(c). The government says a "pattern" existed because Defendants conspired "with each other others" to commit various federal and state crimes. Indictment ¶ 33 (Doc. 22). The "fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016) (citation omitted). Thus, to plead a conspiracy to commit a particular crime, the government must allege that "*each* conspirator . . . specifically intended that *some conspirator* commit *each* element" of the crime in question. *Id.* (emphasis added). Here, the government identifies statutes that Defendants and their alleged co-conspirators purportedly agreed to violate. Indictment ¶ 33 (Doc. 22). But the government fails to plead an agreement to commit each of the elements of the alleged offense. Instead, all it does is simply list statutes the Defendants allegedly violated or agreed to violate. *See id.*

The predicate offenses the government alleges form a pattern of racketeering fall in two different groups. The first are the offenses that we will generically refer to as alleging bribery. And the second are money-laundering offenses. The government's allegations are insufficient on both.

  **1.** Despite repeated rebukes by the Supreme Court, federal prosecutors continue to use vague federal criminal laws to impose "standards of ... good government" on "local and state

6

officials." *McNally v. United States*, 483 U.S. 350, 360 (1987); *see also Skilling v. United States*, 561 U.S. 358 (2010); *McDonnell v. United States*, 136 S. Ct. 2355 (2016). Most recently, the Court admonished the federal government from using federal criminal law "to enforce (its view of) integrity in broad swaths of state and local policymaking." *Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020). To prevent this overreach, the Supreme Court has strictly limited federal bribery law to "quid pro quo corruption—the exchange of a thing of value for an 'official act.'" *McDonnell*, 136 S. Ct. at 2372.

This case thus fits pattern of federal prosecutors using criminal law to enforce their view of state policymaking. But as in *McNally*, *Skilling*, *McDonnell*, and *Kelly*, the federal government here oversteps its role in seeking to impose its standards of good government on Ohio. Even worse, the government does so by alleging that campaign contributions,[3] which are protected by the First Amendment, formed an illegal bribe. In doing so though, the government fails to comply with the Supreme Court's and Sixth Circuit's caselaw.

The government fails to sufficiently allege an explicit *quid pro quo* agreement. This is an essential element to the honest services wire fraud, Hobbs Act extortion, and state law bribery predicate offenses. *See McCormick v. United States*, 500 U.S. 257, 273 (1991); *see also United States v. Terry*, 707 F.3d 607, 612 (6th Cir. 2013). Because "[t]he right to participate in democracy through political contributions" is protected by the Constitution," *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014), the Supreme Court has explained that a political contribution can only be a bribe if "payments are made in return for an ***explicit*** promise or undertaking by the official to perform or not to perform an official act" and the official agrees that "his official

---

[3] It matters naught that the funds were contributed to a 501(c)(4) entity, Generation Now. The First Amendment still gives corporations the right to spend money and contribute money to issue advocacy groups. *See Citizens United v. FEC*, 558 U.S. 310, 364 (2010).

conduct will be controlled by the terms of the promise or the undertaking." *McCormick*, 500 U.S. at 273 (emphasis added). More particularly, the statutes "prohibit[] quid pro quo corruption — the exchange of a thing of value for an 'official act.'" *McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016). Or, as Judge Sutton succinctly put it: "What is needed is an agreement, full stop." *Terry*, 707 F.3d at 613. That is, the government must show "the payments were made in connection with an agreement, which is to say 'in return for' official actions under" the agreement. *Id.*

Applying these holdings, the government needed to allege in its Indictment facts that show (1) an explicit quid pro quo agreement in which (2) Householder agreed to perform a specific official action on a specific and focused matter (3) and that his conduct would be controlled by the terms of the quid pro quo agreement (4) in exchange for political contributions. *See also Evans v. United States*, 504 U.S. 255, 268 (1992) (requiring an "agreement to perform specific official acts"); *Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1034 (N.D. Ohio 2013) ("Where, as here, the alleged bribe is a campaign contribution, the facts must show that the contribution was given 'in return for a specific official action . . . No generalized expectation of some future action will do.'").

