**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 1:20-CR-77** |
| | : | |
| **Plaintiff,** | : | **JUDGE TIMOTHY S. BLACK** |
| | : | |
| **v.** | : | **UNITED STATES'** |
| | : | **RESPONSE TO DEFENDANT** |
| | : | **HOUSEHOLDER'S MOTION TO** |
| **LARRY HOUSEHOLDER, ET AL.,** | : | **DISMISS** |
| | : | |
| **Defendants.** | : | |
| | : | |

The United States respectfully submits this response in opposition to Defendant Larry Householder's Motion to Dismiss. (Doc. 105 at PageID 1756.) In response, the United States asserts that the Court should deny the Defendant's motion for the reasons set forth in the following memorandum.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/Emily N. Glatfelter
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Emily.Glatfelter@usdoj.gov
Email: Matthew.Singer@usdoj.gov

The Defendants in this matter have been charged with committing a racketeering conspiracy. In this motion, Defendant Householder moves to dismiss the Indictment, claiming it does not sufficiently plead a racketeering "enterprise" or a pattern of racketeering activity. But, in doing so, Householder applies an incorrect legal standard and ignores the allegations sufficiently setting forth the offense. Because the Indictment pleads the elements of the charge and sufficiently puts the Defendants on notice of the charge, the motion should be denied.

## I.       RELEVANT BACKGROUND

The grand jury charged the Defendants with conspiring to conduct and participate in the affairs of an enterprise through a pattern of racketeering activity that consisted of multiple acts indictable under 18 U.S.C. §§ 1343, 1346; 18 U.S.C. § 1951; 18 U.S.C. § 1952; 18 U.S.C. § 1956; 18 U.S.C. § 1957; and chargeable under Ohio Rev. Code § 2921.02. (Doc. 22, ¶ 33.) Householder moves to dismiss the Indictment for failure to allege an enterprise and failure to allege facts supporting all of the racketeering predicates. (Doc. 105.) For the reasons below, his arguments are without merit.

## II.      LEGAL STANDARD

"An indictment returned by a legally constituted and unbiased grand jury … if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Kelly*, 462 F. Supp. 3d 191, 195 (E.D. New York 2020) ("dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances").

Racketeering indictments, like all indictments, are governed by Federal Rule of Criminal Procedure 7(c)(1), which requires "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1); *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992) (Sixth Amendment notice requirement "protected by Fed. R. Civ. P. 7(c)"); *United States v. Resendiz–Ponce,* 549 U.S. 102, 110 (2007)( "the Federal Rules 'were designed to eliminate technicalities in criminal pleadings and are to be construed to secure

simplicity in procedure.' . . . While detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1).")  An indictment meets this standard if it:  "set[s] out all of the elements of the charged offense," "give[s] notice to the defendant of the charges he faces," and is "sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts."  *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (quoting *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005)); *Hamling v. United States*, 418 U.S. 87, 117–18 (1974).

Thus, to withstand a motion to dismiss, an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (affirming denial of motion to dismiss part of a RICO indictment).  Because only notice of the charges is required, the government need not allege in the indictment the "elements of proof (as opposed to the elements of the offense)," and the Court may not assess the sufficiency of evidence or resolve jury issues on a motion to dismiss. *Douglas*, 398 F.3d at 419; *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based"); *United States v. Rodriguez-Rivera*, 918 F.3d 32, 34 (1st Cir. 2019) ("Unlike a civil complaint . . . a criminal indictment need only apprise the defendant of the charged offense"); *United States v. Gillette*, 738 F.3d 63, 74 (3d Cir. 2013) (court may not examine "sufficiency of the government's evidence in a pretrial motion to dismiss because the government is entitled to marshal and present its evidence at trial").  Further, in analyzing a motion to dismiss, the "indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications."  *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

## III.    ARGUMENT

### A.  The Indictment Sufficiently Alleges Racketeering Enterprise.

The Defendants are charged with a racketeering conspiracy in violation of 18 U.S.C. §
1962(d).  The Racketeer Influenced and Corrupt Organizations Act (or "RICO") makes it a federal
crime "for any person employed by or associated with any enterprise . . . to conduct or participate,
directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering
activity."    18  U.S.C.  §  1962(c).    Section  1962(d)  criminalizes  persons  who  conspire  to
violate § 1962(c).   In enacting RICO, "Congress intended to create a broad and powerful new
statutory weapon for the federal government to wield against" criminal enterprises, and the Supreme
Court has accordingly given RICO an "expansive interpretation."  *United States v. Bergrin*, 650 F.3d
257, 267-68 (3d Cir. 2011).  The terms of the RICO statute are to be "liberally construed to effectuate
its remedial purposes."  *Boyle v. United States*, 556 U.S. 938, 944 (2009)(quoting § 904(a), 84 Stat.
947, note following 18 U.S.C. § 1961).

