

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | SUPERSEDING INDICTMENT |
| | ) | |
| Plaintiff, | ) | JUDGE LIOI |
| | ) | |
| v. | ) | CASE NO. 1:10CR390 |
| | ) | |
| STEVEN J. TERRY, | ) | Title 18, United States |
| | ) | Code, Sections 1341, 1346, 1349 and 2 |
| Defendant. | ) | |

The Grand Jury Charges:

General Allegations

At all times material herein:

Relevant Persons and Entities

    1.    Cuyahoga County, Ohio ("County"), was a government agency. Its departments included the Cuyahoga County Auditor's Office ("Auditor's Office"), which was headed by an elected public official.

    2.    The Board of Cuyahoga County Commissioners ("County Commissioners") was the central governmental body of the County, consisting of three co-equal members who were

elected at large for four-year terms. The County Commissioners' powers included budgeting, levying taxes, issuing bonds, letting contracts for public works services, monitoring expenditures, administering purchases, and making personnel decisions. The County Commissioners had authority to appropriate funds for the operations of their own agencies and other elected County officials, including the County Auditor and the Cuyahoga County Court of Common Pleas ("Common Pleas Court").

3. Defendant STEVEN J. TERRY ("TERRY") was seeking appointment as a Common Pleas Court judge, and after on or about April 20, 2007, was a Common Pleas Court judge. In that capacity, TERRY's official duties included presiding over both criminal and civil cases.

4. Frank P. Russo ("Russo") was the County Auditor, an elected County official. He was the County's chief fiscal officer, with overall responsibility for all County funds. Russo had the power to influence contracts and expenditures within the Auditor's Office and had authority over personnel decisions within the Auditor's Office, including hiring, approving raises or promotions, terminating employment, and establishing job duties.

5. Russo was an influential member of a County political party and controlled substantial financial resources through a campaign fund known as "Friends of Frank Russo."

6. Joseph P. O'Malley ("O'Malley") was an attorney licensed to practice law in the State of Ohio. O'Malley was a County employee who worked for Russo from in or about March 1997 to in or about April 2004. From on or about January 1, 2008, to on or about December 31, 2009, O'Malley worked as independent contractor for the County Information Services Center.

7. Public Employee 32 ("PE32") was a County employee who worked for the Auditor's Office and subsequently for TERRY.

8. Public Employee 54 ("PE54") was an Auditor's Office employee.

9. Public Employee 56 ("PE56") was a County employee, who worked for the Auditor's Office and subsequently for TERRY.

TERRY's Appointment to the Common Pleas Bench

10. In or around early 2007, Russo supported TERRY in TERRY's efforts to obtain appointment to the Common Pleas Court.

11. On or about April 20, 2007, TERRY was appointed to the Common Pleas Court.

12. In or around 2007, TERRY announced his candidacy to retain his seat on the Common Pleas Court, and sought and obtained Russo's support in the November 2008 election (hereinafter TERRY's 2008 campaign).

13. On or about November 4, 2008, TERRY was elected to the Common Pleas Court.

The Duty of Honest Services/Ohio Code of Judicial Conduct

14. The County operated under the laws of the State of Ohio ("State"). The County served as an agency for the administration of State law.

15. The Common Pleas Court was the court of general jurisdiction, handling both criminal and civil cases.

16. Common Pleas Court judges possessed numerous powers conferred upon them by law, regulation and custom, and the Common Pleas Court judges owed a duty of honest services and fair dealing to the County, the State and their citizens and taxpayers, and litigants.

17. The County, the State and their citizens and taxpayers, and litigants had an intangible right to the honest services of Defendant TERRY. As a Common Pleas Judge, TERRY had a fiduciary relationship with the State, the County, its citizens, and the litigants appearing before him. TERRY was required to follow each Canon of The Ohio Code of Judicial Conduct including Canon 3(B)(7) which provided: "A judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding[.]"

The American Home Bank Litigation

18. Upon his appointment, TERRY inherited numerous cases, including K&L Excavation, Ltd. v. Auburn Building Company, et al., Case No. CV-03-515172 and Avon Poured Wall, Inc. v. Brian Lane, et al., Case No. CV-04-519620, related cases, which involved a multiparty civil foreclosure action concerning a house that Litigant 1 had been constructing (hereinafter collectively the American Home Bank Case). As part of the litigation, American Home Bank ("AHB") sought $190,000 in damages from Litigant 1.

