UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:20-cr-77 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Timothy S. Black |
| v. | ) | |
| | ) | |
| LARRY HOUSEHOLDER, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY IN SUPPORT OF
DEFENDANT LARRY HOUSEHOLDER'S MOTION TO DISMISS THE INDICTMENT**

## I. INTRODUCTION

If the government had properly pleaded the elements of the offense charged, it would have no problem ticking off those elements in its opposition. Instead, its arguments are that the Court does not even have the authority to dismiss a legally defective indictment and that the pleading standard is so relaxed that it can go straight to the jury to test its legal theories. But a criminal defendant is entitled to notice of the charges against him, and the Rules of Criminal Procedure require the government to plead the essential elements of the offense charged. The government has failed on both counts. It mistakes the breadth and the length of the Indictment for notice, and it mistakes the circular allegations and legal conclusions for the essential elements of the offense charged. More is required. The Court should grant the motion to dismiss. (Doc. 105).

## II. ARGUMENT

### A. The government must allege the essential elements of the offense charged.

The Federal Rules of Criminal Procedure require the government to plead in its indictment "the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). Although

1

the Court may not weigh the proofs at the pleading stage, *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000), the Court may assess whether, accepting the government's allegations as true, the allegations state an offense, Fed. R. Crim. P. 12(b)(3)(B)(v); *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 178 (6th Cir. 1992) (affirming district court's dismissal of indictment). If they do not, then there is no need for a trial and the Court should dismiss the Indictment. *Superior Growers*, 982 F.2d at 178; *United States v. Pirro*, 212 F.3d 86, 95 (2d Cir. 2000).

To be sure, as the government points out, courts have held indictments sufficient when they merely track the language of the statute. (Opp. at 2550[1]). But this rule only applies when the language of the statute "set[s] forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (cleaned up). When the language of the statute does not set forth all the necessary elements of the offense, the indictment must do more than simply repeat the language of the statute. *See, e.g.*, *United States v. Martinez*, 800 F.3d 1293, 1295 (11th Cir. 2015); *Pirro*, 212 F.3d at 93 ("where an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense"). And here, the government's allegation of a RICO conspiracy requires that it plead the essential elements of a RICO conspiracy: "(1) the existence of an enterprise which affects interstate or foreign commerce; (2) the defendant's association with the enterprise; (3) the defendant's participation in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008). By arguing that the government must plead the essential elements of the crime

---

[1] All page number references are to the page identification number generated by the Court's electronic filing system.

charged, Householder is not asking the Court to weigh the sufficiency of the government's evidence; he is simply asking the Court to evaluate whether the government has pleaded the essential elements of this offense.

The government's pleading suggests that it too believes that it must do more than simply repeat the language of the statute. If the government thought all it needed to do was simply track the language of the RICO statute and state the time and place of the alleged crime, it could have accomplished that in a couple paragraphs. Instead, its Indictment spans 135 paragraphs over 43 pages. The Court should evaluate those factual allegations (accepting them as true) and decide whether the Indictment states an offense. *See United States v. Urso*, 369 F. Supp. 2d 254, 267 (E.D.N.Y. 2005) ("while an indictment may set forth individual identifying characteristics of the charged crime in 'approximate terms,' each allegation, read in the context of the whole indictment, must still be pled with sufficient factual particularity such that the defendant is able to prepare to meet the government's charges, and such that all concerned parties, including the court, can be confident that the government's case at trial will reflect the evidence presented to the grand jury. If either test is not met, then the indictment is too vague, and must be dismissed."). For the reasons set forth in Householder's motion (Doc. 105) and below, the Indictment does not state an offense. The Court should grant the motion to dismiss.

**B.     The Indictment does not sufficiently plead the existence of an "enterprise."**

The enterprise allegation here is utterly circular: according to the government, "the Indictment alleges the defendants and others constituted an 'enterprise' comprised of 'a group of individuals and entities associated in fact' that 'constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives of the enterprise.'" (Opp. at 2553) (quoting Indictment ¶ 22). This definition provides no specificity

as to what that common purpose is. It does not allege relationships among the purported RICO members. And to the extent the Indictment's mention of "the objectives of the enterprise" is meant to reference predicate offenses, it confuses and wrongly equates one element of RICO (an enterprise created through a common purpose and relationships) with another (a pattern of racketeering activity). Such an allegation is insufficient to state a claim under the RICO statute.

