UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:20-CR-77 |
| Plaintiff, | |
| v. | JUDGE BLACK |
| LARRY HOUSEHOLDER, et al., | **UNITED STATES' MOTION TO LIMIT IRRELEVANT AND INADMISSIBLE EXPERT TESTIMONY** |
| Defendants. | |

The United States respectfully submits this motion to limit the testimony of Defendant Householder's proposed expert, Caleb Burns.[1] As set forth in the following memorandum, the Court should exclude portions of Mr. Burns' proposed testimony at trial as irrelevant and inadmissible.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/ Emily N. Glatfelter*
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
Email: Matthew.Singer@usdoj.gov
E-mail: Emily.Glatfelter@usdoj.gov

---

[1] Defendant Borges did not disclose any experts on September 1, 2022. Defendant Householder disclosed Caleb Burns. The United States has requested reciprocal discovery of the defendants' experts in previous correspondence and does so here as well.

## INTRODUCTION

Defendant Householder proposes to call Caleb Burns to provide expert testimony about 501(c)(4) entities and PACs. To be clear, the defendants are not charged with any campaign finance or regulatory violations. Rather, this is a racketeering case, where the grand jury charged the defendants with conspiring to conduct and participate in the affairs of an enterprise through a pattern of racketeering activity that consisted of multiple acts indictable under 18 U.S.C. §§ 1343, 1346; 18 U.S.C. § 1951; 18 U.S.C. § 1952; 18 U.S.C. § 1956; 18 U.S.C. § 1957; and chargeable under Ohio Rev. Code § 2921.02. (Doc. 22, ¶ 33.)

The United States anticipates that its case-in-chief will include evidence about 501(c)(4)s and PACs, because such entities were used to pay, receive, and accept bribes, and also launder money for the benefit of the conspirators. As such, the United States anticipates using expert testimony to provide the jury with the necessary background information about these entities in order to help contextualize the evidence the jury will hear throughout trial. However, Defendant Householder's notice regarding Mr. Burns is not limited to this same type of background and contextual information about 501(c)(4)s and PACs; rather Mr. Burns' proposed testimony will go farther, and stray into irrelevant and legally inadmissible areas, including impermissible testimony about how other politicians raise money or what is "commonplace." For these reasons, the United States seeks to establish pretrial the proper boundaries of Burns' testimony, in order to prevent unnecessary delay at trial.[2]

---

[2] The United States is not requesting a *Daubert* hearing via this motion. Any issues with Burns' testimony can be addressed through filings, and oral argument, if necessary.

1

## BACKGROUND

On September 1, 2022, pursuant to the Court's trial calendar, Householder disclosed Caleb Burns as a potential expert. *See* Exhibit A (Notice). The notice described three areas of Burns' testimony:

1. Federal law governing 501(c)(4) activities. Mr. Burns will provide background on the federal laws that govern the political activities of a 50l(c)(4) organization. In particular, he will explain that a 501(c)(4) organization may engage in candidate-related activities provided that doing so is not the organization's primary purpose. Though there are no bright-line standards for measuring primary purposes, Mr. Burns will share that relevant federal authorities suggest 40% is an appropriate threshold, but in practice, the threshold may increase to 49%. Mr. Burns will further explain that lobbying on legislation and engaging in ballot measure activities can be a 501(c)(4) organization's primary purpose and, therefore, constitute 100% of the organization's activities.

2. Officeholder alignment with 501(c)(4) organizations. Mr. Burns will explain how officeholders can be aligned with 501(c)(4) organizations. That is, policy goals and will work collaboratively to achieve their mutual goals. Mr. Burns will provide examples including: One Nation which is aligned with U.S. Senate Minority Leader Mitch McConnell, and Majority Forward which is aligned with U.S. Senate Majority Leader Chuck Schumer.

