# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:20-cr-77 |
| | ) | |
| Plaintiff, | ) | Judge Timothy S. Black |
| | ) | |
| v. | ) | **DEFENDANT LARRY** |
| | ) | **HOUSEHOLDER'S *DAUBERT*** |
| LARRY HOUSEHOLDER, | ) | **MOTION TO EXCLUDE NOAH** |
| | ) | **DORMADY AND ABBY WOOD** |
| Defendant. | ) | |
| | ) | (*Daubert* **Hearing Requested**) |

Defendant Larry Householder moves the Court, under Rule 702 of the Federal Rules of Evidence, to exclude certain opinion testimony of Noah Dormady and Abby Wood, two of the government's five proffered expert witnesses. Dr. Dormady's and Dr. Wood's testimony is irrelevant under *Daubert*, unfairly prejudicial, and is cumulative. The Court should accordingly exercise its gatekeeping function and exclude these two witnesses.

A memorandum in support of this motion is attached.

Dated: September 26, 2022

Respectfully submitted,

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
Mark B. Marein (0008118)
MAREIN & BRADLEY
526 Superior Ave., Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com

Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL & LIFFMAN CO., LPA
1111 Superior Avenue East, Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: nro@mccarthylebit.com

*Counsel for Defendant Larry Householder*

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:20-cr-77 |
| | ) | |
| Plaintiff, | ) | Judge Timothy S. Black |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANT LARRY** |
| LARRY HOUSEHOLDER, | ) | **HOUSEHOLDER'S *DAUBERT*** |
| | ) | **MOTION TO EXCLUDE NOAH** |
| Defendant. | ) | **DORMADY AND ABBY WOOD** |
| | ) | |
| | | (***Daubert* Hearing Requested**) |

**I.  INTRODUCTION**

Expert evidence is powerful. For this reason, the Supreme Court has instructed district courts to act as gatekeepers and exclude irrelevant, unreliable, and unqualified expert opinion testimony. The Court should exercise this function here and exclude two of the government's five proffered expert witnesses, Noah Dormady and Abby Wood.

Their proffered expert testimony is largely irrelevant. Dr. Dormady's testimony—about how Ohio regulates its energy markets—is a particularly poor fit for this case. And Dr. Wood's testimony—about what some people believe about 501(c)(4) entities—is not even an expert opinion.

Because the government cannot meet its burden to establish the reliability and relevance of these opinions, this Court should exclude them as inadmissible under *Daubert*.

**II.  BACKGROUND**

As the Court knows, the government here charged Defendant Larry Householder, the former Speaker of the Ohio House of Representatives, and others with conspiracy to violate the racketeering statute. (Indictment) (Doc. 22). The government principally supports this allegation

2

{01762007-1}

by alleging that Householder and the other defendants formed a 501(c)(4) group called Generation Now and used it "as a mechanism to receive and conceal bribe payments" from FirstEnergy. (*Id.* ¶¶ 37, 41). FirstEnergy allegedly sent these "bribe payments" to Generation Now "in return for [Householder] taking specific official action for the benefit of [FirstEnergy], namely, to help enact into law legislation that would go into effect and save the operation of the Nuclear Plants": HB 6. (*Id.* ¶ 41).

Pursuant to the Court's Trial Calendar, the government, on September 1, 2022, disclosed to the defense its intent to call at least five expert witnesses at trial: Noah Dormady, Abby Wood, Josh Altic, Charles Walker, and Toby Stock. (Ex. A, Gov't Expert Disclosure). According to the government, Dr. Dormady—a public policy professor at Ohio State University—will "testify regarding energy markets, generally, including how energy is generated, distributed, priced and sold to consumers in Ohio." (Ex. B, Dormady Report at 1). Dr. Wood—a law school professor from California—"will provide important context and background about the American system of campaign finance, the features and operation of political spending, and the regulation of political spending." (Ex. C, Wood Report at 1). Altic "will provide helpful background information and context about ballot initiatives and referendums generally, and in Ohio, specifically." (Ex. D, Altic Report at 1). Walker—an IRS agent—"will provide helpful background information and context about social welfare entities registered under 26 U.S.C. § 501(c)(4)." (Ex. E, Walker Report at 1). And Prof. Stock—an accounting professor from Ohio University— "will provide helpful background information and context relating to corporate entities in Ohio." (Ex. F, Stock Report at 1).

