UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:20-cr-77 |
| | ) | |
| Plaintiff, | ) | Judge Timothy S. Black |
| | ) | |
| v. | ) | **REPLY IN SUPPORT OF DEFENDANT** |
| | ) | **LARRY HOUSEHOLDER'S *DAUBERT*** |
| LARRY HOUSEHOLDER, | ) | **MOTION TO EXCLUDE NOAH** |
| | ) | **DORMADY AND ABBY WOOD** |
| Defendant. | ) | |

**I.     INTRODUCTION**

Larry Householder comprehensively detailed how at least two of the government's proposed experts' testimony is irrelevant at trial. (*See generally* Doc. 133). The government does not meaningfully contest this point, and it actually concedes that Dr. Wood's report is defective in at least some respects. (*See* Gov't Opp. at 3688 n.7) (Doc. 132).

To try and salvage Dr. Dormady's and Dr. Wood's reports, the government repeatedly invokes the phrase "background evidence," but background evidence must still be relevant. And Drs. Dormady's and Wood's testimony must still be helpful to the jury. The government fails to show that spending hours of trial time with these two experts will be helpful to the jury—especially given the opinions of the government's other three experts. The Court should grant Householder's motion.

**II.     ARGUMENT**

    **A.     The regulation of Ohio's energy markets is irrelevant.**

The government does not explain the relevance of Dr. Dormady's testimony that the restructuring of Ohio's energy markets (in 1999 and 2008) "led to perverse economic incentives and adverse consumer impacts" and that allegedly as a result, "Ohio residential and commercial

1

consumers in most areas were actually charged a significantly higher rate for energy overall than they would have been charged in the absence of these riders that cross-subsidized the utilities' arms-length affiliates." (Dormady Report at 2) (Doc. 131-2 at 3638). Instead, it just generically asserts that this is "foundational evidence for the jury" because it "provides motive evidence about the need for the illicit agreement." (Doc. 132 at 3686). But whether the restructuring led to "adverse consumer impacts" and higher charges for consumers (*see id.* at 3687) is not foundational motive evidence because it does not help the government show the need for the alleged illicit agreement. After all, the impact on *consumers* of the restructuring of the energy markets decades ago does not show why FirstEnergy may have had motive (in 2017) to enter an illicit agreement. The energy charges borne by consumers because of restructuring is not a relevant fact at trial.

Even if relevant, the Court should exclude Dr. Dormady's opinion on this issue on 403 grounds. It would be unfairly prejudicial for the government to elicit testimony that Ohio consumers (including the jurors) have paid more in energy charges (supposedly) because of decades old energy legislation. (*See* Doc. 131-2 at 3638) ("[T]hese cost decreases have not been efficiently reflected in the utility bills paid by Ohio consumers … Rather, the PUCO has permitted distribution companies to recover lost profits for their corporately separated arms-length generation affiliate companies through riders and surcharges added to the utility bills paid by Ohio consumers. A significant cause of these lost profits, that they were permitted to recover from consumers in this way, was that these plants (which were primarily not fueled by natural gas) could not compete with the natural gas plants that were more favorably affected by the lower price of natural gas at the time. Consequently, Ohio residential and commercial consumers in most areas were actually charged a significantly higher rate for energy overall than they would

2

have been charged in the absence of these riders that cross-subsidized the utilities' arms-length affiliates."). Adding this element in a criminal trial about conspiracy and fraud would unnecessarily confuse and distract the jury's attention to a factual issue—consumer impact—that is not central to the outcome of the underlying charges. In other words, the jury would spend an excessive amount of its time determining a collateral issue of no consequence instead of focusing on the underlying charges of the Indictment. This alone warrants exclusion of the evidence. *See United States v. Yu Qin*, 688 F.3d 257, 264 (6th Cir. 2012) ("The amount of time and the number of witnesses needed to present and rebut these allegations would almost certainly influence the jury's perception of its relative importance and could cause confusion that this alleged conduct is part of the criminal charges for which Defendants are on trial."); *United States v. Waloke*, 962 F.2d 824, 830 (8th Cir. 1992) (holding that a district court may exclude evidence under Rule 403 if it would lead to "collateral mini trials").

