# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 1:20-CR-77 |
| v. | : | JUDGE BLACK |
| LARRY HOUSEHOLDER, et al., | : | **REPLY IN SUPPORT OF GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE REFERENCES AND COMMENTS REGARDING STATEMENTS BY GOVERNMENT ATTORNEYS RELATING TO THIS CASE** |
| Defendants. | : | |

The United States moved to preclude defense counsel and the defendants from referencing or making comments in front of the jury regarding pretrial statements made by government attorneys. (Doc. 139.) The government did so for good reason. Defendant Borges has represented—actually, misrepresented—post-charge communications made by the government. In so doing, he has forecasted his intention to make this trial not about the evidence, and his guilt or innocence in light of that evidence, but about his disdain for the government attorneys, the Department of Justice, and various politicians. While he may make his feelings and beliefs known to the media, his personal attacks, misrepresentations, and baseless allegations are not admissible at trial before a jury.[1] And, he cannot use the reverse proffer as a trojan horse to get his personal attacks before the jury. The United States has previously described why attacks on the institution of prosecution are improper and constitute jury nullification.  (Doc. 138, PageID 3761-63.)

---

[1] Indeed, Borges has accused government officials, including members of the prosecution team, of being liars through his contacts with the media and on his website.

For his part, Householder seeks to make Borges' an expert on conspiracy and RICO law, and hopes to introduce Borges' rejection of a plea offer a proxy for evidence of his own intent. (Doc. 151, PageID 3864.)[2]

The government's motion should be granted in its entirety.

## A. Defendant Borges

Defendant Borges agrees not to introduce or reference discussions or communications regarding plea negotiations before the jury.[3] (Doc. 146 at 3835.) But he insists that "the reverse proffer" was not part of plea negotiations and argues that any statements made during that session are admissible. (*Id*. at 3835-36.) Defense counsel's position is surprising, both because it runs contrary to the oral confidentiality agreement that governed the reverse proffer and because it runs contrary to basic evidentiary principles. The Court should reject his argument.

Following the Indictment in this case, the government attorneys presented a reverse proffer of some of the government's evidence to Borges *at defense counsel's request* and on the condition of confidentiality. The presentation included argument relating to certain evidence the government had reviewed to that point and statements that the government would continue to investigate other areas of criminal liability through evidence the government was in the process of reviewing (*e.g.*, the defendants' devices, which were going through a filter review). Despite the parties' agreement, Borges disclosed it—and mischaracterized it—on social media. Counsel for the government alerted defense counsel to these mischaracterizations in a July 2021 letter.[4] (*See* Doc. 94, Ex. A.)

---

[2] Householder argues that rejection of a plea offer is relevant to innocent state of mind. (*Id*. at PageID 3865.) That is not an accurate representation of the plea negotiations relating to Borges.

[3] As the government explained in its motion, the same is not true for Borges' statements to the government during proffer meetings. (Doc. 139 at 3774 n.1.)

[4] The reverse proffer occurred in December 2020. Defendant Borges later decided to meet with the government under the terms of a proffer agreement, which protected truthful and complete

Defense counsel now seeks the Court's permission to introduce Borges' mischaracterizations of the reverse proffer at trial. But, unlike the parties' oral confidentiality agreement, the rules of evidence cannot be so easily disregarded. And those rules bar admission of any statements made by the government during the reverse proffer.

Start with the obvious. Statements, characterizations, or arguments made by government lawyers about the evidence—such as those made during closing arguments at trial or, relevant here, during a reverse proffer—are not themselves evidence. *See* Sixth Cir. Pattern Inst. 1.04; *United States v. Sittenfeld*, Case No. 1:20-cr-142, 2022 WL 2192955, at *16 (S.D. Ohio June 17, 2022) ("[t]he statements at the press conference are not evidence"). Indeed, under the Federal Rules of Evidence, the statements have little, if any, probative value at all. *See* Fed. R. Evid. 401.

Next consider that these are out-of-court statements. To the extent Borges seeks to offer the statements for their truth, they are inadmissible hearsay. *See* Fed. R. Evid. 801(c). And, contrary to Borges' assertion, the hearsay exception for public records and reports under Rule 803(8)(A)(iii) does not apply. That exception renders "[a] record or statement of a public office . . . [that] sets out . . . actual findings from a legally authorized investigation" admissible "against the government in a criminal case" if "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." In-depth investigative reports are the paradigmatic example of public records under the Rule. *See e.g., Davignon v. Hodgson*, 524 F.3d 91, 112–13 (1st Cir.2008) (state labor commission's decision regarding alleged labor violations by sheriff); *Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 669 n. 10 (3d Cir.2002) (legislative budget and

---

information. Under the terms of the proffer agreement, the government agreed not to use proffer information except to 1) cross-examine or impeach Borges; 2) rebut evidence or argument made on behalf of Borges that is inconsistent with the proffer information; 3) to determine whether evidence, argument or representations are inconsistent with proffer information; and/or 4) if Borges were to become a fugitive.

finance committee report); *Hill v. Marshall*, 962 F.2d 1209, 1215 n.2 (6th Cir.1992) (report by prison inspection committee).

The public-records hearsay exception has no application to an informal and preliminary presentation made by government attorneys to a criminal defendant. Borges does not—and cannot—point to any public record or statement from the reverse proffer that sets forth factual findings. Nor can he establish that statements by government attorneys during the reverse proffer—and while they were still reviewing evidence—constitutes a record or statement of the United States Attorney's Office for the Southern District of Ohio pursuant to Rule 803(8).

