## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:20-cr-77 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| LARRY HOUSEHOLDER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER RESOLVING MOTIONS IN LIMINE

This criminal case is before the Court on the Government's three motions *in limine* (Docs. 137, 138, 139) and the responsive memoranda (Docs. 146, 147, 149, 150, 151, 152); Defendants Larry Householder and Matthew Borges's joint motion *in limine* (Doc. 140) and the Government's responsive memoranda (Doc. 143); and Defendant Larry Householder's two motions *in limine* (Docs. 141, 142) and the Government's responsive memoranda (Docs. 144, 145).

## I. BACKGROUND

On July 30, 2020, a federal Grand Jury returned a single-count Indictment, charging Defendants Larry Householder, Jeffrey Longstreth, Neil Clark, Matthew Borges, Juan Cespedes, and Generation Now with participating in a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(c), (d). (Doc. 22).

Following the Indictment, Defendants Longstreth, Cespedes, and Generation Now pleaded guilty and will be sentenced at the conclusion of the case. (Min. Entries, Oct. 29, 2020, Feb. 9, 2021). Defendant Neil Clark died and, accordingly, the case against him

was dismissed.  (Doc. 88).  Therefore, Defendants Larry Householder and Matthew Borges (collectively, "Defendants") are the only remaining defendants.

The case is set to proceed to *voire dire* on January 20, 2023, and to jury trial on January 23, 2023.  (Doc. 118).  In anticipation of trial, the parties have filed the motions *in limine* currently before the Court.  (Docs. 137-142).

## II.  STANDARD OF REVIEW

"A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court."  *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citations omitted).  "Motions in limine are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose."  *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child and Family Serv.*, 115 F.3d 436, 440 (7th Cir. 1997)).  However, "[o]rders *in limine* which exclude broad categories of evidence should rarely be employed."  *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).  Rather, motions *in limine* are "generally confined to very specific evidentiary issues of an extremely prejudicial nature."  *Brown v. Oakland Cnty.*, No. 14-CV-13159, 2015 WL 5317194, at *2 (E.D. Mich. Sept. 10, 2015).

If the evidence is not plainly inadmissible on all potential grounds, the Court's "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."  *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.  Moreover, "[d]enial [or granting] of a motion in limine does not

necessarily mean that all evidence contemplated by the motion [will or] will not be admitted at trial …." *Id.* The Court may change its ruling at any point prior to or during the trial, as "facts may … come to the district court's attention which it did not anticipate at the time of its initial ruling." *Yannott*, 42 F.3d at 1007. "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## III. ANALYSIS

### A. The Government's Motions *in Limine*

#### 1. *Preclude References to and Comments Regarding Discovery*

The Government moves to preclude the defense from referencing or making comments in front of the jury regarding the discovery process or any possible discovery disputes (*e.g.*, to preclude the defense from stating that certain discovery was requested but not received). (Doc. 137). The Government argues that such statements are irrelevant and may lead the jury to conclude that the Government withheld information that Defendants were otherwise entitled to receive. (*Id*. at 1-2).

Defendants both filed responses, stating that they were in agreement with the Government's motion. (Docs. 147, 149). However, Defendants both indicated that they may elicit testimony regarding the evidence that *was* gathered, the evidence that was *not* gathered, and how evidence collection was accomplished. (*Id*.)

As the parties agree in substance, the Government's motion to exclude references to the discovery process and discovery disputes, if any, is **GRANTED**. (Doc. 137).

Moreover, Defendants are, of course, free to elicit testimony regarding the evidence. However, the Court must clarify that the constitutionality or propriety of evidence collection methods is a legal question for the Court.  And this Court has found no impropriety in the Government's evidence collection.[1]  Accordingly, Defendants will not be permitted to state, suggest, or otherwise imply to the jury that the Government acted unlawfully or improperly in obtaining the evidence in this case.

### 2.  *Preclude Argument & Evidence Supporting Jury Nullification*

Next, the Government moves to preclude defense counsel and Defendants (should they choose to testify) from "arguing, presenting evidence, or pursuing lines of inquiry designed to elicit[,] or [that have] the effect of supporting[,] jury nullification."  (Doc. 138).  Specifically, the Government raises the concern that Defendants will attempt to lure jurors towards nullification, by presenting arguments and/or evidence, including, *inter alia*: (a) selective prosecution; (b) "this is how fundraising works"; (c) ignorance of the law; (d) a First Amendment affirmative defense; and (e) "unrelated noncorrupt or good acts."  (*Id*. at 2).

