UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:20-cr-77 |
| | ) | |
| Plaintiff, | ) | Judge Timothy S. Black |
| | ) | |
| v. | ) | **DEFENDANT LARRY** |
| | ) | **HOUSEHOLDER'S RESPONSE TO** |
| LARRY HOUSEHOLDER, | ) | **GOVERNMENT'S TRIAL BRIEF** |
| | ) | |
| Defendant. | ) | |

Defendant Larry Householder submits his response to certain issues raised in the government's trial brief. He reserves the right to make further and additional objections and arguments as appropriate.

## I.  EVIDENTIARY ISSUES

**A.** *Business records*. On Monday, the parties met and conferred to discuss evidentiary stipulations, including stipulations to various business records. Yesterday, the government circulated a proposed stipulation. Householder is reviewing this stipulation; assuming the parties agree to these stipulations, that will obviate the need for the Court to rule on whether the documents identified by the government are self-authenticating.

**B.** *Agency and hearsay*. Statements made by agents of alleged coconspirators are not admissible under Rule 801(d)(2)(C) or (D). That rule excludes from the hearsay definition statements made "by a person whom *the party* authorized to make a statement on the subject" and "by *the party's* agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(C), (D) (emphasis added). The government, thus, must establish an agency relationship between the declarant and the defendants on trial here, Householder and Borges. *See United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (holding

1

that for declarant's statements to be admitted under this rule, "he would have to have been [the defendant's] employee or agent"); *United States v. Holmes*, No. 5:18-cr-00258-EJD-1, 2021 U.S. Dist. LEXIS 98060, at *174 (N.D. Cal. May 21, 2021) (declining to admit out-of-court statements by employees of a corporation against the CEO of the corporation). The government suggests that it intends to run roughshod around this rule by introducing "statements of agents of coconspirators, made in furtherance of the conspiracy." (Doc. 177 at 4316). But it cites no evidence rule or other legal authority that permits the introduction of hearsay statements by agents of alleged coconspirators. Instead, Rule 801(d)(2)(C) and (D) requires the government to show that the declarant was an agent of the defendants, Householder and Borges, and Rule 801(d)(2)(E) requires the government to show that the declarant joined the conspiracy and his statements furthered it. No rule or legal authority permits the government to amalgamate these rules to admit hearsay. As a result, the Court should not even conditionally admit hearsay that the government seeks to admit by amalgamating the agency and coconspirator hearsay exceptions.

Nor can the government lay a foundation to admit statements by FirstEnergy Corp.[1] officers and employees as coconspirator hearsay by simply relying on its deferred prosecution agreement. (*See* Doc. 177 at 4316). This is so for at least two reasons.

*First*, the DPA is not admissible at trial and the government cannot rely on an inadmissible document to lay an evidentiary foundation. Even so, the DPA does not in and of itself "establish the declarant's authority" as an agent or "the existence of the conspiracy." Fed. R. Evid. 801(d)(2).

---

[1] Even if the government could do so, the deferred prosecution agreement does not support admitting statements made by officers and employees of FirstEnergy Solutions Corp. (now known as Energy Harbor, LLC) or employees or agents of any other FirstEnergy corporate entity. The deferred prosecution agreement is only between the government and FirstEnergy Corp.

*Second*, the admissions of FirstEnergy Corp.—*a corporation*—do not bind the individuals whose statements the government seeks to introduce. To be sure, FirstEnergy Corp. admitted—in exchange for deferred prosecution[2]—that "its officers, employees, and agents, conspired with public officials and other individuals and entities to pay millions of dollars to and for the benefit of public officials in exchange for specific official action for FirstEnergy Corp.'s benefit." DPA at 17, *United States v. FirstEnergy Corp.*, No. 1:21-cr-86 (S.D. Ohio July 22, 2021), ECF No. 3. But those officers, employees, and agents, whose statements the government seeks to admit as coconspirator hearsay, have not made this admission. And the government must show that those declarants joined the alleged conspiracy. That FirstEnergy Corp. admitted to conspiring does not establish a conspiracy existed between Defendants and various FirstEnergy officers and employees whose out-of-court statements the government seeks to admit.

