UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:20-cr-00077-TSB |
| | : | |
| v. | : | JUDGE BLACK |
| | : | |
| LARRY HOUSEHOLDER, et al., | : | |
| | : | |
| Defendants. | : | |

**REPLY BRIEF IN SUPPORT OF FORMER OHIO HOUSE
SPEAKER CLIFFORD D. ROSENBERGER'S MOTION FOR
DESIGNATION AS A "VICTIM" UNDER THE CRIME VICTIMS'
RIGHTS ACT, 18 U.S.C. § 3771**

## I.    Introduction

The Government opposes Movant Clifford D. Rosenberger's request for designation as a "crime victim" under the Crime Victims' Rights Act, 18 U.S.C. § 3771 because Rosenberger "cannot show, among other things, that the RICO conspiracy charged in this case was the cause of his alleged harm" using a "but-for" causation test (Doc. 268 at Page ID 10755).   In particular, the Government argues that: (1) "Rosenberger has not established that the defendants ran a campaign of lies against him" (Doc. 268 Page ID 10758), and (2) Rosenberger failed to show under the "but-for" causation test that Defendants' conspiracy was an "essential condition of the FBI investigation" and an "essential condition to his resignation." (Id).

This presents a perplexing problem, because a trove of evidence exists suggesting otherwise. Yet Rosenberger appreciates the evidentiary constraints required to review a CVRA motion being limited only to the "the offense of conviction, based solely on facts reflected in the jury verdict or admitted by the defendant." *See In re McNulty*, 597 F.3d 344, 352 (6th Cir. 2010). Nevertheless, and upon the Government's invitation in footnote 2 of its Brief, Rosenberger welcomes the

opportunity to provide additional information under seal for the Court's consideration.  Much of this information has already been provided to the Government, including signed declarations of key participants, emails and other documents, and an analysis why Rosenberger's trips complied with Ohio and federal law. Additional information is already public, including a telling passage from Defendant Neil Clark's memoir *What Do I Know? I'm Just a Lobbyist: "A Sicilian Never Forgets"* [1] posthumously published on November 24, 2021.  Clark described his meeting with the FBI in January of 2018, more than four months prior to the execution of the search warrants that eventually led to Rosenberger's resignation.[2]  Clark details what he said to the FBI about Rosenberger, most of which was provably false and driven by his interest in furthering the goals of the Householder Enterprise.  Clark even gloated "the FBI even helped [Rosenberger] move out of the Speaker's Statehouse office. Nothing much happened with the investigation thereafter; except a few sensational-soundings articles—but it sure landed like a bomb when he resigned."[3]   But because Clark predeceased the trial, and no mention of Clark was made during it, none of this information has been included in the trial record.

Despite these CVRA imposed evidentiary restraints, Rosenberger nevertheless still satisfies the "but-for" standard by a preponderance of the evidence and, thus, should be designated as "crime victim" under the CVRA.  First, the Government's Criminal Complaint (Doc. 5) makes clear that the Householder Enterprise, which included both Larry Householder and Neil Clark among others, existed and operated for more than thirteen months prior to the events in April of 2018 that led to Rosenberger's resignation.[4] (Doc. 5 at Page ID 95). Second, the Householder

---

[1] *What do I Know? I'm Just a Lobbyist: "A Sicilian Never Forgets"* Second Edition, January 31, 2021, 48HR Books.

[2] Much of the information that served as the basis of the search warrants for Rosenberger is sealed, but it would be reasonable to infer that some of the information Clark provided during his January 2018 meeting with the FBI found its way into the justifications for the search warrant.

[3] *What do I Know? I'm Just a Lobbyist: "A Sicilian Never Forgets,"* Chapter 36, pgs 440-42.

[4] *See* Affidavit in Support of a Criminal Complaint, *United States v. Larry Householder, et al.*, No. 1:20-MJ-00526 (S.D. Ohio July 17, 2020) (Doc. # 5) ("Complaint") ¶ 20.

