# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:20-cr-77 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| LARRY HOUSEHOLDER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER DENYING MOVANT'S MOTION
## FOR "CRIME VICTIM" DESIGNATION UNDER THE CVRA

This criminal case is before the Court on the motion of Movant Clifford Rosenberger ("Movant") to be designated a "crime victim" for purposes of sentencing, under the Crime Victims' Rights Act ("CVRA") (Doc. 267), as well as the parties' responsive memoranda (Docs. 268, 269, 270).[1] As fully set forth, *infra*, the motion fails for one simple reason: Movant does not and cannot evidence that either the FBI investigation or his resignation would *not* have occurred **but for** the commission of the RICO conspiracy.

### I. BACKGROUND

On July 30, 2020, a federal Grand Jury returned a single-count Indictment, charging Defendants Larry Householder, Jeffrey Longstreth, Neil Clark, Matthew Borges, Juan Cespedes, and Generation Now (collectively, the "Co-Defendants"), with

---

[1] The Court's expedited briefing schedule set a deadline for "the Government's response," as opposed to "the parties' responses." (Not. Order, Jun. 1, 2023). This language was merely an oversight. The Court did not intend to exclude responses from the defense. Thus, the Court accepts, and will consider, Defendant Householder's timely response in opposition. (Doc. 269).

participating in a Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(c), (d). (Doc. 22 at 10, 40).

Specifically, the Indictment alleged that the Co-Defendants constituted a RICO "enterprise" (the "Householder Enterprise"), the purpose of which enterprise was to grow Defendant Householder's political power, to enrich the Householder Enterprise and its members and associates, and to conceal its activities from public exposure and potential prosecution. (*Id*. at 10). The core of the allegations centered around the Householder Enterprise's acceptance of roughly $60 million in bribes from FirstEnergy, in exchange for Defendant Householder ensuring the passage of legislation ("HB6") that was financially favorable to FirstEnergy and its subsidiaries. (*Id*. at 4-14, 23).

Following the Indictment, Defendants Longstreth, Cespedes, and Generation Now pleaded guilty to the offense charged, and they are currently awaiting sentencing. (Min. Entries, Oct. 29, 2020, Feb. 9, 2021). The charge as to Defendant Neil Clark was dismissed following his death. (Doc. 88). Finally, Defendants Householder and Borges were both found guilty on March 9, 2023, following a multiple-week jury trial, and they are scheduled for sentencing on June 29, 2023, and June 30, 2023, respectively. (Min. Entry, Jan. 20, 2023; Docs. 261, 263).

In anticipation of the upcoming sentencing hearings, Movant—who served as Speaker of the Ohio House of Representatives from 2015 until his resignation in April 2018—filed the instant motion to be designated as a "crime victim" under the CVRA. (Doc. 267). In sum, Movant alleges that his position as Speaker was a hinderance to the goals of the Householder Enterprise and, therefore, the Co-Defendants orchestrated the

2

circumstances that ultimately led to Movant's resignation. (*Id*.) Thus, Movant alleges that, "[b]ut for the [Co-Defendants'] intentional targeting of him, [Movant] would have completed his term as Speaker without suffering the economic, reputational and emotional injuries [the Co-Defendants] inflicted on him." (*Id*. at 1).

## II. STANDARD OF REVIEW

The CVRA serves to identify and ensure the rights of anyone designated as a "crime victim" in a federal criminal proceeding. 18 U.S.C. § 3771. These rights include, *inter alia*, timely notice of and attendance at public proceedings in the case, to be informed of plea bargains, to confer with the Government, to be heard at sentencing, and to receive any due restitution. 18 U.S.C. § 3771(a), (b).

