**EXHIBIT A**



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Ohio*

---

*221 East Fourth Street*   *Telephone: 513-684-3711*
*Suite 400*   *Fax: 513-684-6385*
*Cincinnati, Ohio 45202*

June 5, 2023

<u>Via E-mail</u>
Charles A. Steed
United States Probation Officer
110 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, OH 45202
Charlie_steed@ohsp.uscourts.gov

    Re: <u>United States v. Matthew Borges</u>
        Criminal No. 1:20-CR-77 (4)

Dear Mr. Steed,

    Defendant Borges submitted various objections for your consideration. For ease of reference, we have included those objections in the table below, along with our response.

| | **Defendant's Objection** | **United States' Response** |
|---|---|---|
| 1 | **Objection #1—Obstruction of Justice**<br><br>    We object to your conclusion that Borges obstructed justice and the corresponding two-level enhancement under U.S.S.G. §3C1.1. PSR ¶ 38, 55. There is no dispute that Borges had a website for a legal defense fund, nor is there any disagreement that his website "also included a hyperlink to the confidential human source's personnel file with his personal identification information." PSR ¶ 38, 55. However, we disagree with your reliance on the government's view that "this conduct was to intimidate and retaliate against the confidential human source[.]"<br><br>    During trial, the government sought to introduce this evidence, characterizing it as a threat/intimidation of a witness, ostensibly to prove consciousness of guilt. (Tr., Doc. 224, |     The government believes that the Court's assessment of whether Borges' conduct was a "threat" is distinct from whether the conduct was intended to "intimidate or retaliate" against the CHS.<br><br>    With that said, the government does not object to exclusion of this enhancement from the guideline calculation. The government believes this conduct should remain in the PSR, however, as conduct the Court should otherwise consider at sentencing as part of its 18 U.S.C. § 3553(a) assessment. |

1

| | **Defendant's Objection** | **United States' Response** |
|---|---|---|
| | PageID 8161—62.) However, Judge Black was "not convinced that it was intended to be a threat so much as it was just Mr. Borges lashing out. I would note that the website on which Mr. Borges posted this information also contains elaborate statements saying that Mr. Fehrman and the prosecutors are liars, that seems to be more like an act of anger than an actual threat." (Tr., Doc. 224, PageID 8165—66.) Based on those findings, Judge Black excluded that evidence at trial.<br><br>Judge Black's analysis is equally applicable here and, in our view, dispositive of this issue. | |
| 2 | **Objection #2—Role in the Offense**<br><br>We object to your conclusion that Borges should not receive a mitigating role reduction. PSR ¶ 54. In our view, proper application of U.S.S.G. §3B1.1 should result in Borges being deemed a minor participant relative to Householder, Longstreth, Cespedes, and Clark. . . . . .<br><br>[Describing evidence relating to Householder, Longstreth, Cespedes, and Clark]<br><br>Relative to those actors, Borges' involvement was substantially less culpable. *See* PSR ¶ 36 (summarizing Borges' involvement).[] He had no decision-making authority, no control over the money coming to or from Generation Now, no knowledge of the full scope of the conspiracy, was not involved in the planning or organizing of the conspiracy (which began years before Borges' involvement) and was involved for a limited time. | The government agrees with Probation that a mitigating role adjustment should not apply here.<br><br>The trial evidence detailed below in response to Objection #3—Relevant Conduct shows that Borges was not "substantially less culpable than the average participant" in the RICO conspiracy. These facts show that Borges understood the scope and structure of the criminal activity, participated in planning and organizing the criminal activity, participated directly in the criminal activity, exercising decision-making authority, and benefited in an amount similar to other members of the conspiracy. The mitigating role adjustment is not applicable. |
| 3 | **Objection #3—Relevant Conduct**<br><br>We object to your conclusion that Borges' relevant conduct should be "$57,596,835.86"—which represents "the total amount of payments from FirstEnergy Corporation during Borges' time in the conspiracy[.]"—and a corresponding 22 level increase. PSR ¶ 51.<br><br>Borges did not bribe or attempt to bribe Householder, nor did he aide, abet, counsel, | The government believes the loss amount for Borges should be clarified, as follows.<br><br>The trial evidence shows Borges knew about Householder's corrupt relationship with FirstEnergy as far back as 2018. (*See* Doc. 211, PageID 6786–88 (Cespedes testified he told Borges about the Oct. 10, 2018, $400,000 FirstEnergy payment to Householder). By April 2019, Borges served as Cespedes' "sounding board" for all matters relating to HB 6. (*Id.* at PageID 6820.) Specifically, Cespedes testified that FirstEnergy |