The government though does not allege facts to meet these requirements. True, the government alleges that it was "part of the conspiracy" that the Defendants "agreed to receive and accept millions of dollars in bribe payments from Company A, including bribe payments paid through GENERATION NOW, in return for HOUSEHOLDER taking specific official action for the benefit of Company A, namely to help enact into law legislation that would go into effect and save the operation of the Nuclear Plants." Indictment ¶ 41 (Doc. 22); *see also id.* ¶ 47. But these are just legal conclusions—not the "essential facts constituting the offense charged."

8

Fed. R. Crim. P. 7(c); *cf. Huff*, 972 F. Supp. 2d at 1034-35 (finding allegation that a judge took improper official acts in exchange for a bribe was a legal conclusion unsupported by any facts). The government does not allege any meetings, conversations, or other communications between Householder (the alleged payee) and FirstEnergy Corp. (the alleged payor).

What's more, the government tries to make up for this shortcoming by alleging what the other Defendants, but not Householder, said. *E.g.*, Indictment ¶¶ 77, 100-103. Suffice it to say, what the other Defendants said or understood does nothing to show whether Householder entered into an explicit quid pro quo agreement.

And the government's specific allegations about Householder's conduct fall short too. It alleges that Householder told Defendant Longstreth, in response to Longstreth's question about FirstEnergy "need[ing] the money," "we only put in what they need." Indictment ¶ 99. It also alleges that, at a press conference held after the Ohio House introduced HB 6, Householder explained about the origins of the legislation: "it's based on our brains. For me, I look back, for two years I've had this in my head, and I've had various versions on that white board over the last several months." *Id.* ¶ 106. These allegations do not offer any rejoinder. They do not show that Householder entered a quid pro quo agreement. At best, they show that Householder took political positions that benefitted FirstEnergy, which contributed campaign contributions to Householder and Generation Now.

To be sure, the government alleges that Householder (allegedly through Generation Now) received campaign contributions, but that does not make out a bribery charge.[4] "A donor who

---

[4] The government also makes much of the fact that Generation Now, an entity established under section 501(c)(4) of the Internal Revenue Act, was not required to disclose its donors. *See* Indictment ¶ 75 (alleging Generation Now received "secret payments"); *id.* ¶ 38. But "unlike Super PACs, 501(c)(4) organizations are not legally obligated to publicly disclose the names of their donors or the amounts of the donations" except to the IRS with respect to donations more than $5,000. *NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2016 WL

9

{01661014-2}

gives money in the hope of unspecified future assistance does not agree to exchange payments for actions. No bribe thus occurs if the elected official later does something that benefits the donor." *Terry*, 707 F.3d at 613. For this reason, it is of no consequence that, for example, Generation Now received contributions shortly before the November 2018 general elections (Indictment ¶ 93) or shortly after the Ballot Campaign submitted a referendum petition to the Ohio Attorney General (Indictment ¶ 122). *See also Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1035 (N.D. Ohio 2013) ("Close-in-time contributions, standing alone, will not suffice to establish a quid pro quo agreement."); *United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) ("No generalized expectation of some future favorable action will do. The official must agree to take or forego some specific action in order for the doing of it to be criminal under § 666. In the absence of such an agreement on a specific action, even a close-in-time relationship between the donation and the act will not suffice.").

Nor does the government allege that any specific official action that Householder took was linked to a specific contribution, which *McDonnell* and *Terry* require. *McDonnell*, 136 S. Ct. at 2371 (requiring "the jury to determine whether the public official agreed perform an 'official act' ***at the time*** of the alleged quid pro quo") (emphasis added); *Terry*, 707 F.3d at 613 (holding that it is a "statutory requirement" that "the payments were made in connection with an agreement, which is to say 'in return for' official actions under it"). The closest the government comes is its allegation that "Householder's Enterprise agreed to receive and accept millions of dollars in bribe payments from Company A, including bribe payments paid through GENERATION NOW, in return for HOUSEHOLDER taking specific official action for the

---

8202966, at *3 (S.D. Ohio Nov. 22, 2016). There are no limits to the amounts that a person may contribute to a 501(c)(4). *Id.* at *4 (noting that, under the tax code, a 501(c)(4) organization can accept unlimited contributions from all types of donors, including individuals).