An indictment charging § 1962(d) is sufficient if it alleges the following elements: (1) the
existence of an enterprise or an agreement that an enterprise would exist; (2) that the enterprise was
or would be engaged in, or its activities affected or would affect, interstate or foreign commerce; (3)
that the defendant was associated with or employed by the enterprise, and (4) the defendant conspired
to violate 18 U.S.C. § 1962(c), that is, to participate in the conduct of the affairs of the enterprise
through a pattern of racketeering activity.  *United States v. Salinas*, 522 U.S. 52, 62-65 (1997).  The
indictment need not allege any overt acts.  *Id*. at 63; *United States v. Saadey,* 393 F.3d 669, 677 (6th
Cir. 2005) ("conviction on a charge of RICO conspiracy does not require the government to prove
that *any* predicate act was actually committed at all.)"

The Indictment here alleges these elements.   In Count One the Indictment properly and
sufficiently alleges that an enterprise existed (Doc. 22, Indictment, ¶¶ 1, 32, 33); the activities of the

enterprise affected interstate and foreign commerce (¶ 33); the defendants are members and associates of the enterprise (¶¶ 1, 33); the defendants conspired to violate § 1962(c), that is to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity (¶ 33); and each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise (¶ 33). The remaining allegations in the Indictment put the Defendants on notice of the nature of the charge.

These allegations are sufficient to allege a RICO conspiracy, and the motion to dismiss should be denied. *See, e.g.*, *United States v. Groff*, 643 F.2d 396, 401 (6th Cir. 1981) (citing *Hamling* and finding RICO indictment that tracked the statutory language was sufficient); *United States v. Glecier,* 923 F.2d 496, 500 (7th Cir. 1991) (RICO conspiracy indictment sufficient because "an indictment need only charge—after identifying a proper enterprise and the defendant's association with that enterprise—that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity"); *United States v. Jones*, 2009 WL 2972934, at *2 (E.D. Ky. Sept. 11, 2009) (denying dismissal because "[c]harging a RICO violation in the language of the statute itself [is] a practice which generally guarantees sufficiency if all required elements are included in the statutory language"); *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 774 (E.D. Va. 2004) (denying dismissal of substantive and conspiracy RICO charges because both "(i) allege each essential element of the charged offense, (ii) track the language of the statute, and (iii) provide [defendant] with sufficient notice of the charged offenses").

Householder's contrary arguments lack merit. He claims the Indictment should be dismissed because it fails to plead any facts to support the structural features of a RICO enterprise. (Doc. 105 at 1759.) But this ignores the plain language of the Indictment, confuses the standard of pleading with standards of proof, and conflates civil pleading rules with requirements for criminal indictments.

*First*, as explained above, the Indictment contains legally sufficient allegations to charge a violation of § 1962(d).  For example, the Indictment alleges the defendants and others constituted an "enterprise" comprised of "a group of individuals and entities associated in fact" that "constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise."  (Doc. 22, ¶ 1.)  That is enough.  *See Bergrin*, 650 F.3d at 269 (reversing dismissal where "[t]he indictment alleges that the BLE constituted a RICO enterprise because it states this element of the charged offense, is sufficiently specific both to advise the defense of what it must be prepared to defend against and to allow recognition of a double jeopardy problem in future cases, and contains facts that fall within the scope of the RICO statute as a matter of law.").

*Second*, Householder's argument confuses the standards of pleading established by Rule 7 with standards of proof required at trial.  He cites *Boyle v. United States*, as requiring the government to plead specific structural features of an enterprise in an indictment.  (Doc. 105 at 1759.)  But the question in *Boyle* was whether the district court gave "correct and adequate" instructions to the jury regarding the enterprise element.  556 U.S. at 951.  The Supreme Court ultimately affirmed the defendant's conviction, finding that the district court's instructions adequately defined "enterprise" as an element.  *Id.*  Thus, while *Boyle* further defined a RICO enterprise as having structural features, "[w]hether the Government can prove that the enterprise in this case had the structural hallmarks required by *Boyle* is a question of fact to be resolved by a jury at trial."  *Kelly*, 462 F. Supp. 3d at 197 (listing cases where courts denied motions to dismiss RICO indictments premised on arguments that confused standards of pleading with standards of proof); *see also Douglas*, 398 F.3d at 419 (indictment need not allege "elements of proof" but rather "the elements of the offense").  By arguing the Indictment lacks these features, Householder is essentially challenging the sufficiency of the evidence—which is inappropriate in the context of a motion to dismiss.  Rather, he may contest the sufficiency of the evidence after the Government's case-in-chief at trial or after the jury's verdict.

*See* Fed. R. Crim. P. 29*; see also, e.g.*, *United States v. Hann*, 574 F. Supp. 2d 827, 830 (M.D. Tenn. 2008) ( "An indictment that is valid on its face may not be dismissed on the ground it is based on inadequate or insufficient evidence. . . . [A] motion to dismiss should be denied if it requires a pretrial test of the government's evidence."); *United States v. Gotti*, 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004) ("Defendants will have other opportunities to contest the sufficiency of the Government's evidence, but a pretrial motion to dismiss part of the indictment is not the time nor the proper occasion.").