19. In the American Home Bank Case, Attorney Joseph O'Malley represented Litigant 1 and Attorney 4 represented AHB.

20. On or about November 27, 2006, Litigant 1 filed a motion for summary judgment, arguing that no material issues of fact were in dispute and that Litigant 1 was entitled to judgment as a matter of law.

21. On or about March 28, 2008, AHB filed a motion for summary judgment, arguing that no material issues of fact were in dispute and that it was entitled to judgment as a matter of law.

4

22. On or about October 7, 2008, AHB agreed to settle the case for a judgment against Litigant 1 in the amount of approximately $27,000 plus the deed to the property.

## COUNT 1
(Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud, 18 U.S.C. §§ 1341 and 1346, in violation of 18 U.S.C. § 1349 )

The Grand Jury further charges:

23. Paragraphs 1 through 22 of the General Allegations are re-alleged and incorporated by reference as if fully set forth herein.

## THE CONSPIRACY

24. From on or about February 23, 2007, and continuing through on or about November 17, 2008, the exact dates being unknown to the Grand Jury, in the Northern District of Ohio, Eastern Division, Defendant STEVEN J. TERRY, Frank P. Russo (not charged herein), and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to commit an offense against the United States, namely, to devise and intend to devise a scheme and artifice:

(1) to defraud and deprive Cuyahoga County, its citizens and taxpayers, Common Pleas Court and certain litigants, including AHB, of their right to the honest and faithful services of TERRY, through bribery and kickbacks and the concealment of material information related thereto,

(2) to defraud certain litigants, including AHB, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises,

(3) to defraud the Auditor's Office and Cuyahoga County and its citizens and taxpayers, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to cause matters to be placed in any post office and authorized depository for mail matter to be sent and delivered by the United States Postal Service and private and commercial interstate carrier, in violation of Title 18, United States Code, Sections 1341 and 1346.

## OBJECTS OF THE CONSPIRACY

25. It was an object of the conspiracy that TERRY secretly used his official position to enrich himself by soliciting and accepting gifts, payments, and other things of value from Russo, in exchange for favorable official action, and that Russo enriched himself and his designees by secretly obtaining favorable official action for himself and his designees through corrupt means.

26. It was a further object of the conspiracy that TERRY, with the assistance of Russo, deprived the Auditor's Office and Cuyahoga County and its citizens of money and property by using County resources to benefit TERRY's campaign.

27. It was a further object of the conspiracy that TERRY, with the assistance of Russo, deprived and attempted to deprive AHB of money and property by giving O'Malley's clients a secret advantage in the litigation, and by failing to disclose that secret advantage to AHB.

## MANNER AND MEANS

It was part of the conspiracy that:

28. TERRY solicited and accepted gifts, payments, and other things of value from Russo, including financial support for TERRY's 2008 campaign. In exchange, TERRY provided favorable official action for the benefit of Russo as requested and as opportunities arose, such as engaging Russo in ex parte communications about pending cases and taking judicial action following those ex parte communications.

29. The conspirators took steps to hide, conceal, and cover up their activity and the nature and scope of Russo's corrupt relationship with TERRY.

30. After TERRY's appointment, Russo used Auditor's Office resources to assist in TERRY's 2008 campaign.

31. During TERRY's 2008 campaign, TERRY used Common Pleas Court resources, including postage for political mailings and a Court employee's time, to assist in TERRY's 2008 campaign.

32. On or about May 2, 2008, TERRY asked Russo if one of Russo's employees could help TERRY "get my parade s--t together." Russo responded that the employee was in the room with him and that TERRY was welcome to use him/her.

33. In or around May 2008, when the relationship between TERRY and PE56 soured, Russo offered to hire her back at the Auditor's Office at a salary higher than PE56 previously made at the Auditor's Office.

34. In or about Spring and Summer 2008, O'Malley was trying to settle the American Home Bank Case. O'Malley's efforts to settle the case were hindered by the fact that no rulings had been made on the pending motions for summary judgment.