The government's reliance on the Third Circuit's decision in *United States v. Bergrin*, 650 F.3d 257 (3d Cir. 2011), is misplaced. (Opp. at 2553). There, unlike here, the government's allegations satisfied "the *Boyle* requirements: purpose, relationships among the members (though, again, relatively loose and informal), and longevity sufficient to enable the [enterprise] to pursue its goals of, *inter alia*, making money and protecting its own members and criminal schemes." *Bergrin*, 650 F.3d at 269.[2] For this reason, whether the government has adequately pleaded a RICO enterprise is not a jury question. To the contrary, the existence of an association-in-fact enterprise is an essential element of the charge that must be pleaded with specificity. *See Hamling v. United States*, 418 U.S. 87, 117–18 (1974). Thus, contrary to *United States v. Kelly*, 462 F. Supp. 3d 191 (E.D.N.Y. 2020), the government must plead sufficient facts to show the existence of an association-in-fact enterprise.

Lastly, the government does not respond to Householder's argument that the Indictment alleges a rimless wheel and spoke conspiracy. "Most courts have found that complaints alleging hub-and-spoke enterprises fail to satisfy the RICO enterprise requirement." *In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 183 (D. Mass. 2003) (collecting cases). Here, though, the Defendants—the spokes on the proverbial wheel—allegedly engaged in

---

[2] *Bergrin* also dispenses with the government's reliance on district court cases for the proposition that it need not plead the elements of an association-in-fact enterprise.

parallel conduct, which is insufficient to make out an association-in-fact enterprise. *See, e.g.*, *In re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, 433 F. Supp. 2d 172, 182–83 (D. Mass. 2006) (finding a "hub-and-spoke model with Defendant at the center managing several independent relationships" to be insufficient to establish a RICO enterprise "because there [was] no 'rim' to connect the spokes of the wheel"); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 306–07 (S.D.N.Y. 2010) (noting that an association-in-fact required "something more than parallel conduct of the same nature and in the same time frame by different actors in different locations"). "For a wheel conspiracy to exist, those people who form the wheel's spokes must have been aware and must do something in furtherance of some single, illegal enterprise. If not, there is no rim to enclose the spokes." *United States v. Chandler*, 388 F.3d 796, 808 (11th Cir. 2004) (cleaned up).

Because the Indictment does not sufficiently allege an association-in-fact enterprise, the Court should dismiss the Indictment.

**C.     The Indictment does not sufficiently plead a pattern of racketeering activity.**

A RICO conspiracy Indictment must allege that each Defendant agreed that two or more predicate acts be committed. *Salinas v. United States*, 522 U.S. 52, 65 (1997). Thus, the agreement between the purported RICO participants is a critical element of a charge under 18 U.S.C. § 1962(d), and one that requires specific factual allegations. *See Hamling v. United States*, 418 U.S. 87, 117–18 (1974) (stating that while an indictment may use the language of the statute "in the general description of an offence . . . it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged" (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).

5

{01673966-1}

The government's allegations here fall short. The Indictment does not come close to alleging facts that, if proven, would show that the Defendants agreed to engage in conduct that's actually proscribed by the federal bribery laws or the other predicates. To the contrary, the government's bribery allegations do not amount to showing an explicit quid pro quo agreement, which the Supreme Court requires. Worse, the government tries to use purported violations of Ohio state law to shore up its RICO charge. But because an Ohio court would not allow these violations to be prosecuted, neither should this Court. The Indictment is thus defective and should be dismissed.

**1.** The Indictment does not sufficiently allege the federal bribery predicates. The government does not dispute that the Hobbs Act and honest service predicates[3] require the government to show a quid pro quo payment to a public official in exchange for official action.

The government fails to show that it alleged an explicit quid pro agreement.[4] True, explicit does not mean express, and it "speaks not to the form of the agreement between the payor and payee, but to the degree to which the payor *and* payee were aware of its terms, regardless of whether those terms were articulated." *United States v. Sittenfeld*, 522 F. Supp. 3d 353, 369 (S.D. Ohio 2021) (emphasis added and quoting *United States v. Blandford*, 33 F.3d

---

[3] We address the private-sector honest services fraud allegations below.