3. Background on federal "leadership" PACs and private support for an officeholder's legislative leadership aspirations. Mr. Burns will explain that a federal "leadership" PAC is an entity that an officeholder maintains to raise money from private sources to then contribute to the campaigns of allied candidates and officeholders. Mr. Burns will further explain the original intent of "leadership" PACs - and the derivation of the name. That is, an officeholder would establish a "leadership" PAC and raise funds from private sources to then contribute the funds to colleagues who, presumably, would vote for the officeholder in the legislature's leadership elections (e.g., for positions like Majority Leader or Speaker of the House). Mr. Burns will explain that "leadership" PACs remain a fixture of the current political system and demonstrate that private support for an officeholder's legislative leadership aspirations is commonplace.

## LEGAL STANDARD

The proponent of expert testimony has the burden of establishing the pertinent admissibility requirements by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993). Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion or otherwise[.]" Fed. R. Evid. 702. The expert testimony is only permitted, however, where four conditions are met:

> [1] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> [2] the testimony is based on sufficient facts or data;
> [3] the testimony is the product of reliable principles and methods; and
> [4] the expert has reliably applied the principles and methods to the facts of the case.

*Id*. at 702(a)–(d).

The most critical criterion for expert testimony is the first one – whether it is helpful to the jury. *United States v. Freeman*, 730 F.3d 590, 600 (6th Cir. 2013). Testimony about matters within the common knowledge and experience of a lay juror is not helpful, and thus should not be permitted. *Id.* at 597. Expert testimony also does not assist the trier of fact when it is irrelevant, *Daubert*, 509 U.S. at 591, or when it conveys legal standards or expresses legal conclusions, because it "interfere[es] with a district court's jury instructions" and "tell[s] the jury what result to reach." *Woods v. Lecureux*, 110 F.3d 1215, 1220–21 (6th Cir. 1997); *Weinstein's Federal Evidence* § 704.04[2][a] ("The most common reason for excluding opinion testimony that gives legal conclusion is lack of helpfulness . . . .").

An expert is also prohibited from opining on the defendant's intent when such mental state is an element of the offense. Fed. R. Evid. 704(b); *United States v. Dunnican*, 961 F.3d 859, 876 (6th Cir. 2020). That prohibition extends to testimony that is equivalent to opining on the defendant's state of mind. *See, e.g., United States v. Warshak*, 631 F.3d 266, 324 (6th Cir. 2010) ("Furthermore, Simpson's remarks with respect to the 'design' of the transactions also implicate the issue of intent. To say that a transaction is designed to achieve a certain effect is tantamount to declaring that the individual who conducted the transaction intended to achieve that outcome.") (citations and quotations omitted); *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000) ("If believed, his testimony necessarily dictates the final conclusion that Dr. Wood possessed the

3

requisite mens rea for involuntary manslaughter. *See United States v. Morales,* 108 F.3d 1031, 1037 (9th Cir.1997) ("A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea."). "[T]his intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent." *United States v. Cooper*, 286 F. Supp.2d 1283, 1292 (D. Kan. 2003)(excluding proposed expert testimony that defendant's actions constituted fraud); *United States v. Beavers*, 756 F.3d 1044, 1054–55 (7th Cir. 2014) (affirming trial court's determination that defense expert could not opine that he (expert) believed 100 checks were loans, noting that allowing the expert to opine on the issue "would have been the equivalent of opining on whether the defendant had the 'willfulness' necessary for a tax offense.")

In addition to Federal Rule of Evidence 702, expert testimony is also subject to Federal Rule of Evidence 403, which requires the exclusion of evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [or] misleading the jury. . . ." Fed. R. Evid. 403. This is particularly salient in regard to expert testimony, which can be "both powerful and quite misleading because of the difficulty in evaluating it," and thus the court "exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. In other words, the district court serves in the "role of 'gatekeeper,' charg[ed] . . . with evaluating the relevance and reliability of the proffered expert testimony with heightened care." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007); *see United States v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012).

4

## ARGUMENT

**A. Mr. Burns' testimony must not intrude upon the province of the Court.**

In the first bullet, Householder describes testimony by Burns relating to the law governing 501(c)(4) activities. Although potentially permissible, such testimony must be limited to background testimony of the regulatory scheme to provide context for the jury.