Because Dr. Dormady's and Dr. Wood's testimony will be irrelevant and unhelpful to the jury, the Court should exclude it.

{01762007-1}

**III.     LEGAL STANDARD**

Because of the outsized influence experts have on finders of fact, the Supreme Court has entrusted trial judges to act as "gatekeepers" to ensure that expert testimony is based on a reliable foundation. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-97 (1993). The importance of this gatekeeping function "cannot be overstated" and is "especially significant" given that "no other kind of witness is free to opine about a complicated matter without any firsthand knowledge of the facts in the case." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *see also Sardis v. Overhead Door Corp.*, 10 F.4th 268 (4th Cir. 2021). The Sixth Circuit has emphasized that district courts must exercise their gatekeeping function "with heightened care*." United States v. Cunningham*, 679 F.3d 355, 380 (6th Cir. 2012); *see also In re Ohio Execution Protocol Litig.*, No. 2:11-CV-1016, 2019 WL 3821786, at *2 (S.D. Ohio Aug. 15, 2019) (noting the Sixth Circuit requires trial judges to take a "hard look" at evidence proffered by expert witnesses) (citing *Turpin v. Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1352 (6th Cir. 1992)). This Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

In evaluating expert testimony, the Court is guided by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

4

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Sixth Circuit has articulated a three-part inquiry to evaluate the Rule 702 requirements. Proposed expert testimony may be admissible only if:

> **(1)** the expert is **qualified** as such by knowledge, skill, experience, training, or education; **(2)** the testimony is **relevant**, meaning it will assist the trier of fact to understand the evidence or to determine a fact in issue; and **(3)** the testimony is **reliable**, meaning it is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

*Cook v. Erie Ins. Co.*, 478 F. Supp. 3d 658, 662 (S.D. Ohio 2020) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008)) (emphasis added). The "proponent of the expert opinion" has the burden of proving that the testimony satisfies this rigorous inquiry before it may be presented to the jury. *Frazier*, 387 F.3d at 1260; *see also Daubert*, 509 U.S. at 592 n.10; *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (holding that the proponent of expert testimony must establish admissibility by a preponderance of the evidence). The district court has "considerable discretion" to exclude proposed expert testimony. *Cunningham*, 679 F.3d at 382. Testimony is disqualified if it fails even one prong of the three-part analysis: qualifications, relevance, or reliability. *See id.*, *e.g.*, at 379-80 (affirming trial court's exclusion of testimony on the basis of reliability, even though expert was "qualified"); *United States v. Freeman*, 730 F.3d 590, 600 (6th Cir. 2013) (holding district court erred in permitting FBI agent to testify as an expert because his opinions "were not helpful to the jury").

5

That an opinion is not based on scientific data does not remove the opinion from a *Daubert* analysis. Although *Daubert* dealt exclusively with scientific testimony, the Supreme Court has since made clear that *Daubert*'s expert testimony standard applies equally to "technical" and "other specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). These requirements are to ensure that an expert who presents testimony "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[W]hether the proffered testimony is technical or otherwise specialized, an expert's testimony should not be treated more permissively simply because it is outside the realm of science." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 U.S. Dist. LEXIS 141129, at *63 (N.D. Ohio Aug. 20, 2019).

"Furthermore, a[n expert] opinion should not waste time, 'merely tell the jury what result to reach,' or be 'phrased in terms of inadequately explored legal criteria.' A witness, lay or expert, may not form conclusions for a jury that they are competent to reach on their own." *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013) (quoting *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir. 1988)).

IV. **ARGUMENT**

   A. **The Court should exclude Dr. Dormady's testimony.**

The government proffers Dr. Dormady as an expert to testify "about energy policy [and] regarding energy markets, generally, including how energy is generated, distributed, priced and sold to consumers in Ohio." (Dormady Report at 1). But this testimony is irrelevant and unhelpful to the jury. An expert opinion is only relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591; *accord United States v. LeBlanc*, 45 F. App'x 393, 400 (6th Cir. 2002) (expert testimony that does not

"fit" the facts of the case is irrelevant testimony). Where an expert's testimony "does not relate to any issue in the case," it must be excluded under *Daubert*. *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993).