The government's suggestion that any prejudice can be cured with a jury instruction, (Doc. 132 at 3687), is wrong for at least two reasons. First, a jury instruction does not make otherwise inadmissible evidence admissible. Fed. R. Evid. 402. Second, the extreme prejudice here cannot be cured with jury instructions. *See United States v. Hough*, 385 F. App'x 535, 537 (6th Cir. 2010) (affirming district court's exclusion of unproven prior acts testimony and affirming finding that a "limiting instruction to the jury would be insufficient to limit the danger of unfair prejudice from the 'inflammatory' prior acts evidence"); *United States v. Roberts*, 735 F. App'x 649, 653 (11th Cir. 2018) (reversing conviction where court allowed introduction of prejudicial evidence even though jury was provided instruction that evidence "only be considered for intent"); *cf. Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (Jackson, J.,

3

concurring) ("The naive assumption that prejudicial effects can be overcome by instructions to the jury [ ] all practicing lawyers know to be unmitigated fiction.").

### B. The Court should exclude Dr. Wood's testimony, in part.

**1.** The government does not respond at all to Householder's argument that the Court should exclude Dr. Wood's conclusion that "because many of these non-traditional entities do not disclose the sources of their contributions, they prevent the public from detecting when public officials favor the preferences of their donors over the preferences of their broader constituency" (Wood Report at 1) (Doc. 131-3 at 3650) as unhelpful. "A witness, lay or expert, may not form conclusions for a jury that they are competent to reach on their own." *United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013). Householder does not object to "background" testimony about what 501(c)(4) entities are and whether they need to publicly disclose their contributors. But the jury is more than competent to draw their own conclusions from these facts. Dr. Wood's conclusion that the non-disclosure of contributors "prevent[s] the public from detecting when public officials favor the preferences of their donors over the preferences of their broader constituency" (Doc. 131-3 at 3650) is a conclusion the jury is more than competent to reach on its own.

**2.** This Court has the discretion to "limit the number of expert witnesses who testify at trial." *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 769 (6th Cir. 1989) (cleaned up). The government suggests that the Court lacks the discretion to do so because this is a criminal case, not a civil case. (*See* Doc. 132 at 3689). But Evidence Rule 403 applies to both civil and criminal cases. *See* Fed. R. Evid. 101; Fed. R. Evid. 1101(b). And under that rule, "[m]ultiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative." *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 0736, 2004 U.S. Dist. LEXIS 16855,

4

at *75 (N.D. Ill. Aug. 20, 2004). Thus, a district court "is free to exclude *any* expert testimony, including the testimony of an announced expert, if the testimony is cumulative or redundant under Fed. R. Evid. 403." *Polec v. Nw. Airlines (In re Air Crash Disaster)*, 86 F.3d 498, 527 (6th Cir. 1996).

Dr. Wood's opinions (in part) are cumulative and redundant to Charles Walker's opinions as Householder showed in his motion. The government acknowledges that Dr. Wood's and Mr. Walker's opinions overlap. (Doc. 132 at 3689). Although the government claims the overlapping testimony will be brief, both Dr. Wood and Mr. Walker will testify about (1) the amount of contributions a 501(c)(4) entity may receive, (2) whether a 501(c)(4) must disclose its contributors, and (3) the amount of money a 501(c)(4) may spend. The government does not need two witnesses to say the same thing twice.

**3.** The Court should also exclude Dr. Wood's opinion about "the concept of campaign finance disclaimers" and "that disclaimers have consistently been shown to affect voter perceptions." (*Id.* at 1-2). The government does not explain how this testimony is relevant at trial. It says that this "background testimony" "will be helpful to the jury in contextualizing the advertisements they see and hear during trial." (Doc. 132 at 3691). But the jury will receive in evidence these various advertisements, which will include the disclaimer showing who paid for it:

PAID FOR BY GENERATION NOW, INC      PAID FOR BY OHIOANS FOR ENERGY SECURITY

(*See* Doc. 132-4 at 3720, 3726). They do not need a government expert to "contextualize" (whatever that means) political advertisements. Nor do they need a government expert to explain that "disclaimers have consistently been shown to affect voter perceptions." (Doc. 131-3 at

5

3652). The jurors themselves know whether a disclaimer affects their perceptions. They do not need a law professor from California to testify about it. *See United States v. Freeman*, 730 F.3d 590, 597 (6th Cir. 2013).

### III. CONCLUSION

For these reasons, the Court should exclude Dr. Dormady and Dr. Wood (in part).

Dated: October 31, 2022

Respectfully submitted,

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
Mark B. Marein (0008118)
MAREIN & BRADLEY
526 Superior Ave.
Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com
  mark@mareinandbradley.com

Robert T. Glickman (0059579)
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
  & LIFFMAN CO., LPA
1111 Superior Avenue East, Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: rtg@mccarthylebit.com
  nro@mccarthylebit.com

*Counsel for Defendant Larry Householder*

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed on October 31, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