Even if the statements Borges seeks to introduce were not inadmissible hearsay, they would still be inadmissible. Whether introduced for the truth or not, the statements cannot survive the balancing required under Federal Rule of Evidence 403. That rule requires the probative value of any evidence to outweigh any confusion that would result from its admission.

Borges' response reveals that he wants to make a classic straw man argument to confuse the jury: that is, introduce "statements" (his own misrepresentations of the reverse proffer) to prove their falsity. However, his recollection of attorneys' statements about the case not offered for the truth serve no discernable evidentiary purpose and, to the extent they contradict the facts adduced at trial, have the potential to confuse and mislead the jury. In fact, the Court rejected a defendant's attempt to make a similar straw man argument during a recent corruption trial, explaining that the defendant cannot "intentionally inject[] non-evidentiary allegations into [the] trial solely for the purpose of . . . then disputing the very allegations that he introduced." *Sittenfeld*, 2022 WL 2192955, at *16 (granting government's motion *in limine* to exclude statements).

The actual statements (as opposed to Borges' misrepresentations) made by government attorneys were arguments based on certain evidence collected at that time. Why Borges would

want to introduce these arguments—relating to his knowledge of and involvement with Enterprise members and associates—is inexplicable.[5] But at trial, what matters for the jury is the evidence before them. To the extent Borges wishes to challenge that evidence, he may do so through proper channels such as cross-examination of government witnesses about the evidence. But Borges may not distract jurors from consideration of the actual evidence by injecting non-evidentiary allegations from a \reverse proffer.

**B. Defendant Householder**

Defendant Householder "takes no position on the government's motion" save for one exception: should Borges testify, Householder seeks to cross-examine him about whether the government offered—and he rejected—a plea. (Doc. 151 at 3864.) According to Householder, "a defendant's rejection of a plea offer is relevant to his innocent state of mind" and "because the government charge[d] Borges in the same racketeering conspiracy as Householder, Borges' state of mind is relevant." (*Id.* at 3865.)

Defendant Householder rests his argument on a Second Circuit case, *United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990), which held that evidence of a defendant's rejection of an immunity offer was relevant to his innocent state of mind and should have been admitted at trial. *Biaggi* reasoned that "the probative force of a rejected immunity offer" was strong enough to render it relevant because it would have "preclude[d] all exposure to a conviction and its consequences." *Id.* at 691-92. But *Biaggi* drew a distinction between the probative value of a rejected immunity agreement and a rejected plea offer because "[a] plea rejection might simply mean that a defendant

---

[5] One reason would be to attempt to discredit the prosecutors by introducing his mischaracterizations; essentially accusing the prosecutors of lying and inviting the jury to discredit prosecutors' arguments not based upon their assessment of the evidence but because of Borges' personal attacks. Because the government attorneys cannot testify at trial, the government would have no way of contesting Borges' false allegations directly.

prefers to take his chances on an acquittal . . . rather than accept the certainty of punishment after a guilty plea." *Id.* at 691.

Householder cites no case in which a court has admitted evidence of a rejected plea offer to show an innocent state of mind, let alone a case in which such evidence pertained to a co-conspirator's state of mind. For example, the Second Circuit, post-*Biaggi*, affirmed a district court's exclusion of a rejected plea offer. *United States v. Goffer*, 721 F.3d 113, 128-29 (2d Cir. 2013) (affirming exclusion of rejection of plea offer because the fact "'that defendant preferred to take his chances on an acquittal by the jury, rather than accept the certainty of punishment after a guilty plea,'" was not probative of his innocence).

The Sixth Circuit reached a similar conclusion in *United States v. Geisen*, 612 F.3d 471 (6th Cir. 2010), which involved a defendant's rejection of a deferred prosecution agreement. *Geisen* "found no error" in the district court's exclusion of the rejection. The Sixth Circuit reasoned that a DPA was not as probative of a consciousness of innocence as an immunity offer and that its limited probative value was "outweighed by the considerable avenues of inquiry that would be opened by admitting the evidence."[6] *Id*. at 496-97.

Borges' rejection of the plea offer here has even less probative value than the defendant's rejection of the DPA in *Geisen*, given that the plea offer required him to plead guilty to the indictment. Moreover, because it was Borges, not Householder, who rejected the plea offer, the rejection would not shed any light on *Householder*'s guilt or innocence. *Cf. United States v. Benson*, 591 F.3d 491, 498 (6th Cir. 2010) ("Co-defendant or co-conspirator guilty pleas are not admissible

---

[6] *Geisen* observed that the Eighth Circuit has held that government proposals concerning pleas are inadmissible based on the rationale of Federal Rule of Evidence 408, which seeks to promote candid settlement talks. Because the evidence was properly excluded under Rule 403, however, the Sixth Circuit did not reach that issue. *Geisen*, 612 F.3d at 496 (citing *United States v. Verdoorn*, 528 F.2d 103 (8th Cir. 1976)).

as substantive evidence of the defendant's guilt."); Sixth Cir. Pattern Instruction 2.01B ("in our system of justice, guilt or innocence is personal and individual.  It is your duty to separately consider the evidence against each defendant . . . . Your decision on one defendant, whether it is guilty or not guilty, should not influence your decision on any of the other defendants.").

The government's motion should be granted in its entirety.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

*s/ Emily N. Glatfelter*
EMILY N. GLATFELTER (0075576)
MATTHEW C. SINGER (IL 6297632)
Assistant United States Attorneys
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Emily.Glatfelter@usdoj.gov
Email:  Matthew.Singer@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing Reply was filed electronically this 5th day of December, 2022, and served upon all counsel of record via the Court's CM/ECF system.

                                        *s/Emily N. Glatfelter*
                                        EMILY N. GLATFELTER 0075576)
                                        Assistant United States Attorney