Defendants do not dispute that overt jury nullification arguments are improper, and Defendants generally affirm that they have no intention of pursuing most (or any) of the five arguments the Government has specifically identified.  (Doc. 150 at 1) ("Householder is not presenting a selective prosecution, mistake of law, or First Amendment defense"); (Doc. 152 at 2) ("Borges has no intent to argue or present

---

[1] The Court will enter a separate Order regarding Defendant Householder's motion to suppress. (Doc. 114).

evidence of the first four categories of topics and, regarding the fifth topic, Borges will not offer evidence inconsistent with Rules 404 or 405 of the Federal Rules of Evidence"). However, Defendants argue that the Government's motion should be denied, as the broad categories of evidence that the Government seeks to exclude may encompass permissible lines of questioning and argument. (*Id.*)

Needless to say, the gist of the Government's motion (*i.e.*, to preclude evidence and argument calling for or in support of jury nullification) is well-taken. *See Wofford v. Woods*, 969 F.3d 685, 709 (6th Cir. 2020) ("courts will not encourage [jury nullification], provide jury instructions acknowledging it, or allow lawyers to argue overtly for it"); *United States v. Walsh*, 654 Fed. App'x 689, 696-97 (finding the district court did not abuse its discretion by precluding defendants "from arguing or presenting evidence on topics that would lead to jury nullification").

However, for clarification, the Court will address Defendants' responses to the Government's five identified categories, in turn.

a. Selective Prosecution

Defendants assert that they do not intend to argue selective prosecution (*e.g.*, that others who have engaged in similar conduct were never prosecuted, or that the prosecutors acted with unlawful or improper motivations in deciding to charge Defendants). (Doc. 150 at 3-4; Doc. 152 at 2-5). However, Defendants argue that they should be permitted to attack flaws in the investigation, as well as the bias or credibility of law enforcement witnesses. (*Id.*)

As an initial matter, and as Defendants acknowledge, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  Because selective prosecution is a pretrial issue rather than a defense, the Court will not permit it to be asserted or suggested at trial.

But Defendants' proposed arguments, in general, do not amount to selective prosecution.  Specifically, Defendants' intent to challenge the reliability of the investigation is generally permissible.  *See*, *e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 445-49 (1995) (holding that evidence was material and could have been used to undermine the integrity of the investigation).  The defense may also impeach witnesses' testimony, based on, *e.g.*, prior inconsistent statements or bias.  Fed. R. Evid. 607.

Of course, none of this permits the defense to cause confusion or to throw out irrelevant or baseless accusations.  For instance, differing political party affiliations alone do not evidence bias nor motivation.[2]  And the Court will not permit either side to suggest that party affiliation is an inherent sign of dishonesty, nor to stoke political divisions as a method of persuasion.

---

[2] Defendant Borges suggests that political motives are a valid basis of examination because Donald Trump politicized the Department of Justice and the FBI.  (Doc. 152 at 4-5).  But impeachment must be directed toward an individual witness's testimony.  Fed. R. Evid. 607(2) ("The point of impeachment is to impugn a witness's credibility by attacking his ability to perceive the event, recall accurately that which he perceived, or communicate his story accurately, or his desire to testify truthfully").  The suggestion that Defendant Borges was, so to speak, 'on the FBI's radar' because of political disagreements is irrelevant to his guilt or innocence, as well as to whether a witness's testimony is reliable.  Thus, the line of questioning is irrelevant absent credible evidence that the agents or the investigation were unreliable.

### b.  "This is How Fundraising Works"

Similar to the selective prosecution argument, the Government asserts that the defense should be precluded from arguing that the alleged conduct is nothing more than the nature of politics and fundraising.  (Doc. 138 at 6-7).  Defendants state that they do not intend to make a "this is just how fundraising works" argument.  (Doc. 150 at 4-5; Doc. 152 at 1-2).  However, Defendant Householder does argue that he thinks an overview of how fundraising work, generally, is relevant.

The Court will address admission of expert testimony on 'how fundraising works' in the context of the *Daubert* motions.  But, as a general matter, there is a difference between merely helping the jury understand the context of the case, and the notion that the alleged conduct is common practice and should therefore be excused.  The latter suggestion is impermissible.