  **C.** *Public records*. Householder does not generally object to the admission of certain public records. He has identified some public records as part of his discovery production and will seek to have those admitted as public records too.

  **D.** *Summary exhibits*. Provided the government can lay a foundation under Rule 1006 and *United States v. Bray*, 139 F.3d 1104 (6th Cir. 1998), the Court can admit summary exhibits. But the government has yet to disclose its summary exhibits to the defense. Although the government need not produce the summary in discovery (it must, however, produce the documents the summary summarizes), *United States v. McArdle*, No. 2:20-CR-56-JRG-HBG, 2021 U.S. Dist. LEXIS 8422, at *21 (E.D. Tenn. Jan. 15, 2021), it must give the defendants the

---

[2] FirstEnergy Corp.'s share prices rose after it announced that it entered this agreement with the government. *See* https://www.nasdaq.com/market-activity/stocks/fe/historical.

summary exhibit sufficiently in advance of trial so the defendants can "attack the authenticity or accuracy of a chart, summary, or calculation" by "prepar[ing] for cross-examination, or [] offer[ing] exhibits of its own as rebuttal evidence." *Bray*, 139 F.3d at 1109; *see also Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 753 (7th Cir. 2005) ("No federal rule is needed, however, to empower a district judge to prevent a party from springing summaries of thousands of documents on the opposing party so late in the day that the party can't check their accuracy against the summarized documents *before* trial.") (emphasis added). To this end, Householder requests that the Court order the government to produce its summary exhibits, along with a list identifying by Bates stamp the documents the summary summarizes, by January 13, 2023.

The government also seeks to admit secondary-evidence summaries. The Sixth Circuit has described the admission of these kinds of summaries as "unusual." *Bray*, 139 F.3d at 1112. More to the point, these secondary-evidence summaries are not evidence themselves; they cannot be admitted "in lieu of the evidence they summarize but in addition thereto, because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that is received in the case as to materially assist the jurors in better understanding the evidence." *Id.* Thus, the government can only admit secondary-evidence summaries if it also admits the underlying records and the summary is accurate. For similar reasons as outlined above, Householder requests that the government produce its secondary-evidence summaries by January 13, 2023.

E. *Transcripts*. As the government acknowledges, the audio recordings are evidence; Special Agent Wetzel's transcriptions of the recordings are not evidence. For this reason, Householder objects to the Court admitting SA Wetzel's transcriptions into evidence. To be

{01812207-1}

clear, Householder does not object to the government publishing to the jury the transcripts of the recordings as they are played, but the transcripts should not go back with the jury. This Court certainly has the discretion to not admit the transcripts. *See, e.g.*, *United States v. Rodriguez*, 98 F. App'x 469, 471 (6th Cir. 2004) (noting that district court "did not permit the transcript to be used by the jury in deliberation").

Admitting the transcripts presents real dangers that the jury might rely on the transcripts (which do not convey verbal intonations), which are not evidence, and not the audio recordings themselves, which are evidence. The Court is not required to admit the transcripts, and the Court should not.

## II. ALLEGEDLY IMPROPER ARGUMENT

**A.** Householder does not intend to argue the case to the jury in voir dire. And that means the government cannot either.

Householder objects to producing to the government a copy of any demonstratives, exhibits, or PowerPoint presentations that counsel may use during opening argument. The government cites no legal authority that counsel are required to disclose their work product to their adversary before trial. In fact, the rule is the opposite: "No need exists for Plaintiff to specifically notify Defendants as to what evidence will be referenced in Plaintiff's opening statement. Furthermore, no rule requires Plaintiff's counsel to reveal to Defendants his opening statement or PowerPoint presentation to be used during opening statements." *Hunter v. Kennedy*, No. 3:17-CV-00007, 2020 U.S. Dist. LEXIS 123105, at *7 (M.D. Pa. July 14, 2020). To be clear, Householder understands the Court's motion in limine rulings, and he does not intend to make improper argument to the jury in opening. So there is no need for him to give to the government—two days in advance—essentially his outline for the opening.