Enterprise existed to "obtain, preserve, and expand Householder's political power in the State of Ohio," but Rosenberger "had picked Representative 1, not Householder, to be his successor," which was a clear impediment to Householder's planned political rise. (Doc. 5 at Page ID 114). Third, the Government recognizes that Rosenberger's support of Householder's opponent for Speaker was a problem for the Householder Enterprise because "the war chest [Rosenberger] had accumulated through the Ohio House Republican Organizational Committee (OHROC) would be spent on Speaker/Representative 1-backed candidates." (Doc. 5 at Page ID 114). Fourth, a phone call between Householder and Clark in March 30, 2018 (about two weeks before the search warrants against Rosenberger), which was admitted into evidence at trial, shows that co-conspirators in the Householder Enterprise specifically discussed and targeted Rosenberger.[5] Fifth and finally, the government itself acknowledges the causal connection recognizing that Rosenberger's resignation "marked a significant moment of mobilization for the Enterprise." (Doc. 5 at Page ID 120). Thus, the cumulative total of these facts satisfies the "but-for" requirements to have Rosneberger designated a "crime victim" under the CVRA.

## II. The Householder Enterprise Operated for 13 Months Prior to the FBI's Search Warrant

In its complaint, the Government asserted that "Householder Enterprise" consisted of "Defendants Larry Householder, Jeffrey Longstreth, Neil, Clark, Matthew Borges, Juan Cespedes, and Generation Now, and others known and unknown." (Doc. 5 at Page ID 94). The Government further acknowledged that "Householder's Enterprise then used the bribe payments to further the goals of the Enterprise, which include: ***(1) obtaining, preserving, and expanding Householder's political power in the State of Ohio through the receipt and use of secret payments;*** (2) enriching and benefitting the enterprise, its members, and associates; and (3) promoting, concealing, and

---

[5] Government Exhibit 913. *See* Tr. at 22-3567 (PAGE ID 87337).

protecting purposes (1) and (2) from public exposure and possible criminal prosecution." (Doc. 5 at Page ID 95).  The Government described Clark as one of Householder's "closest advisors." (Doc. 5 at Page ID 99).  The Government found that the Householder Enterprise started in March of 2017 (Doc. 5 at Page ID 95).  Thus, actions taken by the Householder Enterprise to obtain, preserve, and expand Householder's political power in the State of Ohio after March 2017 would have been part of the RICO conspiracy.  As explained below, getting rid of Rosenberger as Speaker fell squarely in those plans by the Householder Enterprise.

### III. <u>Rosenberger was an Impediment to the Householder Enterprise's Plans</u>

Rosenberger was clearly an impediment to Householder Enterprise's plans to obtain, preserve, and expand Householder's political power in the State of Ohio.  Indeed, the Government acknowledged as much by pointing out that "the House's then-current Speaker [i.e., Rosenberger] had picked Representative 1, not Householder, to be his successor." (Doc. 5 at Page ID 114).  The Government has also noted that, in a document created March 18, 2018 by another co-conspirator in the Householder Enterprise, the co-conspirator emphasized that "[Rosenberger] is a lame duck Speaker but is heavily involved in the campaign to elect [Representative 1] as the next Ohio Speaker." (Id.)  According to the Government, "[t]his meant that the war chest of the then-current Speaker had accumulated through the Ohio House Republican Organizational Committee (OHROC) would be spent on Speaker/Representative 1-backed candidates." (Id)

All of this led another co-conspirator in the Householder Enterprise to ask "what are we doing about Cliff?" and "what are we doing to roll marbles?"[6] A simple theme emerged among the Householder Enterprise: "***We destroy Cliff Rosenberger and we destroy her.***"[7]  Householder and Clark's animus toward Rosenberger, and their eagerness to "destroy" him, are clearly on

---

[6] Government Exhibit 201E; Government Exhibit 201F.
[7] See Exhibit A in the original motion at ¶8 (emphasis added).

display in a March 30, 2018 (less than two weeks before the events that eventually led to Rosenberger's resignation) in a wiretapped conversation among Householder, Clark, and one or more others.[8]

Thus, the Householder Enterprise's plan to "destroy" Rosenberger was part of its plan to obtain, preserve, and expand Householder's political power in the State of Ohio and made Rosenberger a target of the conspiracy.