Under the CVRA, a "crime victim" is "a person directly and proximately harmed as a result of the commission of a Federal offense …." 18 U.S.C. § 3771(e)(2)(A).[2]

Notably, "[u]nder the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." *In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010); *see United States v. Ruiz-Lopez*, 53 F.4th 400, 405 (6th Cir. 2022) ("We are not the first court to conclude that the amended restitution statutes permit district courts to award restitution based on facts not strictly required to secure a conviction") (collecting

---

[2] The Victim and Witness Protection Act ("VWPA") and the Mandatory Victims Restitution Act ("MVRA") use an effectively identical definition to define the term "victim." *See* 18 U.S.C. § 3663(a)(2); 18 U.S.C. § 3663A(a)(2). Accordingly, the Sixth Circuit "analyze[s] cases interpreting the relevant language from the VWPA, MVRA, and CVRA interchangeably." *United States v. Ruiz-Lopez*, 53 F.4th 400, 404 n.2 (6th Cir. 2022).

cases). Thus, the Sixth Circuit rejects an "'elements-only' approach" when determining whether harm directly and proximately arises from the offense of conviction. *Ruiz-Lopez*, 53 F.4th at 406.

Nevertheless, "that the harm must be 'direct' requires that the harm to the victim be closely related to the conduct inherent to the offense, rather than merely tangentially linked." *McNulty*, 597 F.3d 344 at 352. In other words, the harm must arise from "criminal conduct [committed] in the course of the conspiracy," as opposed to harmful conduct that was "merely ancillary to the conspiracy." *Id*. at 351.

In short, the Court "must (1) look to the offense of conviction, based solely on facts reflected in the jury verdict or admitted by the defendant; and then (2) determine, based on those facts, whether any person or persons were 'directly and proximately harmed as a result of the commission of [that] Federal offense." *McNulty*, 597 F.3d at 351 (citations omitted). "The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *Ruiz-Lopez*, 53 F.4th at 404 (quoting *McNulty*, 597 F.3d at 350).

### III. ANALYSIS

Movant argues that his position as Speaker of the Ohio House, as well as his opposition to HB6, hindered the success of the Householder Enterprise and, accordingly, the members of the Householder Enterprise caused Movant's untimely departure from office. (Doc. 267 at 1, 4, 10; Doc. 270). Movant asserts that, to oust him from his position, the Householder Enterprise—primarily Defendants Householder and Clark— "propagated rumors and misinformation about a phony bribery scheme in which

4

[Movant] allegedly was involved." (*Id.*) Movant claims that these rumors and misinformation "led to an FBI investigation, which included searches of [his] offices and home, along with a grand jury subpoena for House records, and interviews of friends, colleagues and staff, all of which resulted in predictable and substantial negative publicity." (*Id.*) And while no charges were ever filed against him, Movant states that the negative publicity resulted in "demands for [his] resignation by the Governor, Attorney General and legislative leaders, to which [Movant] ultimately succumbed." (*Id.* at 4-5). Thus, Movant argues that the Householder Enterprise's "actions in carrying out their scheme directly and proximately harmed [Movant] by driving him from office, which caused him to suffer economic, reputational and psychological damage," all of which entitles him to being designated a "crime victim" under the CVRA. (*Id.* at 5).

In support of his arguments, Movant includes excerpts of notes and a transcript of a recorded conversation (all involving members of the Householder Enterprise) in which the overarching theme is undermining Movant through negative messaging, as well as a PowerPoint presentation, prepared by a political consulting group, that proposed negative campaign advertisements centered around the FBI investigation into Movant's alleged misconduct.[3] (*Id.* 8-15 & Exs. A, B). In his reply brief, Movant also cites to Defendant

---

[3] The PowerPoint post-dates Movant's resignation from office. Moreover, the presentation was neither prepared by a member of the Householder Enterprise, nor was it introduced into evidence during the trial. Nevertheless, the Court acknowledges that ensuring the election of candidates loyal to Defendant Householder was an important aspect of the Householder Enterprise. And thus, viewed generously, the PowerPoint is, at best, an example of how Movant's political downfall could have been used to benefit pro-Householder candidates. Ultimately, consideration of the presentation makes no difference to the Court's ruling.

Clark's post-humous memoirs, in which Defendant Clark apparently wrote of his conversation with the FBI. (Doc. 270 at 2).[4]

The Government and Defendant Householder oppose Movant's designation as a "crime victim," arguing, in sum, that the Householder Enterprise did not cause Movant's resignation nor any of the circumstances leading to said resignation and, thus, the commission of the RICO conspiracy offense was not the direct and proximate cause of any harm to Movant. (Docs. 268, 269). Both parties further argue that, even assuming some conduct of the Householder Enterprise may have resulted in harm to Movant, such conduct was not inherent to the commission of the offense and, at best, was only tangentially linked. (Doc. 268 at 5-6; Doc. 269 at 5).