| **Defendant's Objection** | **United States' Response** |
|---|---|
| command, induce, procure, or willfully cause a bribe of Householder. This precludes a finding that Borges is responsible for a $57,596,835.862 bribe under U.S.S.G. §1B1.3(a)(1)(A).<br><br>Further, even if a $57,596,835.86 bribe was "in furtherance of" and "reasonably foreseeable in connection with" the conspiracy Borges has been convicted of, it was not within the scope of the activity Borges agreed to jointly undertake for purposes of U.S.S.G. §1B1.3(a)(1)(B). Under the guidelines, "the scope of the 'jointly undertaken criminal activity' is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. … Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct under subsection (a)(1)(B)." U.S.S.G. §1B1.3 cmt. n.3(B).<br><br>Taking that guidance into account, consider the activity that Borges agreed to undertake. Borges created 17 Consulting Group, LLC, which then received $1.62 million from Generation Now. PSR ¶ 36. Of that, only $15,000—the check to Tyler Fehrman—was used to commit a criminal act, the rest was used "to pay himself and Cespedes, … and paid for other expenses incurred in defeating the Ballot Campaign." PSR ¶ 36. Therefore, the "criminal activity" within the scope of what Borges agreed to undertake is limited to the $15,000 attempted bribe of Tyler Fehrman.<br><br>Pursuant to U.S.S.G. §2B1.1(b)(1)(B), if the amount is more than $6,500 but not more than $15,000, the offense level is increased by 2 levels.<br><br>Fn. 2. This assumes that all money from FirstEnergy to Generation Now was bribe money, a point that we do not concede. In our view, the money contributed to Generation Now between April and October of 2019—the period of Borges' involvement—was not linked to any | had to pay $15 million into Generation Now "if we expected to . . . have continued support, you know, of our legislation." (*Id*. at PageID 6811–12). Cespedes explained, "we had no choice" but to pay $15 million through Generation Now, at Householder's direction (*id*. at PageID 6813–17); and Cespedes testified that he communicated this to Borges in April 2019. (*See id*. at PageID 6821–28 (testimony about text message exchange between Cespedes and Borges about $15 million payment); Gov. Ex. 461D).<br><br>Between August and November 2019, FirstEnergy and its affiliates paid $38,738,581 into Generation Now to defeat the ballot campaign, which included a plan for Householder to introduce alternate legislation, if necessary. (Doc. 211, PageID 6844–50; Doc. 213, PageID 7072; Gov Ex. 601C (7/24/2019 Kiani text message to Dowling ("We are taking Householder's lead on fighting the referendum."); Gov. Ex. 601D 7/26/2019 Dowling text message to Kiani ("I had a good conversation with Speaker H today re: the referendum issue. I think you're in excellent hands. I know more about his personal involvement and engagement. We should all be following his lead.")). Cespedes discussed this arrangement with Borges; and Borges agreed to further its efforts through a new company he created, 17C Consulting.<br><br>Borges' own participation in the conspiracy demonstrate his knowledge and intent. To further the enterprise's efforts, Borges received $1.62 million that passed from FirstEnergy and its affiliates to Generation Now to 17C Consulting. (Doc. 212, PageID 6857–58; Gov. Ex. 605B (August 4, 2019, text exchange discussing arrangement). Borges and Cespedes discussed this arrangement with Householder's team and FirstEnergy executives. (Doc. 212, PageID 6862–64.) Cespedes testified that he communicated every day with Borges during the referendum period, and Borges was his "most trusted ally on my team." (Doc. 212, PageID 6864.) Cespedes explained that he "shared all information with [Borges] as he was my right hand many in this process." (*Id*. at PageID 6870.)<br><br>Specifically, Cespedes testified that Borges knew that FirstEnergy and its affiliates was paying Generation Now to defeat the ballot campaign and that Householder was prepared to introduce alternate legislation as part of the |

3

| | **Defendant's Objection** | **United States' Response** |
|---|---|---|
| | specific official act, nor was it a "stream of benefits" for a future official act. | arrangement. (*Id*. at PageID 6865.) Cespedes testified that the signature information Borges and Cespedes sought from Tyler Fehrman through bribery was important because, if they knew the ballot campaign was likely to collect enough signatures, it "would allow us then to move toward that second legislation that we needed to put in place." (*Id*. at PageID 6889–90.) Borges was involved in text message exchanges with Cespedes and others discussing Householder passing alternate legislation (*see, e.g.,* Gov. Ex. 636F); and Borges told Fehrman in a recorded call that Borges believed it was likely that Householder would introduce alternate legislation to defeat the referendum (Gov. Ex. 620D). In addition, as set forth in response to Objection 4 below, during this period Cespedes, Borges, and Householder coordinated their efforts to convince Attorney General ("AG") Dave Yost to take official action that would help them defeat the ballot campaign. (Doc. 212, PageID 6870.)<br><br>Borges characterized FirstEnergy's relationship with Householder and his own firm as an "unholy alliance." (Gov. Ex. 615C.) He described the payments from FirstEnergy to Generation Now as "Monopoly money at this point in time, you know, it's like not real." (Gov. Ex. 616C.) Borges told Fehrman, "people are going to get fat off of this. . . . So why the fuck not us." (Gov. Ex. 615C.)<br><br>Based on this evidence, all payments from FirstEnergy and its affiliates to Generation Now were "reasonably foreseeable" during the time that Borges' furthered its efforts, August 2019 to November 2019. Thus, Borges' loss amount for purpose of the guideline calculation is $38,738,581. (*See* Gov. Ex. 15 (summary exhibit detailing all payments from FirstEnergy accounts to Generation Now).) This loss amount does not change the guideline calculations as set forth in the PSR. |
| 4 | **Objection #4—Offense Conduct**<br><br>We object to the claim that "[t]he plan was for Borges to contact the Attorney General and convince him to delay approval of the ballot language." PSR ¶ 29. Borges did not agree or plan to ask Attorney General Yost to delay anything. Indeed, the Attorney General was | **Paragraph 29.** Borges objects to the statement in paragraph 29 that "[t]he plan was for Borges to contact the Attorney General and convince him to delay approval of the ballot language." The government believes that this statement is accurate. In fact, paragraph 29 could be clarified to address the full scope of Borges' involvement in this part of the scheme, as follows: "Borges was involved in the plan to contact Attorney General Yost to |