10

{01661014-2}

benefit of Company A, namely to help enact into law legislation that would go into effect and save the operation of the Nuclear Plants." Indictment ¶ 41. But the specific official actions the government alleges Householder performed (crafting legislation, creating House committees, and voting on HB 6) were actions Householder performed *years* after Generation Now received its first contribution from FirstEnergy. *See* Indictment ¶ 60 (alleging that Generation Now received $1 million in contributions from FirstEnergy in 2017); *accord* Compl. ¶ 47 (chart showing contributions to Generation Now) (Doc. 5).

*McDonnell* and *Terry* do not permit this kind of attenuated causation. They require the government must "[f]irst . . . *identify*" a "*specific* and *focused*" matter that "is 'pending' or 'may by law be brought' before a public official." *McDonnell*, 136 S. Ct. at 2368, 2372 (emphases added). Then, the government must prove that the official either made or agreed to make "a decision or t[ake] an action 'on' *that*" matter "at the time of the alleged quid pro quo." *Id.* at 2368, 2371 (emphasis added); *see also id.* at 2374 (noting that if the "testimony reflects what Governor McDonnell agreed to do *at the time* he accepted the loans and gifts from Williams, then he did not agree to make a decision or take an action on any of the three questions or matters described by the Fourth Circuit") (emphasis added). An official cannot agree to take action on a "specific and focused" matter at the time of the alleged quid pro quo unless that matter was identified at that time. *See id.* at 2371 ("It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an "official act" at the time of the alleged quid pro quo."); *id.* at 2365 ("the offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts") (quoting *Evans v. United States*, 504 U.S. 255, 268 (1992)).

11

Likewise, the government's bribery allegations also fall short to the extent the they are based on the "bribes" that were allegedly paid to a "Ballot Campaign insider for information." Indictment ¶¶ 125, 127 (Doc. 22). To prove private-sector honest services fraud, "the prosecution must prove only that the defendant intended to breach his fiduciary duty, and reasonably should have foreseen that the breach would create an identifiable economic risk to the victim." *United States v. Frost*, 125 F.3d 346, 369 (6th Cir. 1997); *accord Skilling v. United States*, 561 U.S. 358, 365, 130 S. Ct. 2896, 2905 (2010) ("[T]he vast majority of cases involved offenders who, in violation of a fiduciary duty, participated in bribery or kickback schemes."). The government though does not allege the existence of any such duty or a breach of it. *See* Indictment ¶¶ 124-125, 127. Again failing its task to plead the essential elements of the offense.

In the end, the government's bribery allegations are not sufficient under the law.

**2.** The second (and only remaining) group of predicate offenses that should be dismissed are the money-laundering predicate offenses. These offenses depend on the bribery predicates surviving, as money laundering requires a defendant to, among other things, conduct transactions involving "specified unlawful activity." 18 U.S.C. § 1956(a)(1), (2), (3); *id.* § 1957(a). The money-laundering statute defines "specified unlawful activity" by referencing the RICO's statute definition of "racketeering activity." § 1957(c)(7). Thus, if the bribery predicates do not survive, neither can the money laundering ones. *See United States v. Cavin*, 39 F.3d 1299, 1307 (5th Cir. 1994) ("The government presented no evidence that the rental payments were proceeds of criminal activity, an essential element of the offense.").

**C.    The State-law predicate offenses should be dismissed.**

Even if the Court does not dismiss the Indictment, the Court should dismiss the State-law predicate offenses the Defendants allegedly conspired to commit. The Indictment alleges two

12

{01661014-2}

such offenses: "multiple acts of bribery under Ohio Revised Code § 3517.22(a)(2)" and "multiple acts of bribery, chargeable under Ohio Revised Code § 2921.02." Indictment ¶ 33 (Doc. 22). Both should be dismissed.