*Third*, Defendant Householder's reliance on civil RICO cases to assert that the criminal Indictment here is insufficient with respect to "enterprise" is misplaced. Unlike criminal RICO indictments, which are governed by Federal Rules of Criminal Procedure 7 and returned by a grand jury, civil RICO complaints are governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and the heightened pleading standards in Federal Rules of Civil Procedure 9. The pleading requirements for civil cases are thus not relevant to an analysis of the legal sufficiency of a criminal indictment. *See United States v. Gatto*, 295 F. Supp. 3d 336, 347-48 (S.D.N.Y. 2018) ("Defendants' reliance on two civil RICO cases is confounding" in moving to dismiss valid indictment); *see also United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013) (rejecting defendant's argument to apply *Iqbal/Twombly* civil standard to a criminal indictment, noting that "[n]o court has taken this approach"); *United States v. Coley*, 2016 WL 743432 at *2 (S.D. Ga. 2016) ("Nowhere in *Twombly* or *Iqbal* did the Supreme Court suggest that this new "plausibility standard" for civil complaints has any application to criminal indictments. Nor has any subsequent decision by any court held that *Twombly* and *Iqbal* should be extended to criminal pleadings."); *Kelly*, 462 F. Supp. 3d 197-98 ("the enterprise/person distinction requirement from civil RICO cases is not relevant to the legal sufficiency

of a properly pleaded criminal indictment").[1]

*Finally*, even if "more" were required, the Indictment is easily sufficient. The RICO statute defines "enterprise" as "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). What constitutes a RICO enterprise is "broad" and "expansive." *Boyle*, 556 U.S. at 944; "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. But there are no set "structural *requirements*" (*e.g.*, name, hierarchy, or fixed roles); rather, an enterprise is "simply a continuing unit that functions with a common purpose." *Id.* at 948; *United States v. Gill*, 702 F.App'x 367, 373–74 (6th Cir. 2017) (rejecting argument that there was insufficient evidence to prove street gang was an enterprise where trial showed the gang's purposes, coordinated efforts, and longevity); *United States v. Lewis*, 2022 WL 216571, *3 (6th Cir. Jan. 25, 2022) (rejecting insufficiency argument regarding enterprise where trial evidence showed purpose, that members supported each other, shared weapons, committed crimes together, redistributed profits).

Here, Householder asserts that the Indictment "describe[s] no relationship joining all the alleged associates, nor any coordinated activity among them, towards a common purpose." (Doc.

---

[1] Lest there be any doubt about the inapplicability of the civil cases cited by Householder, his citation to *Livertad v. Welch,* 53 F.3d 428, 443 (1st Cir. 1995) is instructive. (Doc. 105 at 1760.) In *Livertad*, the First Circuit was examining whether a genuine issue of material fact existed with respect to evidence demonstrating an enterprise. The Court *reversed* the grant of summary judgment related to the existence of an enterprise, finding the evidence demonstrated adequate "systemic linkage, such as overlapping leadership, structural or financial ties, or continuing coordination"—the quote cited in Householder's brief—creating a material issue of fact. *Livertad* has nothing to do with pleading in criminal matters, like others cited in Householder's brief. *See, e.g., Compound Property Management, LLC v. Build Realty, Inc.,* 462 F. Supp. 3d 839, 853–55, 866 (S.D. Ohio 2020) (explaining "[t]o proceed beyond a motion to dismiss on a Civil RICO claim, a plaintiff must plausibly allege" RICO elements based on *Twombly* and finding plaintiffs' allegations "did not meet the plausibility standard."); *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 366 (3d Cir. 2010) ("Because plaintiffs' factual allegations do not plausibly imply anything more than parallel conduct by the insurers, they cannot support the inference that the insurers 'associated together for a common purpose of engaging in a course of conduct.'").

105 at 1760.)  But this argument ignores the plain language of the Indictment, which alleges that the Enterprise's purposes included using secret payments laundered through Generation Now to increase Householder's political power (Doc. 22, ¶¶ 32), and then using Householder's leadership position in Ohio government to benefit the enterprise and enrich financially the Enterprise, its members and associates (¶¶ 32, 43- 46, 48, 53, 78-87, 128, 130-132).  The Enterprise concealed its activities by funneling payments to benefit the Enterprise through a web of related entities.  (¶¶ 15-17, 32, 40, 51, 80, 82-87, 91, 93, 94, 97, 125, 128, 131.)  The Enterprise achieved these purposes through the collective action of its members and associates (the Defendants).  (¶¶ 54-132.)

The Indictment also alleges a relationship amongst the members and associates of the Enterprise, and through their relationship, they functioned as a "continuing unit." (¶ 1.)  Householder functioned as the leader of the Enterprise, by controlling Generation Now—the entity that received bribe payments—and who was associated with or employed by Generation Now (¶ 71), and the role that each Defendant played in the enterprise (*e.g.,* ¶¶ 4-8).  Moreover, the Indictment alleges that members of the enterprise were paid with money laundered through a secret entity—Generation Now (¶¶ 5-8, 82-87, 94, 128, 131); and they worked together to further the Enterprise, internally referring to themselves at times as the "HB 6 Team," and using "Team Householder" to describe the candidates they were supporting with Generation Now funds to further the Enterprise's purpose (¶¶ 45, 90, 113, 114).