35. In or around Spring 2008, O'Malley was meeting with Russo in Russo's office when a member of Russo's staff told Russo that TERRY had arrived to see him. O'Malley told Russo that he needed TERRY to review the motions for summary judgment on his case and that O'Malley could not settle the case until the motions for summary judgment were resolved.

36. On or about July 17, 2008, TERRY told Russo, "PE32 called and said you wanted me to call you." Russo replied, "Yeah, I just wanted to let you know. Did PE54 give you the case numbers?" TERRY said, "Yes." Russo then stated, "Okay, in other words, I talked to you about this once before, was deny, it's about denying the motions for summary judgment." TERRY replied, "Yep, I still have the note that you gave me." Russo repeated, "Okay, good, so deny the motions for summary judgment, okay, good." TERRY replied, "Got it." Russo replied, "Alright, good. No, that was all. I just wanted to touch base with you on that, and that's it." At the end of the conversation, Russo asked TERRY to inform him of the dates and times for his (TERRY's) political fundraisers so Russo could attend them.

37. On or about July 17, 2008, the magistrate assigned to the American Home Bank Case became aware that TERRY wanted to discuss the American Home Bank Case with her. When the magistrate tried to discuss the merits of the case, TERRY interrupted and instructed the magistrate to deny AHB's motion for summary judgment.

38. On or about July 18, 2008, TERRY told O'Malley that he had just denied the motions for summary judgment. O'Malley thanked TERRY, and asked whether the summary judgment motions he had just denied were his (O'Malley's) or the other party's. TERRY replied that he did not know which motions he had denied.

39. On or about July 18, 2008 at approximately 10:31 a.m., Russo called TERRY, who stated, "This is so ironic that you are calling me because I called you just to tell you that I

8

took care of those two issues with those two cases that we talked about." Russo replied, "Okay." TERRY stated, "I just did it this morning right?" Russo replied, "Okay." TERRY stated, "Denied everything. And then who's over in my courtroom right now. But Joe O'Malley." Russo stated, "So he's over . . . alright." TERRY stated, "Yeah, so everyone's, we're all on the same page." Russo replied, "Very good, very good. Tell him I said hi."

40. On or about July 18, 2008 at approximately 10:44 a.m., Russo received a call from Joe O'Malley, who stated, "You took care of that, he [TERRY] just told me." Russo replied, "Yeah, yeah, so it worked out good." O'Malley then stated, "That's huge. I should be able to settle that thing. It's a nightmare." Russo replied, "Alright, good."

41. TERRY concealed from certain litigants the fact of his ex parte communications with Russo and the effect of those communications on TERRY's rulings.

## EXECUTION OF THE SCHEMES

42. On or about the dates listed below, in the Northern District of Ohio and elsewhere, TERRY, Russo and others, for the purpose of executing the above-described schemes and artifices, caused documents to be delivered and sent through the United States mails, and interstate private and commercial carrier, including the following:

| Date | Description |
|---|---|
| July 11, 2007 | Friends of Frank Russo Check #5692 |
| July 17, 2007 | Friends of Frank Russo Check #5707 |
| Dec. 26, 2007 | Letter from Judge Steven J. Terry to Friends of Frank Russo |
| July 18, 2008 | Notice of TERRY's judgment entry denying AHB's motion for summary judgment in the American Home Bank Case, sent from the Common Pleas Court in Cleveland, Ohio, to Attorney 4 in Cincinnati, Ohio. |

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
(Mail Fraud, in violation of 18 U.S.C. §§ 1341 and 2)

The Grand Jury further charges:

43. The General Allegations contained in paragraphs 1 through 6, 10 through 13, and 18 through 22 of this Superseding Indictment are incorporated herein as if set forth in full.

### The Scheme

44. From on or about February 23, 2007, and continuing through on or about November 17, 2008, in the Northern District of Ohio, Eastern Division, STEVEN J. TERRY, the Defendant, Frank P. Russo, and others known and unknown to the Grand Jury, did devise and intend to devise a scheme and artifice to defraud and deprive certain litigants, including AHB, of money and property by means of materially false and fraudulent pretenses, representations, promises and omissions.

45. It was part of the scheme and artifice that TERRY expedited and made certain rulings in the American Home Bank Case at the request of Russo and O'Malley.