[4] Although the government does not press this argument here, it suggests that it need not show an explicit quid pro quo agreement because "the payments here should [not] be afforded the same protection as campaign contributions that are publicly disclosed." (Opp. at 2558 n.2). It cites no authority that allegedly "secret" campaign contributions should be treated differently than publicly disclosed contributions. For good reason. The Supreme Court has explained that because "[t]he right to participate in democracy through political contributions" is protected by the Constitution," *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014), a political contribution can only be a bribe if "payments are made in return for an *explicit* promise or undertaking by the official to perform or not to perform an official act" and the official agrees that "his official conduct will be controlled by the terms of the promise or the undertaking." *McCormick v. United States*, 500 U.S. 257, 273 (1991) (emphasis added). It matters not one bit whether the contributions are made publicly or "secretly" because the Supreme Court will "err on the side of protecting political speech rather than suppressing it." *McCutcheon*, 572 U.S. at 209 (cleaned up). Nor may the Court distinguish between allegedly legitimate and illegitimate campaign contributions. *See McCormick*, 500 U.S. at 272.

{01673966-1}

685, 696 (6th Cir. 1994)). Householder's argument though is not that the agreement need be express; to the contrary, his argument is that the government must allege facts that show the payor (FirstEnergy) *and* payee (Householder) were aware of the terms of the quid pro quo. And here, the government's allegations are woefully lacking. It alleges no interactions between the payor and payee to set the terms of the alleged quid pro quo. Thus, it failed to allege facts showing an explicit quid pro quo agreement.

The government's allegations of payment in exchange for official action are also insufficient. Under the Sixth Circuit's caselaw, whether something counts as an official act is a two-part test: (1) "an official act must involve an official issue—a question, matter, cause, suit, proceeding or controversy" and (2) "the public official must have made a decision or taken an action, or agreed to do so, on that official issue." *Dimora v. United States*, 973 F.3d 496, 503 (6th Cir. 2020) (cleaned up). What this means is that "the official must make a decision or take action, or promise to do so, on the particular question or matter *at the time* he receives payment or other things of value." *United States v. Hills*, __ F.4th __, 2022 U.S. App. LEXIS 5669, at *25 (6th Cir. Mar. 3, 2022) (citing *McDonnell v. United States*, 136 S. Ct. 2355, 2374 (2016)).[5] Although the government need not link specific contributions to specific official actions, the government must show that ***at the time*** Householder (or Generation Now) received contributions, Householder agreed to take (or did take) official actions on the official issue. On this fulcrum point, the government's allegations fall short. The government says that the bribe payments began in March 2017 (Indictment ¶ 41), yet the only official actions alleged occurred ***years*** later. *See id.* What *McDonnell* and the cases following it, including the Sixth Circuit's

---

[5] "[W]ithout a requirement that an official must promise to influence a particular question or matter, any official who accepts a thing of value and then later acts to the benefit of the donor, in any manner, could be vulnerable to criminal prosecution." *United States v. Silver*, 948 F.3d 538, 558 (2d Cir. 2020).

{01673966-1}

recent published decision in *Hills*, require though is that at the time of the payment, the public official must agree to take official action on a specific and focused matter. *See also Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1034 (N.D. Ohio 2013) ("Where, as here, the alleged bribe is a campaign contribution, the facts must show that the contribution was given 'in return for a specific official action . . . No generalized expectation of some future action will do.'"). The government's allegations that Generation Now received contributions for years before Householder took any official action[6] do not meet these requirements.

The government's response is that the existence of a quid pro quo is a factual issue for the jury. (Opp. at 2562-63). But the Court may evaluate the government's allegations for whether they state the essential elements of the offense charged. And in the context of the federal bribery predicates, the official act requirement is an essential element. *See McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016). Thus, the government must sufficiently plead these allegations—otherwise, dismissal is warranted. *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 178 (6th Cir. 1992) (affirming district court's dismissal of indictment).

Nor do the government's other factual allegations move the needle. It matters naught that the contributions were made to Generation Now, an entity organized under section 501(c)(4) of the Internal Revenue Code. This is because "unlike Super PACs, 501(c)(4) organizations are not legally obligated to publicly disclose the names of their donors or the amounts of the donations" except to the IRS with respect to donations more than $5,000. *NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2016 WL 8202966, at *3 (S.D. Ohio Nov. 22, 2016). There are no limits

---

[6] Or even could take official action. For example, the government alleges that Householder's official acts included "creating a House subcommittee" and "using his position as Speaker to pressure and advise public officials to take official actions." Indictment ¶ 41. These are actions that Householder could not have agreed to take in March 2017 because he was not yet Speaker of the Ohio House. Indictment ¶ 2 (alleging that Householder began serving as Speaker in January 2019).