As set forth above, it is well-settled that "only the trial judge may instruct a jury as to the law." *United States v. Zipkin*, 729 F.2d 384, 386–87 (6th Cir. 1984); *United States v. Gordon*, 493 F. App'x 617, 626–27 (6th Cir. 2012) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.") (quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)); *United States v. Kalk*, 1989 WL 101539, at *7, 884 F.2d 581 (6th Cir. 1989) ("[T]estimony consisting of legal opinions on the applicable principles of law in a case is inadmissible."). "Expert testimony on the law is excluded because the trial judge does not need the judgment of witnesses." *United States v. Mazumder*, 800 F. App'x 392, 395–96 (6th Cir. 2020) (quoting *Zipkin*, 729 F.2d at 387).

Courts recognize that, in narrow circumstances, the district court may allow testimony about certain legal concepts where the testimony is helpful to the jury and does not conflict with the Court's instructions, such as testimony explaining a "complex regulatory scheme." *See United States v. Lundergan*, No. 5:18-CR-00106-GFVT, 2019 WL 3804239, at *3 (E.D. Ky. Aug. 13, 2019); *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011). But such testimony may not offer opinion as to the propriety of the defendant's conduct within that scheme, *Lundergan*, 2019 WL 3804239, at *3 (excluding opinion relating to whether "defendants' conduct fell within or without the bounds of permissible conduct"); draw conclusions relating to the defendant's intent, *Warshak*, 631 F.3d at 324; or testify relating to the legal principles the jury must consider, *Zipkin*, 729 F.2d at 386–87.

5

Thus, although limited testimony providing background and context relating to 501(c)(4) entities is potentially permissible, this type of expert testimony must be narrowly crafted to avoid confusion and to not invade the province of the Court. This means any expert testimony may not attempt to explain the law in these areas or suggest that the defendant's conduct comported, or did not comport, with these laws.

### B. The Court should exclude testimony that "*this is how fundraising works*," "*everyone does it*," and certain acts are "*commonplace*."

In the second bullet, Householder's notice stated, "Mr. Burns will explain how officeholders can be aligned with 501(c)(4) organizations" by providing examples, "including: One Nation which is aligned with U.S. Senate Minority Leader Mitch McConnell, and Majority Forward which is aligned with U.S. Senate Majority Leader Chuck Schumer." Exhibit A, p.1–2. As set forth in the third bullet, Mr. Burns also will purportedly testify that "'leadership' PACs remain a fixture of the current political system" and "private support for an officeholder's legislative leadership aspirations is *commonplace*." *Id*. at 2 (emphasis added). In other words, Defendant Householder plans on presenting evidence through Mr. Burns that other public officials have engaged in "x" conduct, and because they have not been prosecuted, Householder's conduct must therefore be legal and/or this prosecution is unfair. This testimony—about what is "routine," "typical, "or "commonplace" in politics—is improper for several reasons.

*First*, the Court should prohibit Mr. Burns from testifying about what other people do and whether their conduct is legal with respect to 501(c)(4)s and PACs, because whether certain conduct complies or fails to comply with campaign finance regulations is irrelevant, here. The defendants are not charged with violating campaign finance laws, nor is their compliance with those laws a defense to the charges in this case. The fact that other politicians might raise money through a PAC consistent or inconsistent with campaign finance law is irrelevant to whether Householder agreed to enter a racketeering conspiracy involving bribery. Thus, such testimony is

6

not helpful to the jury under F.R.E. 702, and would be confusing under F.R.E. 403. *E.g., United States v. Reed*, 908 F.3d 102, 117 (5th Cir. 2018) (affirming exclusion of defense expert's proffered "custom and practice" evidence about state ethics board's treatment of campaign fund expenditures in wire fraud case because the defendant was not charged with campaign finance violations and the testimony "would not help the jury understand the core issue of fraud.").