This case is not about energy policy or the regulation of the energy markets. It's a criminal case in which the government charges the defendants with conspiracy to commit racketeering. To be sure, HB 6 is a piece of energy legislation, but the trial is not about the merits HB 6. In fact, the Court will likely instruct the jury that it is no defense that "in exchange for the offer or promise of a thing of value from the payor, the public official undertook (or promised to undertake) an official action that is actually lawful, desirable, or even beneficial to the public, or is an action that the public official intended to undertake anyway." Jury Instructions at 3215, *United States v. Sittenfeld*, No. 1:20-cr-142 (S.D. Ohio July 6, 2022), ECF No. 202. Conversely, the government cannot win a conviction by proving that the official action (i.e., the passage of HB 6) was undesirable or detrimental to the public. This is because the bribery statutes "do not address the wisdom or results of a legislative decision; rather, they concern the manner in which officials make their decisions." *United States v. Lopez-Lukis*, 102 F.3d 1164, 1169 n.13 (11th Cir. 1997). What matters at trial is ***how*** and ***why*** Householder took official action, not the results of those actions.

Put simply, it does not matter at trial how Ohio regulates its energy markets. Whether Ohio's energy markets are deregulated or not does have "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Nor is the government helped by asking Dr. Dormady to opine regarding the different charges that Ohio consumers may see on their utility bill. (*See* Dormady Report at 1). A consumer's utility bill (and

7

{01762007-1}

the charges on it) does not help the jury decide whether the defendants here committed federal crimes.

At a minimum, the Court should exclude Dr. Dormady's opinions that the restructuring of Ohio's energy markets (in 1999 and 2008[1]—nearly a decade before the alleged conspiracy here) "led to perverse economic incentives and adverse consumer impacts" and that allegedly as a result, "Ohio residential and commercial consumers in most areas were actually charged a significantly higher rate for energy overall than they would have been charged in the absence of these riders that cross-subsidized the utilities' arms-length affiliates." (Dormady Report at 2). What effect legislation passed in 1999 and 2008 had on economic incentives cannot possibly be relevant to this criminal case. Nor is it relevant that Ohio consumers allegedly suffered "adverse [] impacts" as a result of this decades-old legislation. What matters is whether FirstEnergy entered into a *quid pro quo* agreement with Householder and if so, whether Householder and the other defendants agreed to commit racketeering. But what does not matter is what Dr. Dormady will say about Ohio's energy policy.

Worse, this testimony is unfairly prejudicial. Courts "may exclude relevant evidence if its probative value is substantially outweighed by danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). The government—if it's permitted to introduce expert opinion

---

[1] Householder was not even a member of the General Assembly in 2008.

testimony that Ohio consumers have paid more in energy costs—would be inviting the jury to convict on improper grounds. It would, in effect, ask the jury to sit as a super-legislature and judge the wisdom of legislation passed years before HB 6. The Court should not permit this and should not permit the government to, in effect, ask the jury to convict because Ohio's General Assembly has not regulated the energy market the way an Ohio State professor says it should have.

The Court should exclude Dr. Dormady's testimony.

### B. The Court should exclude Dr. Wood's testimony, in part.

Householder does not in general object to the first bullet point in Dr. Wood's report. (*See* Wood Report at 1). She may testify about the different entities through which political candidates receive financial support. But she may not testify regarding the remaining topics in her report.

Start with her opinion that "[s]ome believe that the lack of transparency of these dark money entities make them ripe vehicles for ripe vehicles [*sic*] to use to circumvent limits set for the traditional entities." (Wood Report at 1). That "some" people might believe something is not the basis for expert opinion testimony. *See Daubert*, 509 U.S. at 590 (An expert's conclusions must be based upon "good grounds" and "what is known" as opposed to mere "subjective belief or unsupported speculation."). Indeed, it's clear that this is not even her own opinion. Instead, the government appears to proffer Dr. Wood (on this point) to simply regurgitate what she thinks other people may believe. But that's improper and the Court should exclude her "opinion."

9

What's more, Dr. Wood's "opinion" is irrelevant. That some people believe that 501(c)(4) entities, which are entirely legal entities,[2] are "ripe vehicles" (whatever that means) to "circumvent limits set for the traditional entities" does not matter. Householder and the other defendants are not charged with violating campaign finance laws. They are charged with racketeering through bribery. As a result, Dr. Wood's testimony is irrelevant; it will not help the jury decide any fact of consequence.