### c.  Ignorance of the Law

The Government argues that Defendants should be precluded from presenting evidence and argument in support of a mistake of law defense.  (Doc. 138 at 8-9).  And the Government notes that Defendant Householder's *Daubert* briefings suggest his intent to raise or imply such a defense.  (Doc. 138 at 8-9).  Defendant Householder states that he has no intention to raise the argument, but merely intends to present testimony to assist the jury in understanding the operation of a 501(c)(4) and the funding of political campaigns.  (Doc. 150 at 6).  Again, the Court will address the specifics in its Order resolving the *Daubert* motions.  But mistake of the law is not a valid defense in this case, and any testimony or argument to that end is precluded.

d. <u>First Amendment Protections</u>

The Government argues that the defense should be precluded from arguing that the conduct is protected by the First Amendment, as the applicability of the First Amendment to political contributions is a legal question that will be part of the Court's instruction. (Doc. 138 at 9-10). In response, Defendant Householder asserts that "if the Court instructs the jury that contributions … 'are generally protected by the First Amendment, unless they qualify as bribe payments,' then counsel should be permitted to argue that FirstEnergy['s] … contributions to Generation Now were permissible and protected by the First Amendment because they were not bribe payments." (Doc. 150 at 6-7).

While the defense can and will undoubtedly argue that the payments do not constitute bribes, tying that argument to legal issues could lead to confusion. The Court will accurately and thoroughly instruct the jury on the law. And so long as the parties' closing arguments do not expand on the Court's instruction of the law, there is no issue. But the Court would caution counsel that inviting First Amendment analysis, or using language that veers from the Court's instruction, will be a problem. And the Court will resolve that problem by stopping counsel, mid-argument, and providing a curative instruction to the jury.

e. <u>Evidence of "Good Acts"</u>

The Government argues that the defense should be precluded from presenting arguments or evidence of "good acts" on unrelated occasions, *e.g.*, instances in which political contributions were accepted with no expectation or action in return. (Doc. 138 at 10-13). Defendant Householder argues that, because the Government charged

"ceaseless criminal conduct," he should be permitted to present limited "good acts" to counter the allegations. (Doc. 150 at 6-9). Similarly, Defendant Borges argues that such evidence should be permitted to show motive or intent, as well as pertinent traits. (Doc. 152 at 6-9).

A criminal defendant "may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Fed. R. Evid. 404(a)(2)(A). Thus, the Court will permit such evidence, pursuant to Rule 404(a)(2)(A), so long as it is relevant to the charged offense, does not risk confusing the jury, and does not become cumulative. The Government will, of course, be permitted to present rebuttal evidence of any pertinent traits that Defendants put into evidence.

However, individual instances of non-criminal conduct have no relevance to the charges at issue. Despite Defendant Householder's assertion that he is charged with "ceaseless criminal conduct," the Government has never asserted that every political contribution received was a bribe. Thus, the fact that Defendant could point to unrelated, demonstrably above-board contributions has no bearing on his guilt or innocence to the charged offense. *See United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) ("All [defendant's evidence] would have shown is that, in situations unrelated to the charges, Dimora did favors for people who did not pay him bribes"). Accordingly, such evidence has no probative value, whereas presenting such evidence risks confusing the jury and conflating unrelated incidents.

The Court finds the Government's motion as to jury nullification (Doc. 138) is well-taken and **GRANTED**, subject to the clarification the Court provided, *supra*.

### 3. *Preclude References/Comments Regarding the Government's Pretrial Statements*

Finally, the Government moves to preclude the defense from referencing or making comments to the jury regarding pretrial statements made by the Government's attorneys. (Doc. 139). Specifically, the Government states that Defendant Borges has made post-indictment representations, both to the media and online, relating to conversations with the Government that occurred during plea negotiations/proffer sessions, and also relating to former U.S. Attorney David Devillers's press conferences. (*Id*.) As to conversations held during plea negotiations and proffer sessions, the Government argues that any statements made are irrelevant and also constitute inadmissible hearsay. (*Id*. at 1-2). And as to former U.S. Attorney Devillers's statements, the Government argues that such statements are irrelevant, and may also constitute a veiled attempt by the defense to make a selective prosecution argument and invite jury nullification. (*Id*. at 3-4).