5

To the extent the government objects during opening and the Court sustains the objection, there is no prejudice to the government. The Court presumably will instruct the jury that the opening statements of all parties are not evidence and that the lawyers' questions and arguments are also not evidence.

If the Court does order Householder to disclose his opening presentation to the government, it should not order the disclosure two days before opening. Instead, the Court should order the disclosure only after the government gives its opening statement. It would be unfair for the government to use Householder's opening presentation to essentially retool its opening statement and prepare responses to argument that Householder's counsel might make in his opening. The government is not entitled to a copy of Householder's opening presentation—the outline of his defense—before it gives its opening.

**B.** *Good faith*. Two of the alleged racketeering acts are fraud allegations: public official honest services wire fraud and private sector honest services wire fraud. Intent to defraud is an element of both fraud offenses. (*See, e.g.*, Gov't Proposed Jury Instrs. at 4146, 4156) (Doc. 175). Under the Sixth Circuit's caselaw, "good faith on the part of a defendant is inconsistent with an intent to defraud." *United States v. Frost*, 125 F.3d 346, 372 (6th Cir. 1997). For this reason, Defendants proposed, as part of their jury instructions as to these racketeering acts, that the Court give—***verbatim***—the Sixth Circuit's pattern good faith instruction. *See* Pattern Crim. Jury Instr. 6th Cir. 10.04; (Defs.' Proposed Jury Instructions at 4058-59) (Doc. 174). Those pattern instructions explain that this good-faith instruction should be given "if there is any evidence at all to support the charge." *Id.*, use note (citing *United States v. McGuire*, 744 F.2d 1197, 1201 (6th Cir. 1984)).

Oddly, the government does not mention *Frost*—an honest services fraud case where the district court gave a good faith instruction—nor the Sixth Circuit pattern instruction on good faith that Defendants quoted word for word. Instead, the government cites a bevy of out-of-circuit decisions for the proposition that mistake of law is not a defense to bribery. That's true. But also besides the point. As the Sixth Circuit's caselaw and pattern instructions explain, the good-faith instruction covers the defendant's intent to defraud, and they explain that a defendant's good faith defeats any intent to defraud because good faith is inconsistent with intent to defraud.

As Householder has explained elsewhere, he does not intend to argue a mistake of law defense. That is, he does not intend to argue that he entered an explicit quid pro quo agreement but that his conduct should be excused because he did not know that explicit quid pro quo agreements are unlawful. Instead, he will argue that he did not enter into any kind of bribery agreement and that his good faith defeats the government's argument that he acted with intent to defraud.

At bottom, Householder understands the Court's pretrial rulings and does not intend to circumvent them by making improper argument.

**C.** *Merits of HB 6*. While describing HB 6 in its charging documents,[3] its press releases,[4] its proposed jury instructions,[5] and the first page of its trial brief (which seeks to preclude this argument) as a ***bailout*** (Doc. 176 at 4310), the government seeks to preclude the defendants from arguing the merits of House Bill 6. The Court should not permit the government to have its cake

---

[3] (Doc. 22 ¶ 8).

[4] https://www.justice.gov/usao-sdoh/pr/ohio-house-speaker-former-chair-ohio-republican-party-3-other-individuals-501c4-entity.

[5] (Doc. 175 at 4126) (asking the Court to instruct the jury that Defendant Cespedes was "central to [FirstEnergy Solutions'] efforts and The Enterprise [*sic*] to get the ***bailout*** legislation passed") (emphasis added).

{01812207-1}

(by arguing that HB 6 was a bailout that was passed because Householder was bribed) and eat it too (by preventing the defendants from arguing that HB 6 was not bailout and that Householder advocated for HB 6 for reasons entirely unrelated to FirstEnergy's contributions). True, "[i]t is no defense that an official would have taken certain actions regardless of any alleged bribe." *United States v. Silver*, 948 F.3d 538, 562 n.14 (2d Cir. 2020). But, again, Householder does not intend to argue that he entered an explicit quid pro quo agreement but that his conduct should be excused because the official acts that he took benefited his constituents. Instead, he intends to argue and present evidence that he advocated for HB 6, not because he was bribed, but because he believed that HB 6 was good legislation.