## IV. Rosenberger's Resignation was a Turning Point for the Householder Enterprise.

The cumulative effect of several steps by the Householder Enterprise led to Rosenberger's resignation. The Government then wrote that Rosenberger's resignation "marked a significant moment of mobilization for the Enterprise.[9] Frantic activity by co-conspirators in the Householder Enterprise soon followed. According to the Government:

> On the day of the Speaker's [*i.e.*, Rosenberger's] resignation, Householder and [co-conspirator Jeffrey] Longstreth had a 31-minute call. Shortly thereafter, they both began making the rounds. Householder contacted [First Energy] Service Co.'s Sr. Vice President of External affairs, and proceeded to have a 5-minute phone call. Longstreth communicated with [First Energy's] Ohio Director of State Affairs, and followed immediately with a call to the attorney for the PAC and then communicated with an executive of Political Strategy Firm 1. Longstreth and Householder then communicated with many Team Householder candidates throughout the day.[10]

(Doc. 5 at Page ID 120). Rosenberger's resignation – and the F.B.I. investigation that caused it – was central to fulfill the Householder Enterprise's plan to elect pro-Householder candidates to then elect Householder as Speaker to the realize the enterprise's criminal goals.

---

[8] Government Exhibit 913. *See* Tr. at 22-3567 (PAGE ID 87337).
[9] Complaint ¶ 90.
[10] *Id.*

Thus, the Householder Enterprise used and leveraged the Rosenberger resignation to obtain, preserve, and expand Householder's political power in the State of Ohio

## V. *In re McNulty* is Factually Distinguishable

Both Rosenberger and the Government agree that *In re McNulty*, 597 F.3d 344 (6th Cir. 2010) provides controlling law for reviewing a CVRA motion in the Sixth Circuit. But that is where the agreement ends, because the Government argues that *McNulty* also provide analogous facts, while Rosenberger disagrees because the factual circumstances between McNulty and Rosenberger are starkly different. In *McNulty*, McNulty was an executive of packaged ice company and served as an informant that led to the criminal antitrust prosecution of a cartel in the industry. *In re McNulty*, 597 F.3d at 347. McNulty, however, was never the focus of the illegal actions taken by the packaged ice cartel. Instead, the packaged ice industry later blackballed McNulty once they learned of his cooperation with the government, but well after the packaged ice cartel achieved its criminal goals of price fixing. (Id.)

In stark contrast, Rosenberger was a main target of the Householder Enterprise and a clear impediment to their goal to obtain, preserve, and expand Householder's political power in the State of Ohio. The Householder Enterprise took concerted action against Rosenberger using the resources available to the co-conspirators, and then quickly took advantage of his resignation as Speaker. As discussed above, the trial record is replete with examples how the Householder Enterprise bludgeoned Ryan Smith's supporters about the Rosenberger investigation and resignation. Indeed, it is arguable, if not likely, that had the Householder Enterprise <u>not</u> created the pressure to force Rosenberger to resign, then Speaker Ryan Smith would have been in a much stronger position to ensure his re-reelection, which would have denied the Householder Enterprise the means to accomplish their criminal goals. Thus, the situation between McNulty and Rosenberger were significantly different.

## VI. Conclusion

For these reasons and those included in his original Motion, Rosenberger respectfully requests to be designated a "crime victim" under Crime Victims' Rights Act, 18 U.S.C. § 3771.

Respectfully submitted,

*/s/ David F. Axelrod*
David F. Axelrod (0024023)
*Trial Attorney*
Mark D. Wagoner (0068577)
Shumaker, Loop & Kendrick, LLP
41 South High Street, Suite 2400
Columbus, Ohio 43215
Tel.:   614.463.9441
Fax:    614.463.1108
Email:  daxelrod@shumaker.com
        mwagoner@shumaker.com

*Attorneys for Movant Clifford D. Rosenberger*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 9, 2023, the foregoing **REPLY BRIEF IN SUPPORT OF FORMER OHIO HOUSE SPEAKER CLIFFORD D. ROSENBERGER'S MOTION FOR DESIGNATION AS A "VICTIM" UNDER THE CRIME VICTIMS' RIGHTS ACT, 18 U.S.C. § 3771** has been filed via the Court's CM/ECF system, which will effect service on all parties.

*/s/ David F. Axelrod*
David F. Axelrod