Based on the facts of the underlying offense of conviction (*i.e.*, RICO conspiracy), this Court cannot conclude that Movant was "'directly and proximately harmed as a result of the commission of [that] Federal offense." *McNulty*, 597 F.3d at 351. In short, and as the Court previously stated, Movant's argument fails for one simple reason: Movant does not and cannot evidence that either the FBI investigation or his resignation would *not* have occurred **but for** the commission of the RICO conspiracy. Full stop.

---

[4] Movant also offers to provide the Court with evidence, under seal, to show that the accusations against him were false. However, the veracity of the accusations is irrelevant—what matters is whether a member of the Householder Enterprise knowingly made false statements with the intent of furthering the conspiracy and that the FBI's investigation was commenced or sustained based on those false statements. Notably, even if the investigation relied on the *subject matter* of the alleged false statements, Movant's argument would still fail unless he could prove that the FBI would not have reached the conclusions it did but for the Householder Enterprise members feeding agents a false narrative. Accordingly, the Court declines Movant's evidentiary proffer.

To start, the Court acknowledges, as the Indictment alleged, that a goal of the Householder Enterprise was to grow Defendant Householder's political power. The Court further acknowledges, as evidenced during the trial, that the election of candidates loyal to Defendant Householder was integral to the success of the Householder Enterprise's goals. The Court will even acknowledge that Movant's resignation was of enormous benefit to the Householder Enterprise. <u>But none of this means the Householder Enterprise's conduct was the **direct and proximate cause** of any harm to Movant</u>.

Here, Movant's alleged harm is three-fold: (1) members of the Householder Enterprise circulated false accusations of misconduct; (2) these accusations led to an FBI investigation; and (3) that the FBI investigation ultimately led to Movant's resignation.

With regard to allegedly false accusations, Movant fails to identify any specific false accusations that were <u>publicly</u> made against him by a Householder Enterprise member. To be clear, Movant provides a transcript of a recorded, **private** conversation in which Defendants Householder and Clark discuss, as a campaign strategy, publicly *questioning* Movant's conduct. But a <u>private</u> conversation cannot logically contribute to Movant's alleged <u>public</u> harm. Moreover, even to the extent that any false accusations were publicly made by a Householder Enterprise member, Movant fails to show that the source: (a) knew the accusations were false; and (b) could have reasonably foreseen that a spurious political attack would lead to a criminal investigation.[5]

---

[5] Assuming any public statements (though Movant identifies none) were potentially defamatory, that is a matter for civil redress. "The CVRA was not enacted to short circuit civil litigation to those with valid civil remedies available." *McNulty*, 597 F.3d at 352, n.8.

Movant also cites a recorded conversation, as well as Defendant Clark's personal memoirs, in which Defendant Clark claims that he provided information about Movant directly to the FBI. However, there is no evidence before this Court to support the notion that Defendant Clark knowingly provided false information to the FBI, much less that the FBI meaningfully relied on any such false information. Indeed, Movant's reply brief effectively acknowledges these deficiencies, stating that Defendant Clark "details what he said to the FBI about [Movant], *most of which* was provably false." (Doc. 270 at 2) (emphasis added). At best, this statement acknowledges that at least some of what Defendant Clark relayed to the FBI was either true or could not be readily refuted. Additionally, to the extent that most of the statements were "provably false," then the information surely could not have held any value to the FBI's investigation. To be sure, the Court has reviewed the sealed search warrant affidavits for Movant's home and office. Upon review, the Court finds that neither affidavit contains any information that Defendant Clark, or any Co-Defendant for that matter, offered to the FBI.