4

| Defendant's Objection | United States' Response |
|---|---|
| interviewed, more than once, by the FBI in connection with this case and denied that anyone attempted to influence or pressure him to do anything with respect to the ballot referendum. That is consistent with what the Attorney General said publicly. See FirstEnergy agrees not to seek subsidy in agreement with Yost, Feb. 1, 2021, https://www.10tv.com/amp/article/news/local/ohio/ohio-attorney-general-dave-yost-talks-about-hb-6/530-f23baf78-56a8-4b28-a4ba-e9c52235705f.<br><br>We also object to the claim that "[f]rom September 2019 through October 2019, agents from Ohioans for Energy Security attempted to bribe signature collectors." PSR ¶ 31. There was no evidence introduced at trial to support that allegation and the government abandoned it by the end of trial.<br><br>Neither allegation is supported by the trial record, so we ask that both be removed from the final PSR. | convince him to deny the ballot referendum language and to interpret House Bill 6 as a tax."<br><br>Cespedes testified that he asked Borges to help with the referendum effort because of Borges' relationship with Attorney General Yost. (Doc. 211, PageID 6839–40.) Cespedes confirmed that they put a lot of effort into getting Yost to interpret HB 6 as a tax because of Yost's history with the FirstEnergy (*i.e.*, his receipt of payments from FirstEnergy) and Yost's relationship with Borges. (*Id.* at PageID 6341.)<br><br>Cespedes explained his plan with Borges to defeat the ballot referendum through Yost, stating: "Attorney General Yost had a couple opportunities to be helpful, and he was indeed part of our plan." (Doc. 212, PageID 6865.) This included (1) "an effort to lobby him to prevent or to ask him not to approve language," and (2) their plan to "do everything we could to make it be interpreted as a tax" by contacting "multiple statewide elected officials," including AG Yost. (*Id.* at PageID 6865–66.) Cespedes testified that Borges "was our point of contact" with Yost (*id.* at PageID 6866); and Borges and Householder were coordinated in their efforts to convince Yost to take the action they were seeking as part of a "two-prong approach" (*id.* at PageID 6867–70).<br><br>This is consistent with the documentary evidence presented at trial. (*See, e.g.,* Gov. Ex. 608B, 608C; *see also* Gov. Ex. 606A (8/4/2019 Cespedes text message to Kiani: "Borges and I are working hard to have Yost deny the signatures but it is not certain.") The evidence thus supports the facts in paragraph 29, which could be clarified as set forth above.<br><br>**Paragraph 31.** Borges' objection to Paragraph 31 was addressed in the Government's May 25, 2023, letter to Probation. (*See* 5/25/2023 Letter from Gov. to Mr. Sneed, paragraph 9.) |

In addition, the government submits this response to the June 2, 2023 letter to probation from Borges' counsel regarding paragraph 15 of the government's May 25, 2023 letter (titled, "Prior Conduct"), which notified probation about Borges' 2004 misdemeanor conviction for improper use of a public office.

In the June 2, 2023 letter, Borges' counsel challenges certain facts underlying his 2004 conviction. The government submits that Borges' characterization of these facts is inconsistent with the record. *See* Exhibit A at 3, Andrew Futey Plea Agreement in Cuyahoga County Court of Common Pleas (affirming that Borges (in his role as Chief of Staff to the Ohio Treasurer) aided and abetted Futey in securing a benefit from the Treasurer's office for Frank Gruttadauria in exchange for money); *see* Exhibit B at 10–12, Frank Gruttadauria Plea Agreement in Cuyahoga County Court of Common Pleas (affirming that Gruttadauria paid $60,000 to the Ohio Treasurer in 1999, among other payments, to obtain business from the Treasurer and that Borges was involved in the corrupt scheme).[1] Nevertheless, Borges' counsel admits that Borges plead guilty to the charge. For these reasons and those set forth in the government's May 25, 2023 letter, Borges' prior conviction should be included in the PSR.

                                          Very truly yours,

                                          KENNETH L. PARKER
                                          United States Attorney

                                          */s/ Emily N. Glatfelter*
                                          EMILY N. GLATFELTER
                                          MATTHEW C. SINGER
                                          MEGAN GAFFNEY PAINTER
                                          Assistant United States Attorneys

cc: counsel for Matthew Borges

---

[1] The government does not have access to documents relating to Borges' criminal proceeding because they were sealed with the Court and expunged.