    **1.** The Court should dismiss the Ohio Rev. Code § 3517.22(A)(2) predicate[5] for federalism concerns. The Ohio statute only permits a prosecution if a complaint is "filed with the Ohio elections commission under section 3517.153 of the Revised Code." Ohio Rev. Code § 3517.22(C). This is a condition precedent for prosecution. *Id.* ("Before a prosecution may commence under this section …"); *see also Coast Candidates PAC v. Ohio Elections Comm'n*, 543 F. App'x 490, 492 (6th Cir. 2013) ("No person can be prosecuted for violating Section 3517.22 unless a complaint first has been filed with the Commission."). The government does not allege that it has filed any such complaint with the Commission, and, thus, under the plain terms of the statute, the government may not seek to circumvent Ohio law. *See United States v. Genova*, 333 F.3d 750, 759 (7th Cir. 2003) (vacating RICO conviction based on federal government's "novel use" of a state statute because it "deprive[d]" the defendant "of fair warning to put that statute to such a novel use in order to secure his conviction for violating RICO"); *United States v. Fernandez*, 722 F.3d 1, 30 (1st Cir. 2013) (affirming district court's judgment of acquittal when the state-law bribery law that supported Travel Act charge was repealed). This is especially so because the government, to prove the Travel Act violation, must show the state law was violated. *See United States v. Smokoff*, No. 93-2363, 1995 U.S. App. LEXIS 4206, at *13 (6th Cir. Feb. 28, 1995) ("proof of the commission or an attempted commission of a Federal or state defined criminal offense is an essential element of a Travel Act

---

[5] The government alleges that the Defendants violated the Travel Act, 18 U.S.C. § 1952, by using interstate facilities to carry on an "unlawful activity." Under the Travel Act, an "unlawful activity" includes "bribery … in violation of the laws of the State in which committed or of the United States." § 1952(b)(2).

13

conviction") (quoting *United States v. Finazzo*, 704 F.2d 300, 307 (6th Cir. 1983)). The government cannot prove a violation of Ohio Rev. Code § 3517.22 because it did not comply with the statute's requirements. As a result, the Court should dismiss this predicate offense.

**2.** The Court should also dismiss the Ohio Rev. Code § 2921.02 predicate because Ohio law does not recognize conspiracy to commit bribery under Ohio Rev. Code § 2921.02. "A person can be convicted of conspiracy only if he conspires to commit one of the enumerated offenses stated in R.C. 2923.01." *State v. Trice*, 2008-Ohio-2930, ¶ 16 (Ohio Ct. App.). That section of the Revised Code omits any mention of bribery or § 2921.02. For this reason, a person in Ohio cannot be convicted of conspiracy to commit bribery. Of course, the Indictment here alleges a RICO conspiracy; that is, *agreements* to violate the various predicate offenses. But because a person cannot conspire to commit bribery under § 2921.02, a person cannot conspire to violate the RICO statute by conspiring to commit bribery under § 2921.02.

Householder acknowledges that at least one court, in a decision that does not bind this Court, disagreed with this argument. In *United States v. Dimora*, the court denied the defendant's motion to dismiss the indictment and found that even if Ohio does not recognize conspiracy to commit bribery, the government there "sufficiently allege[d] the *substantive* crime of bribery under § 2921.02." 829 F. Supp. 2d 574, 587 (N.D. Ohio 2011). Unlike in *Dimora*, however, the government does not sufficiently allege the substantive crime of bribery under § 2921.02. And, in any event, the *Dimora* court's analysis is wrong. The RICO statute only permits a state law to support a racketeering charge if the "bribery" offense "is *chargeable* under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A) (emphasis added). Conspiracy to commit bribery is not chargeable under Ohio law. *See* Ohio Rev. Code § 2923.01. And, as the Seventh Circuit explained in *Genova*, the federal government cannot utilize the

14

{01661014-2}

RICO statute to advance novel theories of state law, which is what the Court would be doing in permitting the government to proceed on a conspiracy theory not recognized in Ohio state courts. 333 F.3d 750, 759 (7th Cir. 2003). *Dimora* did not recognize these authorities and arguments and, for those reasons, is not persuasive.

At bottom, Ohio state law bribery cannot constitute racketeering activity. The Court should dismiss it as a predicate offense.

### IV. CONCLUSION

For these reasons, the Court should dismiss the Indictment.

Dated: February 1, 2022

Respectfully submitted,

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
Mark B. Marein (0008118)
MAREIN & BRADLEY
526 Superior Ave.
Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com
       mark@mareinandbradley.com

Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
 & LIFFMAN CO., LPA
1111 Superior Avenue East
Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: nro@mccarthylebit.com

*Counsel for Defendant Larry Householder*