The Indictment references recorded statements by conspirators Clark and Borges, demonstrating the common relationship and purpose of the members and associates of the Enterprise. For example, for purposes of using Company A-to-Generation-Now bribe money to further the Enterprise by passing HB 6 in exchange for millions in profit, Clark admitted he was Householder's "proxy" and "overseer." (¶ 64.)  Borges corroborated Clark's statements about his role by referring to Clark as a "proxy" for Householder in meetings involving the Enterprise's efforts. (¶ 65.)  Borges

8

also confirmed that Householder had an "*unholy alliance*" with Company A and Borges' firm to further the House Bill 6 effort (¶ 102), and Borges received Company A-to-Generation-Now payments to further the Enterprise's criminal efforts relating to the nuclear bailout (¶¶ 125–26). Enterprise members also benefited financially through Householder's and the Enterprise's corrupt relationship with Company A (¶¶ 5-8, 82-87, 94, 128, 131). Finally, in terms of longevity, they operated with a common purpose over a three-year period, sufficient time for the Enterprise to achieve its purposes. (¶¶ 33, 55-132 (actions in furtherance of the conspiracy spanning from 2016 to 2020).)

For all of these reasons, the Indictment sufficiently pleads a racketeering enterprise.

**B. The Indictment Sufficiently Pleads a Pattern of Racketeering Activity.**

Defendant Householder also claims that the Court should dismiss the Indictment because it fails to plead a pattern of racketeering. (Doc. 105 at 1761.) Again, Householder's claim is meritless.

As an initial matter, Householder alleges that "the government fails to plead an agreement to commit each of the elements of the alleged offenses . . . all it does is simply list the statutes." (*Id*. at 1761.) Putting aside that this is false, listing the statutes is all that is required for a *Glecier* RICO conspiracy. *Glecier*, 923 F.2d at 500 (holding RICO conspiracy indictment alleging multiple acts of bribery prohibited by specific provision of state law valid); *United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011) ("Because a RICO conspiracy charge need not specify the predicate or racketeering acts that the defendants agreed would be committed, . . . it is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity"); *United States v. Phillips,* 874 F.2d 123, 127 n. 4 (3d Cir. 1989) (RICO conspiracy count sufficient despite "failure to specify, with particularity, which acts of bribery and extortion appellants allegedly agreed to commit"); *United States v. Dimora*, 829 F. Supp. 2d 574, 586–87 (N.D. Ohio 2011) (following *Glecier* and denying motion to dismiss claiming that RICO conspiracy indictment failed to allege specific predicate acts); *United States v. Norwood*, 2013

WL 5965328, *8 (E.D. Mich. 2013) (under *Glecier* "the indictment must allege specific crimes or types of crimes that the conspiracy agreed to commit and that would constitute a 'pattern of racketeering activity' if carried out"). Because paragraph 33 of the Indictment lists the types of criminal activity that would constitute a pattern of racketeering if carried out, the Indictment sufficiently pleads a pattern of racketeering.

In any case, the Indictment alleges the elements and specific facts relating to each of the predicates, putting the Defendants on notice as to the nature of the charge.

1. **Federal Bribery Predicates (18 U.S.C. §§ 1343, 1346, 18 U.S.C. § 1951)**

The Indictment charges that the Defendants conspired to conduct the affairs of the Enterprise through multiple acts of public official bribery under the honest services statute, 18 U.S.C. § 1343, 1346, and the Hobbs Act, 18 U.S.C. § 1951. (Doc. 22 at 1257.) These statutes criminalize bribery involving a quid pro quo payment to a public official in exchange for official action. *See Skilling v. United States*, 561 U.S. 358, 407–08 (2010) (intangible right under § 1346 covers schemes to deprive another of honest services by participating in a "bribery or kickback scheme"); *Evans v. United States*, 504 U.S. 255, 260 (1992) (under the Hobbs Act, "[e]xtortion by the public official was the rough equivalent of what we would now describe as 'taking a bribe.'").

The Supreme Court set forth the standard for bribery involving campaign contributions in *McCormick v. United States,* and *Evans v. United States*.[2] In *McCormick*, the Court held a public official may "commit extortion in the course of financing an election campaign . . . if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform

---

[2] By pleading the public official bribery predicates consistent with *McCormick/Evans'* heightened explicit standard, the government does not concede that the payments here should be afforded the same protection as campaign contributions that are publicly disclosed. Here, the Indictment alleges that Company A paid millions of dollars to Householder through a 501(c)(4) entity (Generation Now), which "in reality" operated as a secret, non-public "slush fund" that Householder used for his personal benefit. (Doc. 22, ¶¶ 4, 82.) The government reserves the right to argue that whether the payments qualify as "campaign contributions" is for the jury. *See McCormick*, 500 U.S. at 270–74.

an official act." 500 U.S. 257, 273 (1991). *Evans* clarified the standard a year later: "if a public official demands or accepts money in exchange for [a] specific requested exercise of his or her official power, such a demand or acceptance does constitute a violation of the Hobbs Act regardless of whether the payment is made in the form of a campaign contribution." 504 U.S. at 258. The Court concluded: "We hold today that the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Id*. at 268; *id*. at 274 ("the official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods.") (J. Kennedy, concurring).