46. It was part of the scheme and artifice that TERRY caused the magistrate assigned to the American Home Bank Case to issue certain rulings and further caused those rulings to be issued to the litigants.

47. It was part of the scheme and artifice that TERRY concealed from certain litigants the fact of his ex parte communications with Russo and O'Malley and the effect of those communications on both the timing and substance of the rulings. The timing and substance of those rulings caused O'Malley's clients to receive a financial benefit in the litigation.

48. In furtherance of the scheme, TERRY caused the order denying the motion to be sent through the U.S. mails to the parties in the AHB litigation.

49. On or about July 18, 2008, for the purpose of executing and attempting to execute the foregoing scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, STEVEN J. TERRY, the Defendant, did place and cause to be placed in an authorized depository for mail matter any matter or thing whatever to be sent and delivered by the U.S. Postal Service, and knowingly caused to be delivered by mail or such carrier according to the direction thereon, namely, a Notice of the judgment entry denying AHB's motion for summary judgment in the American Home Bank Case, sent from the Common Pleas Court in Cleveland, Ohio, to Attorney 4 in Cincinnati, Ohio.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 3 through 5
(Honest Services Mail Fraud, 18 U.S.C. §§ 1341, 1346 and 2)

The Grand Jury further charges:

50. The General Allegations contained in paragraphs 1 through 22 of this Superseding Indictment are incorporated herein as if set forth in full.

### The Scheme

51. From on or about February 23, 2007, and continuing through on or about November 17, 2008, in the Northern District of Ohio, Eastern Division, STEVEN J. TERRY, Defendant herein, having devised and intended to devise a scheme and artifice to defraud and deprive Cuyahoga County, its citizens and taxpayers, Common Pleas Court and certain litigants, including AHB, of their right to the honest and faithful services of TERRY, through bribery and

11

kickbacks and the concealment of material information, knowingly caused to be delivered by mail according to the direction thereon, mail matter as set forth below.

52. It was part of the scheme and artifice that TERRY secretly used his official position to enrich himself, by soliciting and accepting gifts, payments, and other things of value from Russo and others in exchange for favorable official action, and for Russo to enrich himself and his designees by secretly obtaining favorable official action for himself and his designees through corrupt means.

53. As part of the scheme and artifice that TERRY failed to disclose to the public and the parties of pending civil cases (including the parties to the American Home Bank Case) his financial relationship including gifts, payments, and other things of value received from Frank Russo and further failed to disclose his "ex parte communications" with Frank Russo.

54. On or about the dates set forth below, for the purpose of executing and attempting to execute such scheme and artifice, STEVEN J. TERRY, the Defendant, did place and cause to be placed in an authorized depository for mail matter any matter and thing whatever to be sent and delivered by the U.S. Postal Service, and knowingly caused to be delivered by mail or such carrier according to the direction thereon, with each mailing constituting a separate count of Mail Fraud:

| COUNT | DATE | DOCUMENT MAILED |
|---|---|---|
| 3 | 7/11/07 | Friends of Frank Russo Check #5692 |
| 4 | 7/17/07 | Friends of Frank Russo Check #5707 |
| 5 | 12/26/07 | Letter from Judge Steven J. Terry to Friends of Frank Russo |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

## FORFEITURE

Forfeiture Under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

55. ~~56.~~ The allegations of Counts 1 through 5, inclusive, are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). As a result of the foregoing offenses, Defendant STEVEN J. TERRY shall forfeit to the United States all property, real and personal, which constitutes, or is derived from, proceeds traceable to the commission of Counts 1 through 5, inclusive; including, but not limited to:

a.) MONEY JUDGMENT: Defendant STEVEN J. TERRY shall forfeit property, including, but not limited to, a sum of money equal to the proceeds of Counts 1 through 5, inclusive. Defendant STEVEN J. TERRY is jointly and severally liable for this forfeiture obligation.

## SUBSTITUTE PROPERTY

56. ~~57.~~ In the event that any property subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant:

a.) cannot be located upon exercise of due diligence;

b.) has been transferred or sold to, or deposited with a third party;

c.) has been placed beyond the jurisdiction of this Court;

d.) has been substantially diminished in value; or,

e.) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28

U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant, up to an amount equivalent to the value of the property forfeitable under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.