{01673966-1}

to the amounts that a person may contribute to a 501(c)(4). *Id.* at *4 (noting that, under the tax code, a 501(c)(4) organization can accept unlimited contributions from all types of donors, including individuals). Thus, the government's complaints about these allegedly "secret" payments are complaints about perfectly lawful conduct. If it thinks contributions to 501(c)(4) entities should be unlawful, it should look to the legislative branch—not the judicial branch.[7] Nor do the statements of the other Defendants show that Householder entered into a quid pro quo arrangement. (*See* Opp. at 2563-64) (citing statements of the other Defendants, not Householder).[8]

The government failed to plead sufficient facts to support the federal bribery predicates.

**2.** Nor is the private-sector honest services fraud allegation sufficient. The government concedes that although it must prove a breach of a fiduciary duty to show private-sector honest services fraud, it need not allege the violation of the duty. (Opp. at 2564). Even so, it should be required to define the source and scope of this purported duty. *See SEC v. Chenery Corp.*, 318 U.S. 80, 85–86 (1943) ("[T]o say that a man is a fiduciary only begins [the] analysis . . . What obligations does he owe as a fiduciary?"); *Skilling v. United States*, 561 U.S. 358, 417-19 (2010) (noting the wide disagreement among courts as to the source and scope of fiduciary duties) (Scalia, J., concurring). But it does not do so. Instead, it resorts to circular reasoning: the fiduciary duty was the Ballot Campaign's employees alleged duty to provide honest services to the Campaign. Without greater specificity on the source and scope of this alleged duty, Householder cannot adequately prepare to defend this charge.

---

[7] This conduct—complaints about lawful activity—is exactly the type of prosecutorial overreach the Supreme Court has recently and repeatedly cautioned against. *See Kelly v. United States*, 140 S. Ct. 1565, 1574 (2020).

[8] The only Householder-specific allegation the government points to his statement that "we only put in what they needed." Indictment ¶ 99 (Doc. 22).

**3.** The Travel Act predicate should be dismissed. To support its use of the Travel Act as a RICO predicate, the government alleges that the Defendants agreed to violate Ohio Rev. Code § 3517.22(A)(2) (Indictment ¶ 33), which if charged in state court is punishable by "imprison[ment] for not more than six months or [a] fine[ of] not more than five thousand dollars, or both." Ohio Rev. Code § 3517.992(V). The problem: Ohio's General Assembly plainly stated that § 3517.22 offenses should be heard first by the Ohio Elections Commission, not a grand jury. § 3517.22(C). Thus, allowing federal prosecutors to prosecute this offense (through the Travel Act) constitutes an expansive use of the Travel Act that the Supreme Court warned "would alter sensitive federal-state relationships, could overextend limited federal police resources, and might well produce situations in which the geographic origin of customers, a matter of happenstance, would transform relatively minor state offenses into federal felonies." *Rewis v. United States*, 401 U.S. 808, 812 (1971).

For this reason, unlike the RICO statute, the Travel Act is narrowly construed to maintain the delicate balance between the federal government and the states. *See id.* at 811-12; *United States v. Hathaway*, 534 F.2d 386, 397-398 (1st Cir. 1976) ("In contrast to the broad interpretation given to the Hobbs Act, the Supreme Court has indicated that the Travel Act is to be read in a narrower and more restricted fashion"); *United States v. Nader*, 542 F.3d 713, 721-22 (9th Cir. 2008) ("The Travel Act establishes only concurrent federal jurisdiction over what are already state or local crimes … The federal government cannot usurp state authority via the Travel Act because a state must first decide that the conduct at issue is illegal."). Here, Ohio's legislature made the policy decision that before any prosecution under § 3517.22 may proceed, the Ohio Elections Commission should hear the matter and decide whether to "[r]efer the matter to the appropriate prosecutor." § 3517.155(A)(1)(c). This Court, given the federalism concerns

the Supreme Court has recognized that are inherent with the Travel Act, should respect Ohio's decision to vest criminal prosecution of § 3517.22 with the Ohio Elections Commission, not federal prosecutors. *See United States v. Ferber*, 966 F. Supp. 90, 106 (D. Mass. 1997).

This holds even if the government need not prove a violation of § 3517.22(C). What matters is whether Ohio has decided the conduct at issue is illegal. *Nader*, 542 F.3d at 721-22. And under the statute, Ohio has decided that the conduct is illegal and may be prosecuted ***only*** if the Ohio Elections Commission refers the matter for prosecution. Ohio Rev. Code § 3517.22(A)(2); § 3517.155(A)(1)(c). Because the Ohio Elections Commission has not made any referral, the Travel Act predicate should be dismissed.