*Second*, testimony about what is "common place" or "typical" is irrelevant and misleading. Courts routinely exclude testimony suggesting that charged criminal conduct is "typical" or "routine." In *United States v. Stirling*, the Second Circuit strongly denounced efforts to defend a securities fraud case on the basis that the charged criminal activities amounted to proper and routine business practice:

> [The defendants] argue that they were prejudiced by the district court's decision to bar questions put by them to their witnesses regarding the "normalcy" or "usualness" of certain Greater Gulf practices. The district court instructed counsel not to ask witnesses about "the legal consequences of things," such as whether activities were "wrong," "misleading," "proper," or "ethical." For example, in response to a question from counsel for the appellants, a state court judge from Mississippi testified that because prominent people with good reputations were involved in Greater Gulf, he assumed that it was "normal" for a non-profit corporation to be used to implement the project. *Such testimony is not even arguably admissible. It would have been an abdication of responsibility if the trial judge had not interrupted, as he did, to instruct counsel not to ask such questions*.

571 F.2d 708, 735-36 (2d Cir. 1978) (emphasis added).

Other courts, including the Sixth Circuit, have found the same. *United States v. Vasilakos*, 508 F.3d 401, 409 (6th Cir. 2007) (affirming exclusion of evidence to support "others did it too" to negate intent to defraud; reasoning that "evidence of fraudulent acts by other employees including policy making executives, would have no tendency to show that the defendants' acts were innocent."); *United States v. Chew*, 2015 WL 350624, *9 (S.D. Ohio 2015) (finding argument that defendant was no more guilty than others in industry, was close to jury nullification and

7

rejecting ineffective assistance claim on the failure to call witnesses to support argument); *United States v. Ganesh*, 2017 WL 11439117, * 2 (N.D. Cal. 2017) (excluding defense evidence in health care fraud case that implied "everyone else was doing it"; explaining that the court "will not allow satellite litigation on how medical practitioners in the United States other than the defendants in the instant case do their medical billing").

At bottom, evidence regarding the acts or conduct of other politicians or individuals, or what is "typical" in politics with respect to campaign finance is irrelevant to the issues in this case and, if allowed, would distract and confuse the jury. No one is on trial in this case other than the defendants, and the jury should not be presented with evidence and counter-evidence as to whether other individuals outside of this case committed similar acts. In fact, the Sixth Circuit Pattern Instructions direct the jury to disregard such evidence.[3] Accordingly, the Court should preclude Mr. Burns from testifying about acts engaged in by others or suggesting that defendant's conduct was simply part of the American political system.

*Third*, the Court should preclude Mr. Burns from testifying about what others do or have done because it is a backdoor selective prosecution argument, which is inappropriate and inadmissible before the jury. In other words, by presenting evidence suggesting other public officials engaged in similar behavior but were not indicted, it wrongly suggests to the jury that defendants here are being prosecuted improperly.

A selective prosecution allegation is not a defense to the merits of the criminal charge; rather, it is "an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Because

---

[3] Sixth Circuit Pattern Instruction 2.01: "Also keep in mind that whether anyone else should be prosecuted and convicted for this crime is not a proper matter for you to consider. The possible guilt of others is no defense to a criminal charge. Your job is to decide if the government has proved this defendant guilty. Do not let the possible guilt of others influence your decision in any way."

it is irrelevant to the issue of the guilt or innocence of the defendant, it is not a proper issue for a jury.[4] *United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("the defense of selective prosecution is a matter that is independent of a defendant's guilty or innocence, so it is not a matter for the jury"). Accordingly, district courts have excluded at trial evidence and arguments even suggesting selective prosecution and other defects in the institution of prosecution, and these decisions have been upheld on appeal. For example, in *Abboud*, the district court granted a motion *in limine* to preclude evidence of selective prosecution at trial. *Id.* at 580. The Sixth Circuit upheld the district court's exclusion of the evidence, because "selective prosecution is not an issue for the jury." *Id.* Relying on *Abboud*, the Sixth Circuit has affirmed the exclusion of similar arguments in other cases. *See United States v. Darwich*, 574 F. App'x 582, 589 (6th Cir. 2014); *see also United States v. Simpson*, 226 F. App'x 556, 562 (6th Cir. 2007) (citing *Abboud*, concluding district court was correct to prohibit prosecutorial vindictiveness theory at trial). The Court should prohibit such arguments here, under the guise of expert testimony.