Nor is Dr. Wood's testimony that "because many of these non-traditional entities do not disclose the sources of their contributions, they prevent the public from detecting when public officials favor the preferences of their donors over the preferences of their broader constituency" (Wood Report at 1) helpful. "A witness, lay or expert, may not form conclusions for a jury that they are competent to reach on their own." *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013). The jury does not need to have a Ph.D. and a JD, as Dr. Wood does, to form the conclusion that if an entity does not disclose its contributors, the public will not know whether a public official favors those contributors. This conclusion is obvious. The jury will be more than competent to understand what it means to not have to disclose the donors.

Worse, most of this testimony is duplicative of other expert testimony the government proffers. "Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 0736, 2004 U.S. Dist. LEXIS 16855, at *75 (N.D. Ill. Aug. 20, 2004); *see also Geico Cas. Co. v. Beauford*, No. 8:05-cv-697-T-

---

[2] Anonymous contributions to Section 501(c)(4) organizations are legal. *NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2016 WL 8202966, at *3 (S.D. Ohio Nov. 22, 2016).

24EAJ, 2007 WL 2412974, at *4 (M.D. Fla. Aug. 21, 2007) (defendants precluded from presenting two insurance industry experts whose testimonies at trial would overlap and be duplicative); *Goldstein v. Centocor*, No. 05-21515 COV, 2007 WL 61913, at *2 (S.D. Fla. Jan. 5, 2007) (granting motion in limine to exclude second pulmonologist's testimony where credentials were virtually identical); *Lachute v.Oschsner Clinic Found.*, No. 11-2783, 2012 WL 5818149, at *1 (E.D. La. Nov. 15, 2012) (finding that the testimony of two experts with different specialties was cumulative on three out of four topics and defendant must choose between the experts to address those topics). It "is well within the discretion of a district court to limit the number of expert witnesses who testify at trial." *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 769 (6th Cir. 1989) (cleaned up).

Dr. Wood will testify about how 501(c)(4) "entities may receive unlimited contributions both in amount and type." (Wood Report at 1). So will Charles Walker, the government's IRS agent expert: "Mr. Walker will explain that individuals and entities can contribute money to a 501(c)(4) and there are no limits on the amount of money individuals and entities can contribute to a 501(c)(4). Mr. Walker will testify that a 501(c)(4) can also spend unlimited amounts of money." (Walker Report at 1). Likewise, they both will testify that a 501(c)(4) entity need not disclose publicly its contributors. (*Id.*) ("Mr. Walker will testify that a 501(c)(4) does not need to list or identify contributors to the IRS, and he will explain that contributors of money to a 501(c)(4) are not disclosed to the public."); (Wood Report at 1) ("501(c)(4) entities generally are not required to publicly disclose contributors.").

The government does not need two experts to say the same thing. The Court should exclude Dr. Wood's opinions regarding 501(c)(4) entities as cumulative of Walker's opinions.

{01762007-1}

The Court should also exclude her opinion about "the concept of campaign finance disclaimers." (Wood Report at 1). This opinion is irrelevant to this case; it's not clear why the government is even proffering this opinion. Nor does it help the jury to know "that disclaimers have consistently been shown to affect voter perceptions." (*Id.* at 2). In any event, the jury does not need an expert to tell them what effect, if any, a campaign finance disclaimer may have on them. *See United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013).

The Court should exclude Dr. Wood (in part).

### C. The Court should conduct a *Daubert* hearing.

While the decision to conduct such a hearing is within the discretion of the court, "a district court should not make a *Daubert* determination when the record is not adequate to the task." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000); *see also Busch v. Dyno Nobel, Inc.*, 40 F. App'x 947, 961 (6th Cir. 2002) ("[W]e direct that the district court conduct a *Daubert* hearing before retrial in order to meet the full gate-keeping responsibility required under Rule 702 and *Daubert* and its progeny.")

## V. CONCLUSION

For these reasons, the Court should exclude Dr. Dormady and Dr. Wood (in part).

12

{01762007-1}

Dated: September 26, 2022 			Respectfully submitted,

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
Mark B. Marein (0008118)
MAREIN & BRADLEY
526 Superior Ave.
Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com
	mark@mareinandbradley.com

Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
 & LIFFMAN CO., LPA
1111 Superior Avenue East
Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: nro@mccarthylebit.com

*Counsel for Defendant Larry Householder*

**CERTIFICATE OF SERVICE**

I certify that the foregoing was electronically filed on September 26, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