As an initial matter, Defendants are in agreement that references to the U.S. Attorney's Office's press conference statements should be excluded. Specifically, Defendant Borges agrees that such statements are irrelevant, and further states that he has no intention of raising a selective prosecution argument. (Doc. 146 at 3). And Defendant Householder takes no position on this aspect of the motion. (Doc. 151 at 1).

As to plea negotiations and proffer sessions, Defendants Borges and Householder take differing positions. (Docs. 146, 151). Accordingly, the Court will address each Defendant's arguments separately.

10

a. <u>Defendant Borges's Response</u>

Defendant Borges first states that he "agrees that neither side can introduce or reference discussions or communications regarding plea negotiations before the jury." (Doc. 146 at 1).  However, Defendant Borges asserts that no plea negotiations occurred during the reverse proffer session and, therefore, any statements made during the reverse proffer are admissible and, pursuant to Fed. R. Evid. 803(8), such statements do not constitute hearsay.

To start, the Court is not persuaded that the reverse proffer can genuinely be divorced from plea negotiations.  Specifically, a reverse proffer session is a meeting in which the Government shows a defendant the evidence that the Government has against him.  However, the Government has no obligation to engage in a reverse proffer, nor to provide a roadmap of its case to a defendant.  Rather, generally speaking, the Government will hold a reverse proffer for the specific purpose of assisting a defendant in making an informed decision regarding his chances at trial and, thus, whether accepting a plea would be more beneficial.  Therefore, while it is entirely plausible that no plea offer was extended or even discussed during the reverse proffer, it is, in this Court's view, disingenuous to say that the two events are entirely distinct.

Nevertheless, Defendant Borges's argument fails on other grounds.  Specifically, Defendant Borges states that, during the reverse proffer session, the Government made statements regarding the evidence and also presented some of those statements to him as part of a PowerPoint presentation.  (Doc. 146 at 2).  Defendant Borges argues that those statements, along with the PowerPoint presentation in which they are contained, are

admissible and not hearsay, pursuant to Fed. R. Evid. 803(8), because the United States Attorney's Office ("USAO") constitutes a "public office," and because the statements made during the reverse proffer were "factual findings from a legally authorized investigation." (*Id*.) However, Defendant asserts that the "factual findings" presented by the Government were false and led to erroneous inference in the course of the investigation. (*Id*. at 2-3). Thus, Defendant argues that he should be permitted to present the statements and PowerPoint to the jury, to "illustrate, among other things, problems with the Government's investigation." (*Id*.)

Defendant Borges defeats his own argument here. Rule 803(8) is an exception to the rule against hearsay, the purpose of which exception is to say that "factual findings," provided by a public office, are presumed to be inherently reliable and accurate, and should therefore not be exclude as hearsay, unless the opposing party presents some evidence that the information in question is unreliable. Fed. R. Evid. 803(8). However, here, Defendant himself claims that the statements are unreliable. Indeed, Defendant does not intend to present this evidence as proof of the matter asserted, but rather as proof of the Government's allegedly misguided investigation. Because Defendant does not intend to use the evidence to prove the truth of the matter asserted, Rule 803(8) and hearsay, in general, do not apply.

But this conclusion does not mean that the evidence is admissible. As previously stated, and as Defendant acknowledges, the evidence and inferences discussed during the reverse proffer are likely to be the same evidence and inferences that the Government will ask the jury to view and conclude. And, at that time, Defendant is welcome to

12

present any evidence he has to contradict what the Government has presented, or to thoroughly cross-examine the Government's law enforcement witnesses. But Defendant cannot present evidence on the Government's behalf just so he can argue against it. Nor does he require the Government's pretrial PowerPoint presentation to make his case. Defendant's case needs to focus on the evidence that the Government presents at trial, not on the Government's pretrial visual aid.

Finally, although not specifically addressed in Defendant's response, the Court cannot conceive of any circumstances in which the PowerPoint could appropriately be used for impeachment. Impeachment is directed at the witness, not the prosecutors. And anything presented in the PowerPoint (which the Court has not seen) presumably exists in a more official form (*i.e.*, an investigative summary or a Memorandum of Interview). So, Defendant will need to rely on those official documents for impeachment, rather than the summary contained in the PowerPoint.