This evidence—about Householder's beliefs, intent, and motives—provides important context for the jury to hear as it considers whether Householder knowingly entered an explicit quid pro quo agreement. *Why* Householder advocated for HB 6 certainly clears the low threshold for relevance. After all, the government will argue that Householder advocated for HB 6 because he was bribed. *See United States v. Inman*, 39 F.4th 357, 365 (6th Cir. 2022) (noting that for Hobbs Act extortion the government must prove that the public official "asserts that his official conduct will be controlled by the terms of the promise or undertaking"); *United States v. Terry*, 707 F.3d 607, 612 (6th Cir. 2013) ("One element of bribery is that the public official must agree that his official conduct will be controlled by the terms of the promise or the undertaking.") (quotations omitted). So, the defense should be able to argue and present evidence that Householder did not advocate for HB 6 because he was bribed but instead because he had legitimate beliefs in the merits of the legislation. In other words, that his conduct was not controlled by any explicit quid pro quo agreement.

*Terry* suggests that this kind of evidence is relevant and admissible. "No doubt, a contribution is more likely to be a duty-free gift than a bribe because a contribution has a legitimate alternative explanation: The donor supports the candidate's election for all manner of possible reasons." *United States v. Terry*, 707 F.3d 607, 613 (6th Cir. 2013). True, the government may "rebut" this evidence by arguing that context shows that the contribution was really a bribe. *Id.* But the Sixth Circuit's reasoning shows that the defense may offer evidence that political contributions were given for legitimate reasons (which the government may rebut) and that the public official's actions were not controlled by the bribe.

To hold otherwise would result an impermissible asymmetry: The government could present evidence that the public official was bribed but the official could not present evidence that he was not bribed or that his actions were not controlled by the bribe. Householder a constitutional right to present a defense. And he should be permitted to defend against the government's bribery allegations by arguing and presenting evidence that he acted for legitimate reasons, not because he was bribed.

The government's cases do not suggest otherwise. It principally relies on cases that discuss this issue in the context of a sufficiency challenge. For example, in *United States v. Silver*, the Second Circuit rejected the defendant's sufficiency argument that his official acts were "inevitable" because that is not a defense. 948 F.3d 538, 562 n.14 (2d Cir. 2020).[6] None of the government's cases hold that the merits of the official action or the public official's motives are irrelevant and inadmissible. After all, "motives and consequences, not formalities, are the keys for determining whether a public official entered an agreement to accept a bribe, and the

---

[6] Relatedly, this suggests that the district court permitted the defendant to present evidence that his official acts were inevitable; that is, that he would have voted one way even if there was no bribe. If the district court refused to admit this evidence, then there would have been no record evidence for the defendant to make that argument to the appellate court.

9

{01812207-1}

trier of fact is quite capable of deciding the intent with which words were spoken or actions taken as well as the reasonable construction given to them by the official and the payor." *United States v. Terry*, 707 F.3d 607, 613 (6th Cir. 2013) (cleaned up).

Householder's intent and his motives are relevant and admissible. The Court should reject the government's argument that they are not.

**D.** *Neil Clark's death*. Householder agrees with the government: neither party should mention or present evidence that Mr. Clark died by suicide. What's more, no party should mention or present evidence that Mr. Clark was charged in this indictment or that Mr. Clark passed away during the pendency of the case. Neither fact is relevant to the charges against the Defendants.

**E.** *Character witnesses*. Householder takes no position on the government's request to limit character witnesses.

Dated: January 11, 2023          Respectfully submitted,

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
Mark B. Marein (0008118)
MAREIN & BRADLEY
526 Superior Avenue, Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com
        mark@mareinandbradley.com

*/s/ Nicholas R. Oleski*
Robert T. Glickman (0059579)
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
  & LIFFMAN CO., LPA
1111 Superior Avenue East, Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: rtg@mccarthylebit.com
        nro@mccarthylebit.com

*Counsel for Defendant Larry Householder*

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed on January 11, 2023. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