Turning to the FBI investigation, as the Government notes, the investigation of Movant was **not** prompted by "misinformation" spread by members of the Householder Enterprise. (Doc. 268 at 2, n.2).[6] Although the Government does not specify, its representation can be understood in one of two ways—either: (1) the investigation began based on information and evidence unrelated to the conduct of anyone involved in the

---

[6] The Government offers to submit further evidence under seal. However, the Court accepts the Government's representation, as submitted by a sworn officer of the court, in a filed pleading, and finds no basis to delve into the nuances of the investigation further.

8

RICO conspiracy; or (2) the investigation began based on statements from a member of the Householder Enterprise, but those statements were sufficiently substantiated and thus were not "misinformation." As to the former interpretation, if the investigation began based on information and evidence unrelated to the RICO conspiracy, then Movant cannot logically claim that, *but for* the RICO conspiracy, the investigation would not have occurred.[7] As to the latter interpretation, if a member of the Householder Enterprise provided accurate information to the FBI about Movant's suspected criminal misconduct, and that information led to an investigation, then that Householder Enterprise member has fulfilled a basic civic responsibility, regardless of his/her intent and regardless of whether the investigation resulted in charges being filed. *See McNulty*, 597 F.3d at 351-52.[8] In short, because the investigation was not prompted by the Householder Enterprise spreading "misinformation"—no matter how you interpret that statement—Movant's argument fails.

---

[7] To be clear, even if the FBI used information from a Householder Enterprise member *during* the investigation, Movant's argument would still fail unless Movant could somehow evidence that the investigation would have otherwise quietly died on the vine, but was reinvigorated and/or sustained based on nothing more than the unsupported ramblings of a political rival. Movant makes no such argument, nor is there any evidence to support such a claim.

[8] In *McNulty*, the movant, whose former employer was convicted of antitrust conspiracy, claimed that he suffered harm when he was fired and "blackballed" from the industry after he refused to join the conspiracy. 597 F.3d at 346-47. The Sixth Circuit agreed with the District Court's decision, finding that McNulty was not a "crime victim" under the CVRA. *Id*. Specifically, the Sixth Circuit held that a "crime victim" must be "directly and proximately harmed by **criminal** conduct in the course of the conspiracy …." *Id.* at 351 (emphasis added). The Sixth Circuit went on to explain that the defendant's actions "may be illegal under the civil law, but they are not inherently criminal actions," and therefore "[c]ivil, not criminal, remedies are available to redress these actions." *Id*. at 352. Similarly, here, reporting a suspected crime is not unlawful. And while making a false statement to a federal agent *could* be unlawful under certain circumstances, there is no evidence of that here.

Finally, as to Movant's resignation, there is no plausible way to attribute this to the conduct of the Householder Enterprise. To state the obvious, Movant himself made the decision to resign. This decision was not a necessary step resulting from the FBI investigation—it was Movant's choice.[9] And even to the extent that Movant argues his decision was effectively made for him by the demands for resignation he was receiving, Movant's own argument acknowledges that these demands were coming from "the Governor, Attorney General and legislative leaders." (Doc. 267 at 4-5). Thus, Movant fails to specifically identify any member of the Householder Enterprise who contributed <u>directly</u> to the demands for his resignation.

In sum, Movant fails to show that any of the harm he alleges could be directly and proximately attributed to the commission of the RICO conspiracy. Moreover, even when viewing the conduct of the Householder Enterprise members in culmination, what Movant evidences, at best, is that the Householder Enterprise <u>benefited</u> from Movant's political demise. But there is a critical difference between conduct that *causes* harm and conduct that *capitalizes* on it. The CVRA does not apply to the latter. And Movant fails to evidence that he suffered any harm that was directly and proximately <u>caused</u> by the commission of the RICO conspiracy. Accordingly, Movant is not a "crime victim" in this case.

---

[9] Defendant Householder himself refused to resign as Speaker after being <u>indicted</u>. Indeed, even after being removed as Speaker, Defendant maintained his seat in the House for a year before he was expelled.

## IV. CONCLUSION

Based upon the foregoing, Movant's motion for designation as a "crime victim" under the CVRA (Doc. 267) is **DENIED**.

**IT IS SO ORDERED**.

Date: 6/9/2023

Timothy S. Black
United States District Judge