The Sixth Circuit has applied this standard in setting forth requirements for an honest services fraud violation in the campaign contribution context. In *United States v. Terry*, the defendant, a judge, received $1,200 in campaign contributions and campaign benefits, and then a year later denied summary judgement motions at the donor's request. 707 F.3d 607, 610-11 (6th Cir. 2013). Following conviction, the Court held the district court properly denied the defendant's motion to dismiss because the indictment tracked the statutory language. *Id*. at 611. The Court then affirmed the district court's instruction that, to find an honest services fraud violation, the jury "needed to find a 'quid pro quo:' that is, [the defendant] agreed 'to accept [a] thing of value in exchange for official action.'" *Id*. at 614. The Court explained that "a campaign contribution" can be "a thing of value" as long as the contribution "is received in exchange for official acts." *Id.* The Court held, what matters in the campaign contribution context is that "payments were made in connection with an agreement, which is to say 'in return for' official actions under it." *Id*. at 613.

Here, the indictment easily meets this standard. The Indictment alleges that Generation Now, a 501(c)(4) secretly controlled by Householder, was a "slush fund" for receiving bribe payments. (Doc. 22, ¶¶ 4, 35–40.) As part of the conspiracy, Householder received bribes from Company A to help "team Householder" candidates who would help Householder get elected Speaker and support

11

House Bill 6. (*Id.* ¶ 45.)  The Indictment alleges the Enterprise "agreed to receive and accept millions of dollars in bribe payments from Company A . . . in return for **HOUSEHOLDER** taking *specific, official action* for the benefit of Company A," namely, to help enact legislation to save the Nuclear Plants. (*Id.* ¶ 41.) (emphasis added.)  The Indictment then lists the "specific official action": crafting the legislation; creating a House subcommittee and appointing members to the subcommittee; pressuring and advising public officials to further the legislation; scheduling and arranging for votes; and voting in favor of the legislation. (*Id.*)  The Indictment further alleged that, after his election as Speaker, Householder promised and performed official action by enacting HB 6 into law "in return for payments from Company A," the Enterprise "received and accepted millions of dollars in bribe payments" from Company A while HB 6 was pending, and the Enterprise "coordinated with agents of Company A" relating to payments and the passage of HB 6." (*Id.* ¶¶ 47–49.)

Setting aside that the Indictment charges Householder with a RICO conspiracy, the above allegations, along with the introductory paragraphs establishing background (paragraphs 1–33), set forth an explicit quid pro quo scheme:  Householder received Company A payments in exchange for "specific official action" for Company A, as identified in the Indictment.  This is all that is required to meet the *McCormick/Evans* standard for campaign contributions and put the Defendant on notice to enable him to plead double jeopardy.  *Lee*, 919 F.3d at 354; *see Terry*, 707 F.3d at 611 (indictment tracking statutory language sufficient in campaign contribution bribery case); *United States v. Beasley*, 2014 WL 1870786, at *5 (E.D. Mich. May 8, 2014) (denying dismissal in campaign contribution case where Indictment alleged bribee accepted bribes and kickbacks such as cash, travel, meals from briber "in order to secure monies'" for briber's business).

Householder arguments to the contrary have no merit.  Householder argues the Indictment "does not allege facts" showing an explicit quid pro quo.  (Doc. 105 at 1763.)  He suggests an Indictment is only sufficient in the campaign context if it alleges the exact time the briber and bribee

formally agreed to the quid pro quo and must "link" specific official action with "a specific contribution." (*See id.* at 1763–66.) These arguments are contrary to the law and ignore the allegations in the Indictment.[3]

*First*, aside from the fact that this level of specificity is not required in an Indictment as set forth above, Householder appears to improperly conflate "explicit" with "express." As set forth in *United States v. Blandford*, a case involving campaign contributions, "explicit" under *McCormick/Evans* does not "express." 33 F.3d 685, 696 (6th Cir. 1994). "Explicit, as explained in *Evans*, speaks not to the form of the agreement between the payor and payee, but to the degree to which the payor and payee were aware of its terms, regardless of whether those terms were articulated." *Id.* The Court explained the *McCormick/Evans* standard: "*Evans*, we believe, merely clarified . . . that the quid pro quo of *McCormick* is satisfied by something short of a formalized and thoroughly articulated contractual arrangement (*i.e.*, *merely knowing the payment was made in return for official acts is enough*)." *Id.*; *Beasley*, 2014 WL 1870786, at *2 (rejecting argument "campaign contributions cannot be considered bribes or kickbacks unless there is an *explicit promise* that the contribution is being provided in return for the official to perform a *specific act*," as "premised on an erroneous reading of *McCormick*, *Evans*, and *Terry*."); *see United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015) (magic words not required; "[f]ew politicians say, on or off the record, 'I will exchange official act X for payment Y.'"); *United States v. Wright*, 665 F.3d 560, 569 (3d Cir. 2012) ("Parties to a bribery scheme rarely reduce their intent to words, but the law does not require that."); *Compare* Exhibit A (Indictment in *United States v. Terry*, No. 1:10CR390 (N.D. Ohio) *with*

---

[3] In an undeveloped argument, Householder suggests the Indictment it is the result of government "overreach," citing to *Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020). (Doc. 105 at 1756, 1761–62.) But *Kelly* did not involve bribery and is irrelevant. 140 S. Ct. at 1572 ("bribes or kickbacks [are] not at issue here"). In addition, Householder cites repeatedly to a civil case applying the "plausibility" standard and "heightened" pleading requirement in civil fraud cases. (*See, e.g., id.* at 1763, 1764, 1765 (quoting *Huff v. FirstEnergy*, 972 F. Supp. 2d 1018 (N.D. Ohio 2013)). But, as explained above, civil cases are irrelevant to sufficiency of a criminal indictment.