**4.** Conspiracy to commit bribery is not chargeable under Ohio law. Congress only permitted federal prosecutors to use state law offenses as RICO predicates if the state law bribery offense is "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). The Court's analysis should begin and end with the plain language of the statute. *See United States v. Turner*, 465 F.3d 667, 671 (6th Cir. 2006) ("In interpreting a statute, this court looks first to its plain language."). The plain language shows that the government's attempt to use Ohio bribery offenses as a predicate to support conspiracy to violate the RICO statute is flawed. Conspiracy to commit state-law bribery is not chargeable in Ohio—a principle the government does not dispute. *See* Ohio Rev. Code § 2923.01. The Court should thus dismiss this predicate offense. *Cf. Donahue v. FBI*, 204 F. Supp. 2d 169, 174 (D. Mass. 2002) (dismissing civil RICO complaint against FBI because "federal agencies are immune from state or federal criminal prosecution, and thus cannot satisfy the 'racketeering activity' requirement for civil RICO liability, because they are not 'chargeable,' 'indictable,' or 'punishable' for the offenses listed in 18 U.S.C. § 1961(1)").

11

The government's response is misdirection. It says that the Indictment alleges a substantive violation of Ohio state law. (Opp. at 2568). Not so. The government alleged a RICO conspiracy—not a substantive violation of the RICO statute. *See generally* Indictment (Doc. 22). This means the government must show, among other things, "an ***agreement*** that at least two predicate acts would be committed by at least one of the coconspirators." *United States v. Hills*, __ F.4th __, 2022 U.S. App. LEXIS 5669, at *12 (6th Cir. Mar. 3, 2022) (emphasis added); (*see also* Opp. at 2566) ("Thus, because the ***agreement*** is the crime, conviction on a charge of RICO conspiracy does not require the government to prove that *any* predicate act was actually committed at all.") (emphasis added and cleaned up). That is, in other words, a conspiracy to commit the predicate offenses. But that—a conspiracy to commit Ohio bribery—is not chargeable under Ohio state law.

More to the point, this all means the government is using the Ohio state statute in a novel fashion, which deprives Householder of fair warning. *United States v. Genova*, 333 F.3d 750, 759 (7th Cir. 2003). The government's response is that its use of the RICO statute is supported by "straightforward application of the statute's plain language." (Opp. at 2568). But *Genova* stands for the principle that the government may not advance a "novel" interpretation of a state offense as a RICO predicate. 333 F.3d at 759. There, a city mayor awarded comp time for political work, which the government alleged constituted bribery under Illinois state law to support a RICO offense. *Id.* at 757. But—like here—the government conceded that "no Illinois decision supports its view that using public funds to pay municipal employees for political labor is bribery under 720 ILCS 5/33-1, and it would deprive [the defendant] of fair warning to put that statute to such a novel use in order to secure his conviction for violating RICO." *Id.* at 759. So too here. And contrary to the government's contention, what matters is whether it is putting a

12

state statute to novel use to secure a RICO conviction. There's no dispute that's what the government is doing, trying to fashion conspiracy to commit state-law bribery into a RICO predicate. Because Ohio law does not permit it do so, the Court should dismiss this predicate offense.

The government thus cannot use § 2921.02 of the Ohio Revised Code as a predicate to support its RICO conspiracy charge. The Court should dismiss this from the Indictment.

**5.** The money-laundering allegations do not save the Indictment. Even if the money-laundering predicates survive a motion to dismiss, the RICO conspiracy Indictment should still be dismissed. A RICO conspiracy Indictment must allege that each Defendant agreed that two or more predicate acts be committed. *Salinas v. United States*, 522 U.S. 52, 65 (1997). A violation of the money-laundering statute is just one predicate act. The Indictment should be dismissed.

### III. CONCLUSION

For these reasons, the Court should dismiss the Indictment.

Dated: March 8, 2022            Respectfully submitted,

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
Mark B. Marein (0008118)
MAREIN & BRADLEY
526 Superior Avenue, Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com

Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
  & LIFFMAN CO., LPA
1111 Superior Avenue East, Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: nro@mccarthylebit.com

*Counsel for Defendant Larry Householder*

**CERTIFICATE OF SERVICE**

I certify that the foregoing was electronically filed on March 8, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)

{01673966-1}