*Finally*, this testimony should be excluded because it functions as a proxy for Householder's own testimony about his intent, which is impermissible. An expert is prohibited from opining on the defendant's state of mind. Fed. R. Evid. 704(b); *Dunnican*, 961 F.3d at 876. That prohibition extends to testimony that, while not expressly opining on the defendant's state of mind, is equivalent to it. *Warshak*, 631 F.3d at 324 ("Furthermore, Simpson's remarks with respect to the 'design' of the transactions also implicate the issue of intent. To say that a transaction is designed to achieve a certain effect is tantamount to declaring that the individual who conducted the transaction intended to achieve that outcome.") (citations omitted); *see also Morales*, 108 F.3d at 1037; *Beavers*, 756 F.3d at 1054–55.

---

[4] A selective prosecution claim, like other claims alleging a defect in prosecution, are made pretrial via Fed. R. Crim. P. 12(b)(3).

It is thus impermissible for the defense to use Mr. Burns' testimony to suggest that Householder lacked the requisite intent because his actions were "typical" in American politics or "common" of other politicians. *See, e.g., United States v. Rodriguez*, 2016 WL 5847008, *1 (E.D. Ca. 2016) (in wire fraud case, finding irrelevant "any evidence about the general practices of the mortgage industry, in effect that 'everyone was doing it,'" because it does not negate the defendant's intent); *United States v. Reed*, 2016 WL 6946983, at *25–27 (E.D. La. Nov. 28, 2016), *aff'd*, 908 F.3d 102, 117 (5th Cir. 2018) (excluding expert in fraud case because the purported expert "had no basis to testify as to [the defendant's] beliefs" and "[the defendant] is the most appropriate witness to testify about his own *mens rea*," among other reasons); *United States v. Kahn*, 711 F. Supp. 2d 9 (D.D.C. 2010) (precluding expert from testifying that his actions were typical of others in support of defendant's defense that he acted in good faith); *United States v. Herzog*, 632 F.2d 469, 473 (5th Cir. 1980) (affirming court's exclusion of defense expert's proffered testimony that "tax laws are complex and that even law students, law professors, and attorneys find the subject very difficult" because their beliefs about the tax laws were irrelevant)).

If Defendant Householder wants to testify, he may do so. But, he cannot offer evidence about his intent explicitly or implicitly through the testimony of Mr. Burns.

### C. The Court should exclude Mr. Burns' proposed testimony about federal leadership PACs.

In the third bullet, Householder provided notice that Mr. Burns will testify about the background, origin, and intended use of "leadership" PACs as a "fixture of the current political system." Exhibit A, p.2.

But testimony about federal leadership PACs is irrelevant and would confuse the jury. The Federal Election Commission ("FEC") regulates federal "leadership PACs," as defined by federal law. *See* 11 C.F.R. § 100.5(e)(6) ("leadership PAC" is political committee for "a candidate for Federal office or an individual holding Federal office"). There is *no evidence* that the defendants in

10

this case had or operated *any* federal leadership PACs during the relevant time period. Indeed, as alleged in the Indictment, Householder received bribe payments through a 501(c)(4) entity, not a PAC, much less a "leadership" PAC. And the only PAC named in the Indictment is not a leadership PAC, as defined and regulated by the FEC. Thus, testimony about the history, requirements, and common use of leadership PACs is irrelevant. Moreover, given its irrelevance, permitting such testimony would be a waste of time and confusing for the jury under Rule 403.

## CONCLUSION

The Court should grant the United States' Motion to Limit Irrelevant and Inadmissible Expert Testimony for the reasons explained above.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/ Emily N. Glatfelter*
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Emily.Glatfelter@usdoj.gov
Email: Matthew.Singer@usdoj.gov

11

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Court's CM/ECF System this 26th day of September 2022, which provides electronic notice to all parties.

*s/ Emily N. Glatfelter*
EMILY N. GLATFELTER (0075576)
Assistant United States Attorney