The Court finds Defendant Borges's arguments unpersuasive, and the Court concludes that the pretrial statements are inadmissible for the purposes Defendant Borges outlines.

b. Defendant Householder's Response

Defendant Householder responds to the Government's motion by stating that, because he did not engage in proffer or plea discussions, he generally takes no position, with one exception. (Doc. 151 at 1). That is, Defendant Householder asserts that, "should Borges testify, Householder should be permitted to cross-examine Borges about whether the government offered Borges a plea and whether Borges rejected the plea."

(*Id.*)  Defendant Householder argues that while plea discussions are inadmissible against a defendant, the defendant can introduce plea discussions for his own tactical advantage. (*Id.* at 1-2) (citing *United States v. Mezzanatto*, 513 U.S. 196, 205 (1995)).  And thus, Defendant argues that "because a defendant's rejection of a plea offer is relevant to his innocent state of mind … [a]nd because the government charges Borges in the same racketeering conspiracy as Householder [], Borges's state of mind is relevant."  (*Id.* at 2) (citing *United States v. Biaggi*, 909 F.2d 662, 691 (2d Cir. 1990)).

As an initial matter, the point during which Defendants' state of mind is relevant to the conspiracy is at the time of the alleged conspiracy.  But Defendant Borges's state of mind during the post-Indictment plea negotiations has no relevance to Defendant Householder's alleged involvement in the conspiracy.  Additionally, while rejection of a plea *may* be indicative of a defendant's firm conviction in his innocence (which jurors are required to presume anyway), it may also just be an indication that a defendant preferred to take his chances at trial.  *See Biaggi*, 909 F.2d 662, 691 ("A plea rejection might simply mean that the defendant prefers to take his chances on an acquittal by the jury, rather than accept the certainty of punishment after a guilty plea.")  And, in any event, whatever inference may be drawn from Defendant Borges's rejection of a plea offer certainly does not carry over to Defendant Householder.  Nor are Defendants' guilt or innocence conditioned upon one another.  Indeed, the Court will instruct the jury that a verdict of "guilty" or "not guilty" as to one defendant does not control the verdict as to the other defendant.  Thus, Defendant Householder's proposed line of questioning is irrelevant.

Additionally, any cross-examination conducted by counsel would need to be within the scope of direct, and given that neither Defendant Borges nor the Government intend to elicit testimony regarding plea negotiations, any such questions from Defendant Householder's counsel would be outside the scope.

Finally, while Defendant Householder acknowledges that Fed. R. Evid. 410 precludes using plea statements against a defendant, he then asserts that he can use the statements to <u>his own</u> advantage. The problem, however, is that these are not Defendant Householder's statements. "Rules 410 and 11(e)(6) 'create, in effect, <u>a privilege of **the** defendant</u>,' and, like other evidentiary privileges, this one <u>may be waived or varied at **the** defendant's request</u>." *Mezzanatto*, 513 U.S. at 205 (internal citation omitted) (emphasis added). Defendant Householder is not **the** defendant who made the statement. Thus, even if the Court permitted any testimony regarding plea negotiations, it will be entirely within Defendant Borges's and his counsel's discretion whether they want to open that door —Defendant Householder will not be permitted to pry it open for him.

Based upon the foregoing, the Government's motion to preclude pretrial statements is **GRANTED**. (Doc. 139).

### B. Defendants' Joint Motion *in Limine*

Defendants jointly move to exclude "FirstEnergy Corp.'s deferred prosecution agreement and any testimony regarding it at trial." (Doc. 140).

The Government responds that the motion is moot, as the Government does not intend to introduce the FirstEnergy deferred prosecution agreement ("DPA") as an exhibit at trial. (Doc. 143). The Government *does* intend to evidence the facts

underlying and alleged in the DPA, but commits to doing so without using or referencing the DPA itself. (*Id*. at 2, n.1). However, the Government notes that acknowledgment of the DPA's existence may become necessary, depending on how events transpire at trial (*e.g.*, what statements the defense makes during *voir dire* or in opening, or whether a witness with knowledge of the DPA is called to testify, *etc.*). (*Id*. at 2). In this regard, the Government states that Defendants' motion is premature and should be denied. (*Id*.)

Given the Government's assurance that it does not intend to present the DPA as an exhibit, nor use the DPA in evidencing the underlying allegations, the Court finds that Defendants' joint motion is **MOOT**. Additionally, the Court agrees that circumstances *may* present at trial, in which some reference to the DPA may become necessary. But the Court will address admissibility in those instances, if and when such circumstances come to pass. At this time, such a ruling is premature.