*Terry*, 707 F.3d at 611 (affirming denial of defendant's motion to dismiss the honest services charge in a campaign contribution bribery case because the indictment tracked the statutory language, despite the fact that the Indictment did not allege a "specific" or "explicit" quid pro quo, while rejecting defendant's argument that this was required).

*Second*, Householder's argument that *McDonnell* and *Terry* somehow require dismissal because the Indictment does not link official action with a "specific contribution" was rejected by *Terry*: "[e]ach payment did not need to be tied to a specific official act, so long as [the defendant] understood that whenever the opportunity present[ed] itself, [the defendant] would take specific official actions on the giver's behalf." *Terry*, 707 F.3d at 614 (quoting jury instructions, which Court found accurately reflected law)(internal quotations omitted); *see also* Exhibit A, ¶¶ 24-28 (Indictment in *United States v. Terry*, No. 1:10CR390 (N.D. Ohio). Regardless, the Indictment here alleges that the Company A bribe payments were linked to furthering nuclear bailout legislation—specific official action in return for specific contributions. And Householder cannot reasonably argue that crafting specific nuclear legislation, create subcommittees and appointing members for the legislation, pressuring and advising other public officials to further the legislation, and ensuring passage and voting for the legislation are not "specific and focused" matters that qualify as official acts. *McDonnell v. United States*, 136 S. Ct. 2355, 2370–72 (2016).

Nevertheless, whether a quid pro quo existed is a question of fact for the jury, which courts may not assess based on allegations in an indictment. As the Sixth Circuit explained in *Terry*, because "most bribery agreements will be oral and informal, the question is one of inferences taken from what the participants say, mean and do, all matters that juries are fully equipped to assess." 707 F.3d at 613 ("motives and consequences, not formalities are keys for determining whether a public official entered an agreement to accept a bribe.") Further, "[i]t is *up to the jury*, under the facts of the case, to determine whether the public official agreed to perform an official act." *McDonnell*, 136 S.

Ct. at 2371 (emphasis added). Dismissal is therefore improper. *See, e.g., Beasley*, 2014 WL 1870786, at *5 (denying dismissal because the court may not "step into the shoes of the jury and make factual determinations and draw reasonable inferences from those facts and conclude" whether campaign contributions constituted a bribe). *United States v. Pawlowski*, 2017 WL 11350965, at *1 n.1 (E.D. Pa. Dec. 5, 2017) ("Whether the acts alleged in the Indictment in fact satisfy the meaning of an explicit quid pro quo under *McCormick*, or the definition of an 'official act' under *McDonnell*, are factual determinations to be resolved after the Government has presented evidence at trial.").

*Finally*, somewhat relatedly, Defendant Householder argues the payments are too attenuated from official action. (Doc. 105 at PageID 1765–66.) Not so. The Court explained in *Terry*, "*[w]ithout anything more*, a jury could not reasonably infer that a campaign contribution is a bribe *solely* because a public official accepts a contribution and later takes an action that benefits a donor." 707 F.3d at 615 (emphasis added). Thus, the government cannot *prove its case at trial* by *solely* presenting evidence of a contribution and then later official action. But this is not a pleading rule—again, at this stage, the government need only allege elements and facts so the Defendants know the nature of the charge.

In any case, the Indictment alleges 26 pages of facts showing the "motives and consequences" supporting the quid pro quo, including: the need for the bailout (Doc. 22, ¶¶ 22–25); Householder received bribes through a "secret" 501(c)(4) and funneled funds to hide payments (¶¶ 72–76), *see United States v. McNair*, 605 F.3d 1152, 1197 (11th Cir. 2010) ("[T]he extent to which the parties went to conceal their bribes is powerful evidence of their corrupt intent"); in exchange for payments, Householder gave Company A "*what they need*" through House Bill 6, suggesting coordination (¶¶ 99, 98–118); statement that "*[Company A] got $1.3 million in subsidies, free payments*" from HB 6, "*so what do they care about putting in $20 million a year for this thing*"—tying legislation to payments (¶ 100), *see Blandford*, 33 F.3d at 696 ("knowing the payment was made in return for

15

official acts is enough"); statement that Householder "*went to war for Company A*," but people like Householder can only do so sparingly because otherwise "*everyone knows they're pay to play*" (¶ 101); and Householder and Company A formed an "*unholy alliance*" with regards to the bailout (*id*. ¶ 102), among many other facts in the Indictment. All of these facts, read as a whole—and in context with *the millions of dollars in quid* to Householder from Company A and Householder's coordinated efforts securing *the trillion-dollar quo* for Company A—show Householder's explicit quid pro quo with Company A. *McAuliffe*, 490 F.3d at 531. The predicates are properly alleged.