### C. Defendant Householder's Motions *in limine*

#### 1. *Motion to Exclude Co-Conspirator Hearsay*

Defendant Householder moves to preclude the Government from introducing recorded communications between an undercover FBI Agent (the "UCE") and former co-Defendant Neil Clark ("Clark").[3] (Doc. 141).[4] Defendant Householder argues that

---

[3] As previously noted, Defendant Clark was charged as a co-conspirator in this case, but he has since died and, accordingly, the charge against him was dismissed. (Doc. 88).

[4] Defendant Householder also moved to exclude communications held between FirstEnergy executives and the former PUCO chair, regarding a $4.3 million payment. (Doc. 141). However, the Government responded that it does not intend to introduce these communications. (Doc. 144 at 1, n. 1). Accordingly, the Court deems this relief **MOOT**.

Clark's statements to the UCE were neither about nor made in furtherance of the charged conspiracy. (*Id*. at 7-9). Defendant further argues that Clark's statements were merely idle chatter and boasting, made at an event that neither Defendant Householder nor any other co-defendant attended, and that the statements, at best, *described* activities of a conspiracy, but did nothing to *further* the conspiracy. (*Id*.) Accordingly, Defendant argues that the statements constitute hearsay and should be excluded. (*Id*.)

The Government argues in its response that Clark's statements are the statements of a co-conspirator, made during and in furtherance of the conspiracy and, therefore, are not hearsay, pursuant to Fed. R. Evid. 801(d)(2)(E). (Doc. 144). The Government further notes that because Clark served as Defendant Householder's Generation Now proxy, "Clark['s] statements are also admissible as a statement 'by a person whom the party authorized to make a statement on the subject' or by an authorized agent under Rule 801(d)(2)(C) and (D)." (Doc. 144 at 10, n.7).

### a. Co-Conspirator's Statements – Fed. R. Evid. 801(d)(2)(E)

Pursuant to Rule 801(d)(2)(E), a statement is not hearsay if "[t]he statement is offered against an opposing party and … was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Alleged co-conspirator statements may be admitted in evidence, "if [the Court] finds, by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the defendant was a member of the conspiracy; and (3) that the coconspirator's statements were made in the course of and in furtherance of the conspiracy." *United States v. Pressley*, 20 F. App'x 331, 334 (6th Cir. 2001) (citing *United States v. Mack*, 159 F.3d 208, 215 (6th Cir.

1998)). In making this determination, the Court should consider the statements sought to be admitted, but those statements must also be corroborated by independent evidence. Fed. R. Evid. 801(d)(2)(E); *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006) (quoting *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)).

There are three methods by which the Court can determine whether to admit an alleged co-conspirator's statements: (1) the Court may hold an *Enright* hearing, outside of the jury's presence, to allow the Government to make its showing regarding the conspiracy; (2) the Court may require the Government to first produce non-hearsay evidence of the conspiracy during the trial; or (3) the Court may conditionally admit the alleged co-conspirator statements over the defendant's ongoing objection, subject to later demonstration of the statements' admissibility. *United States v. Vinson*, 606 F.2d 149, 152-53 (6th Cir. 1979); *United States v. Enright*, 579 F.2d 980, 985-86 (6th Cir. 1978). If the Court elects to admit the statements conditionally, the Court should rule on the admissibility of the evidence at the close of the government's case-in-chief. *United States v. Barrett*, 933 F.2d 355, 358 (6th Cir. 1991).

Here, the Government asks that the Court conditionally admit the statements, and the Government's response serves as a substantial written proffer in support of conditional admission. (Doc. 144). Indeed, the Government notes precisely how it intends to meet its burden, by a preponderance of the evidence, to show that: (1) a conspiracy existed; (2) Clark was a member of the conspiracy; and (3) that the statements were indeed in furtherance of the conspiracy.