**2. Private Honest Services Predicates (18 U.S.C. §§ 1343, 1346)**

Householder argues the Indictment "does not allege the existence of any duty or a breach of it" to support the private honest services predicates. (Doc. 105 at 1767.) To *prove* private honest services fraud at trial, "the prosecution must prove only that the defendant intended to breach his fiduciary duty, and reasonably should have foreseen that the breach would create an identifiable economic risk to the victim." *United States v. Frost*, 125 F.3d 346, 369 (6th Cir. 1997). But, to *plead* the charge, "[t]he indictment has only to allege that defendants devised a scheme to defraud, involving use of the mails for the purpose of executing the scheme." *United States v. Douglas*, 398 F.3d 407, 419 (6th Cir. 2005). This means the Indictment need not allege facts meeting the "evidentiary burden" of proving a breach of fiduciary duty. *See id*. (reversing dismissal because indictment properly alleged elements of offense and need not allege *Frost* elements of proof); *United States v. Full Play Grp*., 2021 WL 5038765, at *7 (E.D.N.Y. Oct. 29, 2021) ("[w]hether there actually exists a fiduciary duty is a fact-based determination that must ultimately be determined by a jury properly instructed on this issue.").[4]

In any event, the Indictment here alleges the Enterprise pursued a quid pro quo scheme to

---

[4] The government further adopts its response to Defendant Borges' motion to strike. *See* Doc. No. 113.

bribe employees and agents of the Ballot Campaign, pleading the existence of a fiduciary duty to provide honest services to the Ballot Campaign. *Frost*, 125 F.3d at 366 ("It is axiomatic that an employee has a fiduciary duty to protect the property of his employer."). And the Indictment alleges the Enterprise bribed the employees/agents—who were hired to help the Ballot Campaign gather signatures to put a referendum overturning HB 6 on the ballot—for information to defeat the Ballot Campaign's efforts, establishing a breach of that duty. This is all that is required at this stage.

### 3. Money Laundering Predicates (18 U.S.C. § 1956, 18 U.S.C. § 1957)

Next, Householder argues the money-laundering predicates—as alleged under 18 U.S.C. § 1956 and § 1957—should be dismissed because the bribery predicates fail. But, for the reasons set forth herein, the federal and state bribery predicates are sufficiently plead. Furthermore, the Indictment alleges Householder and the Enterprise conspired to "receive[] and accept[] payments from Company A corruptly with the intent that **HOUSEHOLDER** would be influenced and rewarded in connection with the legislation that would save the operation of the Nuclear Plants," (Doc. 22, ¶ 42), establishing 18 U.S.C. § 666(a)(1)(B) as "specified unlawful activity" supporting the money-laundering predicates. *See* 18 U.S.C. § 1956(c)(7)(D) (listing § 666 as specified unlawful activity); *see also United States v. Porter*, 886 F.3d 562, 565 (6th Cir. 2018) ("the text of § 666(a)(1)(B) says nothing of a quid pro quo requirement to sustain a conviction, express or otherwise," and "while a quid pro quo of money for a specific . . . act is sufficient to violate the statute, it is not necessary")(quotations marks omitted).

### 4. Travel Act Predicates (18 U.S.C. § 1952)

Householder seeks dismissal of the Travel Act predicates because the government did not file a complaint with the Ohio Elections Commission before indicting. (Doc. 105 at 1768.)

This argument misunderstands the charged offense—a racketeering conspiracy. The Defendants are charged with conspiring to participate in the Enterprise's affairs through at least two

acts of racketeering activity under § 1962(d). "Section 1962(d) is a conspiracy offense, which as *Salinas* reminds us, criminalizes an *agreement* rather than any substantive criminal offense." *United States v. Rich*, 14 F.4th 489, 493 (6th Cir. 2021). Thus, because the agreement is the crime, "conviction on a charge of RICO conspiracy does not require the government to prove that *any* predicate act was actually committed at all." *Saadey*, 393 F.3d at 677. Indeed, "[n]either overt acts, nor specific predicate acts that the defendant agreed to personally commit, need to be alleged or proved for a section 1962(d) offense." *Glecier*, 924 F.2d at 500 (internal citation omitted). Thus, whether specific requirements for filing a state charge in Ohio courts were followed is irrelevant to whether the Defendants violated federal law by conspiring to participate in a racketeering Enterprise in this federal prosecution.

The argument also misunderstands the Travel Act. "The predicate offense, *i.e.,* the 'unlawful activity,' in a Travel Act prosecution serves only to define the accused's conduct." *United States v. Welch*, 327 F.3d 1081, 1092 (10th Cir. 2003). The Travel Act criminalizes the "*intent* to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a); *Welch*, 327 F.3d at 1092 (reversing dismissal of indictment). Consequently, "[t]he Travel Act proscribes not the unlawful activity per se, but the use of interstate facilities with the requisite intent to promote such unlawful activity." *Welch*, 327 F.3d at 1092. This means "the government d[oes] not have to prove that an act of commercial bribery had occurred in order to obtain a Travel Act conviction." *United States v. Gullett*, 713 F.2d 1203, 1209 (6th Cir. 1983)); *Welch*, 327 F.3d at 1092 ("[a]n actual violation of [] is not an element of the alleged Travel Act violations . . . and need not have occurred to support the . . . § 1952 prosecution."). So whether a state filing requirement for local prosecutors was fulfilled has no bearing on whether Travel Act predicates were properly alleged.