In response to Defendant's arguments that Clark's statements were unrelated to the charged conspiracy, the Court notes that, "[w]hen determining whether a conspiracy existed under Rule 801(d)(2)(E), '[t]he key is coordinated action[,]' [and] [f]or this reason, … the alleged conspiracy need not be the same as the one charged." *United States v. Musaibli*, 42 F.4th 603, 615 (6th Cir. 2022) (collecting cases). "In fact, there need not even be a conspiracy charge in the case for Rule 801(d)(2)(E) to apply." *Id.*

Additionally, "[a] statement is considered to be in furtherance of the conspiracy 'if it is intended to promote the objectives of the conspiracy.'" *United States v. Darwich*, 337 F.3d 645, 657 (6th Cir. 2003) (quoting *United States v. Monus,* 128 F.3d 376, 392 (6th Cir. 1997)). It is true that "mere 'idle chatter or casual conversation about past events'" and "mere narrative declarations" are not considered to be "in furtherance of the conspiracy." However, it is only mere chatter *if* it is "made without the intent to induce assistance for the conspiracy." *Darwich*, 337 F.3d at 657 (citing *United States v. Foster,* 711 F.2d 871, 880 (9th Cir. 1983)). In other words, if the Government proves that the conversation, casual as it may have been, is intended to "induce assistance for the conspiracy," then it is, indeed, in furtherance of the conspiracy.

Accordingly, the Court rules that it will conditionally admit the statements of Neil Clark and other alleged co-conspirators, pursuant to Rule 801(d)(2)(E), over Defendants' continuing objection (which is now of record), subject to the Government meeting its burden of proof. At the close of the Government's case, the Court will issue a final ruling as to admissibility.

19

b.  Authorized Proxy's Statements – Fed. R. Evid. 801(d)(2)(C), (D)

Pursuant to Rule 801(d)(2)(C) and (D), statements offered against an opposing party do not constitute hearsay if they were made by either "a person whom the party authorized to make a statement on the subject" or "the party's agent or employee on a matter within the scope of that relationship and while [the relationship] existed."  Fed. R. Evid. 801(d)(2)(C), (D).[5]

The Government notes that Defendant Householder appointed Clark to serve as Defendant Householder's "proxy" with regard to Generation Now.  (Doc. 144 at 7, 11). The Government further summarizes the evidence it intends to present at trial, which evidence would support the conclusion that Clark, as Defendant Householder's proxy, was authorized to speak on behalf of Defendant Householder regarding the subject at hand (*e.g.*, soliciting contributions) and/or that Clark's statements were within the scope of his employment and were made during the existence of the relationship.  Accordingly, the Government argues that the statements at issue are admissible, in the alternative, under Rule 801(d)(2)(C) and (D).

The Court finds that Rule 801(d)(2)(C) and (D) serve as an alternative basis upon which to admit Clark's statements.  The statements are therefore conditionally admitted, in the alternative, subject to the Government meeting its burden at trial.

---

[5] Fed. R. Evid. 801(d)(2)(C) and (D) differ in that, "under [Rule 801(d)(2)(D),] the declarant need not have personal knowledge of the operative events. … Additionally, the agent 'need not have authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority.'"  *United States v. Lawson*, No. 3:08-cr-21-KSF, 2009 WL 4720325, at *3 (E.D. Ky. Dec. 9, 2009) (collecting cases).

In sum, the Court rules that the statements of Neil Clark and other alleged co-conspirators are admissible pursuant to Rule 801(d)(2)(C), (D), and (E). The Court further **CONDITIONALLY ADMITS** said statements, subject to the Government meeting its burden of proof at trial. The Court notes Defendants' continuing objection and, accordingly, Defendants' need not raise the objection during trial. <u>At the close of the Government's case, the Court will issue a final ruling as to admissibility</u>.

### 2. *Motion to Exclude Prejudicial Evidence*

Defendant Householder moves to exclude two categories of evidence and argument: (1) evidence regarding alleged bribe payments made to Public Official B; and (2) references to "Householder's Enterprise." (Doc. 142).

With regard to the alleged bribe payments to Public Official B, the Government responds that it "does not intend to introduce any evidence about payments made to Public Official B or a scheme to bribe Public Official B," but the Government notes that it will revisit the issue should "such evidence becomes relevant because of the defendants' cross-examination, case, or argument." (Doc. 145 at 2). As the Government does not intend to introduce this evidence, Defendant's motion in the first part is **MOOT**. (Doc. 142).