The authority cited by Householder does not support his position. He cites *United States v. Genova* for the holding that an Illinois statute prohibiting "using public funds to pay municipal employees for political labor" is not bribery under RICO. 333 F.3d 750, 759 (7th Cir. 2003). But *Genova* has nothing to do with whether a federal prosecutor must satisfy state law requirements by filing an administrative complaint before charging a federal racketeering conspiracy in federal court. Householder cites no case supporting this proposition. The same goes with, *United States v. Fernandez*, which came to the unexceptionable holding that a repealed statute cannot be a Travel Act predicate because acts occurred "at a time when [the defendant's] conduct could not violate those laws." 722 F.3d 1, 31 (1st Cir. 2013). Here, the Indictment alleges a RICO conspiracy to violate the Travel Act through *a valid* Ohio bribery statute predicate—all that is required under federal law.

Last, Householder quotes *United States v. Smokoff* for the claim that "proof of the commission or an attempted commission of a Federal or state defined criminal offense is an essential element of a Travel Act conviction." (Doc. 105 at 1768). But Householder cuts the quote short, contained in *Smokoff*, which quoted *United States v. Finazzo*, 704 F.2d 300, 307 (6th Cir. 1983), leaving out the central principle: "it is certainly true that the . . . crime need not be actually accomplished." *Finazzo*, 704 F.2d at 307. *Finazzo* applied this well-established principle: "the ultimate consummation of the conspiratorial scheme was not required for a Travel Act conviction here." *Id.*; *see Gullett*, 713 F.2d at 1209 ("the government did not have to prove that an act of commercial bribery had occurred in order to obtain a Trave Act conviction"); *United States v. Goldfarb*, 643 F.2d 422, 426 (6th Cir. 1981) (observing it is "violation of federal law which is the gravamen of a Travel Act offense . . . the state crime need not be actually accomplished"); *United States v. Nickerson*, 606 F.2d 156, 158 (6th Cir. 1979) ("The fact that defendants never completed the state offense has no bearing on their convictions under 18 U.S.C. § 1952. . . . The record contains ample evidence from which the jury could find

beyond a reasonable doubt that each defendant used interstate facilities with the requisite intent to commit [the state law predicate].").

Regardless, none of this bears on whether administrative requirements for charging in state court has any bearing here, where the conduct was a properly alleged federal crime. Accordingly, Householder's motion to dismiss the Travel Act predicates should be denied.

### 5. Ohio Bribery Predicates (Ohio Rev. Code § 2921.02)

Finally, Defendant Householder seeks dismissal of the Ohio Rev. Code § 2921.02 predicates, arguing that because § 2921.02 does not have a conspiracy provision under state law, the statute cannot be a predicate for a RICO conspiracy charge. (Doc. 105 at 1769.) But the Indictment charges Householder with conspiracy to violate 18 U.S.C. § 1962(c) by participating in the affairs of the Enterprise through a pattern of racketeering activity, "consisting of . . . multiple acts involving bribery, *chargeable* under Ohio Revised Code § 2921.02." (Doc. 22, ¶ 33.) Like in *Dimora*, 829 F. Supp. 2d at 587, cited by the Defendant, the Indictment therefore alleges the substantive offense of § 2921.02. And, like *Dimora*, the allegations in the Indictment support the charge, alleging that Householder agreed to receive millions of dollars in bribes from Company A in return for Householder taking specific official action for the benefit of Company A by helping enact legislation to save the Nuclear Plants, (Doc. 22, ¶ 41); and Householder accepted the payments from Company A corruptly with intent to be influenced in connection with the nuclear bailout legislation, (*id.*). These allegations are chargeable under § 2921.02 and "would rise to a violation of this section." *Dimora*, 829 F. Supp. 2d at 587; *see* Ohio Rev. Code § 2921.02(B).

Contrary to Householder's claim, including the § 2921.02 offense as a predicate is not "novel" use of the RICO statute (Doc. 105 at 1769–70)—it is straightforward application of the statute's plain language. The statute unambiguously criminalizes conspiracy to commit substantive racketeering offenses. 18 U.S.C. § 1962(d). If Congress intended predicates applicable to a § 1962(d) conspiracy

charge only include state laws chargeable as conspiracy offenses, it would have done so. But it did

the opposite—racketeering activity broadly includes any "*any act* or threat involving . . . bribery . . .

chargeable under state law." 18 U.S.C. § 1961(1)(A). The motion should be denied.

## IV.    CONCLUSION

Defendant Householder's motion to dismiss should be denied.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney


s/Emily N. Glatfelter
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Emily.Glatfelter@usdoj.gov
Email:  Matthew.Singer@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Response was served electronically upon all counsel of record.

s/Emily N. Glatfelter
EMILY N. GLATFELTER (0075576)
Assistant United States Attorney