As to using "Householder's Enterprise," the Government states that it does not intend to use the phrase as a formal name, but notes that the evidence will make Defendant's Householder's control of the enterprise clear. (Doc. 145 at 3). Thus, the Government argues that it "should not be precluded from introducing evidence and potentially using the term at trial to argue that Householder controlled and directed the

Enterprise, consistent with a reasonable interpretation of the evidence submitted at trial." (*Id.*)

"[T]he fact that a term has a negative connotation does not mean that it violates Rule 403[.]" *United States v. Guzman*, 571 F. App'x 356, 361 (6th Cir. 2014) (citations omitted). In *Guzman*, the Sixth Circuit held that the term "pill mill" was not unduly prejudicial, as it was not a legal conclusion, and because the term was commonly used by courts, law enforcement, and the media. (*Id.* at 360-61).

Here, the Court cannot say that "Householder's Enterprise" is overwhelmingly prejudicial—indeed, it does not even carry the same level of visceral negativity as does a phrase like "pill mill." And "Householder's Enterprise" is, after all, effectively what the Government is alleging. Additionally, the Government intends to use "Householder's Enterprise" as a descriptive phrase, rather than a formal title. Saying "Householder's Enterprise" describes the Government's allegation and does not carry the same prejudicial effect as calling it "The Householder Enterprise" as a formal title.

Nevertheless, the phrase "Householder's Enterprise" is not a common term, but rather the Government's constructed label, which label encompasses factual conclusion (*i.e.*, that an enterprise existed and that Defendant Householder was running it), which conclusions the Government believes the jurors will reach for themselves after hearing the evidence. Indeed, it is the Government's burden is to persuade the jurors of these conclusions, using the evidence at trial. Thus, the Court finds that curtailing the Government's use of a conclusory label (which is not evidence), causes the Government little to no detriment. The Government is still free to argue Defendant Householder's

control over the enterprise, as well as to introduce evidence in support of this argument. But the ultimate inferences (*i.e.*, that Householder controlled and benefitted from the enterprise) should be drawn by the jury; and jurors should draw these inferences from the evidence, rather than the Government's choice of language.

To be clear, it is not the mere use of the word "enterprise" after Defendant Householder's name that is the issue, nor is it the conclusion that the enterprise was controlled by and run for the benefit of Defendant Householder (if supported by or presented as evidence). Thus, the Government may, for instance, choose to say during its opening statement that *the evidence will show* this was Householder's enterprise, as such usage does not involve the Government imposing its own label on the jury.

In truth, the practical effect of the Court's ruling is minimal. Indeed, unlike words such as "scheme" or "conspiracy," the word "enterprise," as defined under the RICO statute, is not part of the common vernacular. Thus, the only occasions in which the phrase "Householder's Enterprise" is likely to come up are during opening or closing statements. Nevertheless, and for what it is worth, during the examination of witnesses, the Government should simply refer to the "enterprise," as opposed to "Householder's Enterprise." Moreover, during opening or closing statements, the Government should not use "Householder's Enterprise" as a proper noun.[6]

---

[6] Frankly, given the fine line the Court is drawing, it may be wise for the Government to simply tweak its language modestly, so as to avoid semantical objections during opening and closing (which objections, whether or not sustained, would result in needless disruption).

Accordingly, Defendant Householder's motion is **GRANTED IN PART** as to the Government's use of "Householder's Enterprise." (Doc. 142).

## IV. CONCLUSION

Based upon the foregoing, the Court finds as follows:

1. The Government's motion *in limine* to preclude references to the discovery process (Doc. 137) is **GRANTED**;

2. The Government's motion *in limine* to preclude evidence and argument in support of jury nullification (Doc. 138) is **GRANTED**;

3. The Government's motion *in limine* to preclude references to the Government's attorney's pretrial statements (Doc. 139) is **GRANTED**;

4. Defendants' joint motion *in limine* to exclude FirstEnergy's Deferred Prosecution Agreement (Doc. 140) is **MOOT**, and exclusion of references necessitated by circumstance is **PREMATURE**;

5. Defendant Householder's motion *in limine* to exclude co-conspirator hearsay (Doc. 141) is **DENIED** and the statements of co-conspirators are **CONDITIONALLY ADMITTED**; and

6. Defendant Householder's motion *in limine* to preclude prejudicial evidence and statements (Doc. 142) is **MOOT IN PART**, and **GRANTED IN PART**.

**IT IS SO ORDERED.**

Date:  12/12/2022

Timothy S. Black
United States District Judge